MICHAEL KAUFMAN (State Bar No. 254575)
mkaufman@aclu-sc.org
CARMEN G. IGUINA (State Bar No. 277369) *
ciguina@aclu-sc.org
AHILAN T. ARULANANTHAM (State Bar No. 237841) *
aarulanantham@aclu-sc.org
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, California 90017
Telephone: (213) 977-5211
Facsimile: (213) 417-2211

CHARLES ROTH *
croth@heartlandalliance.org
CLAUDIA VALENZUELA *
cvalenzuela@heartlandalliance.org
National Immigrant Justice Center
A Heartland Alliance Partner
208 South LaSalle, Suite 1300
Chicago, Illinois 60604
Telephone: (312) 660-1308
Facsimile: (312) 660-1505

*Counsel for Plaintiffs* (Additional counsel listed on following page)

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCO ANTONIO ALFARO GARCIA, CREDY MADRID CALDERON, GUSTAVO ORTEGA, CLAUDIA RODRIGUEZ DE LA TORRE, and NANCY BARDALEZ SERPA, on behalf of themselves and all others similarly situated, <br><br> *Plaintiffs,* <br><br> v. <br><br> JEH JOHNSON, Secretary of Homeland Security, LORI SCIALABBA, Acting Director of U.S. Citizenship and Immigration Services, and JOSEPH LANGLOIS, Associate Director of Refugee, Asylum and International Operations, <br><br> *Defendants.* | Case No. <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** <br><br> **CLASS ACTION** |

**COMPLAINT**

JULIA HARUMI MASS (State Bar No. 189649)
jmass@aclunc.org
JINGNI (JENNY) ZHAO (State Bar No. 284684)
jzhao@aclunc.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, California 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-8437

JAMES A. ROLFES*
jrolfes@reedsmith.com
DAVID Z. SMITH*
dzsmith@reedsmith.com
JOSEPH B. PRATER*
jprater@reedsmith.com
TIMOTHY R. CARRAHER*
tcarraher@reedsmith.com
REED SMITH LLP
10 South Wacker Drive, 40th Floor
Chicago, Illinois 60606
Telephone: (312) 207-1000
Facsimile: (312) 207-6400

JOHN D. PINGEL (State Bar No. 267310)
jpingel@reedsmith.com
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, California 94105-3659
Telephone: (415) 543-8700
Facsimile: (415) 391-8269

*Counsel for Plaintiffs*
* *pro hac vice* or admission application forthcoming

**COMPLAINT**

**JURISDICTION AND VENUE**

1.      Plaintiffs challenge the government's failure to process and complete their reasonable fear interviews and make reasonable fear determinations in compliance with the applicable immigration regulations.

2.      Congress has provided this Court with subject matter jurisdiction over this case pursuant to the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.*, the Mandamus and Venue Act of 1962, 28 U.S.C. § 1361, and the general federal question jurisdiction provided pursuant to 28 U.S.C. § 1331.

3.      Personal jurisdiction exists over the Defendants in this case, owing to, among other things, the nationwide nature of Defendants' conduct.

4.      Venue is proper in the Northern District of California under 28 U.S.C. § 1391(b)(2) and (e)(1) because a significant number of the events relevant to this action took place in this District, particularly with respect to Plaintiffs Credy Madrid Calderon and Gustavo Ortega, for whom the majority of their prolonged detention took place in this District, and because numerous witnesses reside in this District.

**PRELIMINARY STATEMENT**

5.      Every day, people who fear persecution and torture in their home countries flee to the United States in search of protection from harm and violence inflicted because of their race, religious beliefs, nationality, social group or political opinions. By statute and treaty, the United States government has committed that this nation will not expel, extradite or otherwise effect the involuntary return of *any* person to a country that would subject that person to persecution for any of those reasons, or to torture.

6.      To live up to these commitments, the United States government has developed administrative processes to ensure that noncitizens identified for removal have an adequate opportunity to seek protection if they express fear of persecution or torture upon removal to their countries of origin. For certain individuals—those who are subject to "reinstatement" of a prior removal order and those who have been issued an "administrative" removal order based on their criminal and immigration history—that process begins with an interview where an asylum

1   officer determines whether the individual has articulated a reasonable fear of persecution or

2   torture. Although the government imprisons these individuals while their claims are processed, it

3   has committed to each of them that, within 10 days of his or her case being referred to an asylum

4   officer, the officer will make a reasonable fear determination, and by doing so, initiate the

5   process by which an immigration judge will consider his or her claim. That commitment is made

6   manifest in a duly promulgated regulation. *See* 8 C.F.R. § 208.31(b).

7          7.     The United States government, however, has broken that promise. Rarely if ever

8   do the administrative agencies tasked with initiating and conducting the reasonable fear

9   interviews, and assessing the claims made, accomplish those tasks within the prescribed 10 days.

10  Instead, the government leaves immigrants to languish in detention for months and, in some

11  cases, over a year before referring their cases to the immigration courts for a hearing on their

12  claims.

13         8.     Pursuant to the Administrative Procedure Act and the Mandamus and Venue Act

14  of 1962, the named Plaintiffs here seek, on behalf of themselves and a class of similarly-situated

15  immigrants, an order requiring the government to refer reasonable fear interview requests,

16  conduct reasonable fear interviews, and issue reasonable fear determinations within the

17  mandated 10 days and without unreasonable delay. By ordering the government to comply with

18  its non-discretionary obligation to provide reasonable fear interviews and determinations in a

19  timely manner, this Court will hold the United States to the promise made to all immigrants who

20  seek refuge in this country, end improperly extended detentions, and give hope to the many who

21  seek a new life free of persecution and torture.

22                                  **PARTIES**

23  *Plaintiffs*

24         9.     Plaintiff Marco Antonio Alfaro Garcia is a native and citizen of El Salvador. He

25  has been in the custody of the U.S. Immigrations and Customs Enforcement ("ICE") at the

26  Adelanto Detention Facility in Adelanto, California, since on or about January 16, 2014. Mr.

27  Alfaro Garcia promptly expressed his fear of returning to El Salvador shortly after being taken

28  into immigration custody, but has not received a reasonable fear determination for well in excess

1  of 10 days after being referred for a reasonable fear interview. Defendants' failure to provide Mr.

2  Alfaro Garcia a reasonable fear determination within the prescribed 10-day period has harmed,

3  and will continue to harm, Mr. Alfaro Garcia by prolonging his detention and delaying his right to

4  be heard on his claims for relief.

5     10. Plaintiff Credy Madrid Calderon is a native and citizen of Honduras. He was first

6  detained by the U.S. Customs and Border Protection ("CBP") on or about March 3, 2014, and

7  transferred to ICE custody on or about March 6, 2014. He remains in ICE custody at West County

8  Detention Center in Richmond, California. Mr. Madrid Calderon has not received a reasonable

9  fear determination in his case for well in excess of 10 days after being referred for a reasonable

10  fear interview. Defendants' failure to provide Mr. Madrid Calderon a reasonable fear

11  determination within the prescribed 10-day period has harmed, and will continue to harm, Mr.

12  Madrid Calderon by prolonging his detention and delaying his right to be heard on his claims for

13  relief.

14     11. Plaintiff Gustavo Ortega is a native and citizen of Mexico. He has been detained

15  at the West County Detention Center in Richmond, California, since on or about February 27,

16  2014. Mr. Ortega was referred for a reasonable fear interview after he expressed his fears of

17  return to Mexico, but he has not received a reasonable fear determination for more than 10 days

18  after the referral. Defendants' failure to provide Mr. Ortega a reasonable fear determination

19  within the prescribed 10-day period has harmed, and will continue to harm, Mr. Ortega by

20  prolonging his detention and delaying his right to be heard on his claims for relief.

21     12. Plaintiff Claudia Rodriguez De La Torre is a native and citizen of Mexico. She

22  has been detained by ICE since on or about mid-January 2014 at the Eloy Detention Center in

23  Eloy, Arizona. Ms. Rodriguez De La Torre has not received a reasonable fear determination in her

24  case for well in excess of 10 days after being referred for a reasonable fear interview. Defendants'

25  failure to provide Ms. Rodriguez De La Torre a reasonable fear determination within the

26  prescribed 10-day period has harmed, and will continue to harm, Ms. Rodriguez De La Torre by

27  prolonging her detention and delaying her right to be heard on her claims for relief.

28

13.     Plaintiff Nancy Bardalez Serpa is a native and citizen of Peru. She has been detained at the Eloy Detention Center in Eloy, Arizona, since on or about February 13, 2014. Ms. Bardalez Serpa has not received a reasonable fear determination in her case for well in excess of 10 days after being referred for a reasonable fear interview. Defendants' failure to provide Ms. Bardalez Serpa a reasonable fear determination within the prescribed 10-day period has harmed, and will continue to harm, Ms. Bardalez Serpa by prolonging her detention and delaying her right to be heard on her claims for relief.

*Defendants*

14.     Defendant Jeh Johnson is the Secretary of Homeland Security and the highest-ranking member of the Department of Homeland Security ("DHS"), the arm of the U.S. Government responsible for enforcement of the immigration laws. Mr. Johnson is sued in his official capacity.

15.     Defendant Lori Scialabba is the Acting Director of the U.S. Citizenship and Immigration Services ("USCIS"), the arm of DHS charged with overseeing the Asylum Offices which process and complete reasonable fear determinations for noncitizens who express a fear of return to their country of origin. Ms. Scialabba is sued in her official capacity.

16.     Defendant Joseph Langlois is the Associate Director of the Refugee, Asylum and International Operations Directorate, the office within USCIS that oversees the Asylum Division and Asylum Offices that conduct reasonable fear determinations for noncitizens who express a fear of return to their country of origin. Mr. Langlois is sued in his official capacity.

### STATEMENT OF FACTS

*Reasonable Fear Determination Process*

17.     The vast majority of individuals who undergo the reasonable fear process are individuals who have prior removal orders but have returned to the United States seeking refuge. Many of these individuals returned to their countries of origin after being removed from the United States, only to find that they are now the targets of violence and persecution. In some cases, it was that same violence and persecution that forced them to leave their homes in the first place, only such conditions have worsened in their absence. These individuals are forced to once

1   again abandon their home countries and make the journey to the United States seeking protection.

2   Some of these individuals have already tried to seek asylum once, were summarily deported

3   without a hearing after immigration officers ignored or discouraged their requests, yet return

4   again because of the continued persecution or torture they face in their home countries. When

5   apprehended by ICE or CBP, these individuals are held in an immigration detention center,

6   subject to "reinstatement" of the prior removal order and subject to removal on that basis. *See* 8

7   U.S.C. § 1231(a)(5).

8          18.     The reasonable fear process also applies to a second category of individuals:

9   those who are subject to administrative removal pursuant to 8 U.S.C. § 1228 and 8 C.F.R. §

10  238.1, but who fear violence and persecution if returned to their countries of origin. The

11  government can detain and remove these individuals pursuant to this administrative removal

12  process without seeing an immigration judge if an immigration officer determines that the

13  noncitizen is not a lawful permanent resident, does not have conditional permanent residence, and

14  has been convicted of certain criminal offenses.

15         19.     However, if an individual subject to reinstatement of removal or to

16  administrative removal fears return to his or her country of origin, the immigration laws require

17  that he or she have an opportunity to request protection in the United States through "withholding

18  of removal" and relief under the United Nations Convention Against Torture and Other Cruel,

19  Inhuman or Degrading Treatment or Punishment ("CAT"). Under 8 U.S.C. § 1231(b)(3), a person

20  may seek withholding of removal if his "life or freedom would be threatened in that country

21  because of [his] race, religion, nationality, membership in a particular social group, or political

22  opinion." The availability of withholding of removal stems from the Refugee Act of 1980,

23  through which the United States sought to bring its laws into conformity with the 1967 United

24  Nations Protocol Relating to the Status of Refugees, Jan. 31, 1967, 19 U.S.T. 6223, under which

25  countries committed not to "expel or return ('refouler') a refugee in any manner whatsoever to the

26  frontiers of territories where his life or freedom would be threatened on account of his race,

27  religion, nationality, membership of a particular social group or political opinion." 19 U.S.T. at

28  6276.

**COMPLAINT**

20.     Additionally, as a signatory to the CAT, the United States has committed "not to expel, extradite, or otherwise effect the involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture . . . ." Foreign Affairs Reform and Restructuring Act of 1998 § 2242, Pub. L. 105-277, 112 Stat. 2681, 2681-821.

21.     "Withholding of removal" and CAT relief are mandatory, not discretionary—by law the United States cannot remove someone who qualifies for protection under these provisions. *See Nuru v. Gonzales*, 404 F.3d 1207, 1216 (9th Cir. 2005) ("If an alien meets his burden of proof regarding future torture, withholding of removal is mandatory under the [CAT] implementing regulations, just as it is in the case of a well-founded fear of persecution").

22.     For a noncitizen subject to "reinstatement of removal" or "administrative removal" who expresses a fear of return, the federal government has implemented a two-stage process to determine whether the individual qualifies for withholding of removal or relief under the CAT. *See* 8 C.F.R. § 208.31. After an individual expresses a fear of return, ICE and CBP are required to refer him or her to a USCIS asylum officer, who first conducts an interview and then makes a determination as to whether the individual has a "reasonable" basis to fear persecution or torture upon his or her return to the country of origin. *See* 8 C.F.R. § 208.31(c). If the asylum officer determines that the individual's fear is reasonable, USCIS then refers the case to an immigration judge from the Executive Office for Immigration Review ("EOIR") for full consideration of the claim. *See* 8 C.F.R. § 208.31(e).

23.     The government takes the position that noncitizens subject to reinstatement of removal or an administrative removal order are not eligible for a bond hearing to determine whether their detention is justified, regardless of whether they are determined to have a reasonable fear. As a result, these individuals are generally imprisoned throughout the entire period in which the government considers their claims for relief, including the reasonable fear process, immigration court proceedings, and any appeals.

*Reasonable Fear Regulation and Internal Agency Guidelines*

24.     An immigration regulation sets forth a timeline for completion of reasonable fear determinations. The regulation provides that upon issuance of the administrative removal order or notice of reinstatement of an existing removal order, a noncitizen who expresses fear of return to his or her home country "shall be referred to an asylum officer for a reasonable fear determination." 8 C.F.R. § 208.31(b). The regulation further provides: "In the absence of exceptional circumstances, this determination will be conducted within 10 days of the referral." *Id.*

25.     Although this regulation is binding on the agency, the USCIS Asylum Division—the division responsible for making reasonable fear determinations—has foregone any attempt to comply with this official timeframe to complete reasonable fear interviews, let alone issue the reasonable fear determinations.

26.     Instead, USCIS has implemented "goals" for the completion of reasonable fear interviews that simply ignore the mandated 10 days for reasonable fear determinations, and instead "encourage" applicant interviews within 45 days, adjudication of 85 percent of cases within 90 days, and monthly reports on cases still pending after 150 days.

27.     In keeping with this position, the Asylum Division has not advised asylum officers of any binding timeframe for completion of reasonable fear determinations.

*Reasonable Fear Determinations Delays*

28.     Defendants routinely fail to meet the 10-day mandated timeframe for reasonable fear determinations.

29.     The delays in providing reasonable fear determinations—which can range from several weeks and months in some locations to over a year in southern states such as Arizona and Texas—are common. Data from the USCIS Asylum Division reveal that the average wait time from the time a person is taken into custody to the time that a reasonable fear determination is finally served on an applicant is on average about 111 days. This includes an average of 49 days that individuals wait for USCIS to accept jurisdiction of a case. Even after USCIS accepts jurisdiction, individuals must wait an average of over 60 days for the Asylum Division to conduct

1   the interviews and make reasonable fear determinations before their cases can reach an

2   immigration judge.

3        30.    The reasonable fear determination constitutes only the first stage in the process

4   that a noncitizen must endure to obtain a final decision on his or her claims for relief. Once an

5   applicant secures a hearing before an immigration judge, his or her case may take anywhere from

6   several months to over a year, depending on whether the individual or the agency appeal decisions

7   to the Board of Immigration Appeals or the federal appellate courts.

8        31.    These delays have had drastic human consequences on the named Plaintiffs, as

9   their individual cases make clear:

10  ***Plaintiff Marco Antonio Alfaro Garcia***

11       32.    Plaintiff Marco Antonio Alfaro Garcia, a native and citizen of El Salvador, has

12  resided in the United States continuously since 2007.

13       33.    Shortly after coming to the United States in 2007, Mr. Alfaro Garcia met his

14  current partner, Yeni Gomez. Mr. Alfaro Garcia has built a life with Ms. Gomez in the United

15  States. Together, they have three children: two girls, ages four and three, and one boy, three

16  months old. Ms. Gomez and all three children are United States citizens. Prior to his detention,

17  Mr. Alfaro Garcia worked as a welder and was the sole provider for his family.

18       34.    Mr. Alfaro Garcia has been previously deported from the United States. In 2005,

19  Mr. Alfaro Garcia attempted to enter the country but was caught by immigration authorities.

20  Instead of staying in detention, he decided to accept a removal order back to El Salvador.

21       35.    Upon his return to El Salvador, Mr. Alfaro Garcia was subjected to several acts

22  of violence, threats and harassment, including at the hands of the local police. In addition, Mr.

23  Alfaro Garcia provided information to local prosecutors about the members of a local criminal

24  group who were trying to extort money from him. He has since learned from friends in El

25  Salvador that the members of the criminal group have been released from prison and have asked

26  about his whereabouts. Mr. Alfaro Garcia fears that the members of this criminal group intend to

27  harm him, and that the local police in El Salvador will be unable or unwilling to protect him. In

28

1  approximately 2007, as a result of the persecution that he suffered, Mr. Alfaro Garcia fled to the

2  United States where he thought he would be safe.

3        36.    On or about January 16, 2014, Mr. Alfaro Garcia was transferred to ICE custody

4  after being arrested for driving under the influence. He has never been convicted of any other

5  crime, aside from driving without a license. Shortly after Mr. Alfaro Garcia was taken to a

6  processing center in downtown Los Angeles, an immigration officer informed him that he would

7  be removed from the United States due to his previous deportation order from 2005. During that

8  interview, Mr. Alfaro Garcia informed the immigration officer that he feared returning to El

9  Salvador.

10        37.    On that same date, on or about January 16, 2014, Mr. Alfaro Garcia was

11  transferred to ICE custody at the Adelanto Detention Facility in Adelanto, California. A few

12  weeks later, Mr. Alfaro Garcia met with another immigration officer, and again informed the

13  officer that he feared returning to El Salvador. On or about February 11, 2014, Mr. Alfaro Garcia

14  was interviewed by an asylum officer about his fear of returning to El Salvador. He has yet to

15  receive a determination from that reasonable fear interview. Mr. Alfaro Garcia submitted a

16  request to ICE inquiring about the status of his case, and was informed that it would take between

17  four to six  months for a reasonable fear determination in his case.

18        38.    Mr. Alfaro Garcia's prolonged detention has been very difficult for him and his

19  family. As a result of his detention, Mr. Alfaro Garcia could not be present for the birth of his

20  youngest child. He has also been unable to provide financial support for his family since his

21  detention, forcing Ms. Gomez to try to support her family by taking part-time work selling food

22  on the weekends. The children cry almost daily because Mr. Alfaro Garcia is incarcerated.

23  ***Plaintiff Credy Madrid Calderon***

24        39.    Plaintiff Credy Madrid Calderon, a native and citizen of Honduras, came to the

25  United States when he was approximately seventeen years old. When Mr. Madrid Calderon was

26  four years old, his father passed away and his mother left for the United States to find work. In his

27  parents' absence, Mr. Madrid Calderon suffered physical, sexual, and emotional abuse while

28  growing up in Honduras.

1   40.     After coming to the United Sates, Mr. Madrid Calderon met his wife, Valentina,

2   with whom he has a son. In addition, Mr. Madrid Calderon has two other children from a previous

3   relationship. Mr. Madrid Calderon's wife and children are all United States citizens.

4   41.     In or around June 2013, Mr. Madrid Calderon was stopped for driving without a

5   license. He has no other criminal history. At that time, Mr. Madrid Calderon first learned that he

6   had a removal order from 2005, which was issued in his absence after he entered the United

7   States as a minor. He was deported to Honduras on or about September 2013 on the basis of that

8   prior removal order.

9   42.     After Mr. Madrid Calderon was deported to Honduras he suffered intense

10  persecution at the hands of a group of local men. The men demanded money from him, severely

11  beat him, fired shots at him, and threatened to kill him. Fearing for his life, Mr. Madrid Calderon

12  fled Honduras in approximately January 2014.

13  43.     On or about March 3, 2014, Mr. Madrid Calderon was apprehended by border

14  patrol officers after attempting to reenter the United States. Immigration officers informed him

15  that he would be deported without seeing an immigration judge based on his prior removal order.

16  He spent three days in a holding facility near the border and was then transferred to the South

17  Texas Detention Facility in Pearsall, Texas. A few days after arriving at Pearsall, on or about

18  March 10, 2014, Mr. Madrid Calderon submitted a detainee request form stating that he feared

19  returning to Honduras. On or about March 12, 2014, he received a written response stating that

20  his case had been forwarded to the Asylum Office. However, at this time, he still has not received

21  a reasonable fear interview or determination in his case.

22  44.     Mr. Madrid Calderon was subsequently transferred to the West County

23  Detention Facility in Richmond, California, where he remains detained by ICE. His detention has

24  created several hardships for his family as Mr. Madrid Calderon has been unable to provide

25  financial or emotional support to his wife and children.

26  *Plaintiff Gustavo Ortega*

27  45.     Plaintiff Gustavo Ortega, a native and citizen of Mexico, entered the United

28  States in 2000 near Phoenix, Arizona, and has resided in the United States continuously since that

1  time. He has two United States citizen children, ages eight and four. Prior to his detention, Mr.

2  Ortega worked in construction and as a handyman, and he helped care for and financially support

3  his children.

4  46.    On or around January 23, 2014, Mr. Ortega pled guilty to assault with a deadly

5  weapon and was sentenced to one year with "half time" good conduct credits. This is Mr.

6  Ortega's only criminal conviction, other than citations for driving without a license. Mr. Ortega

7  received an administrative order of removal pursuant to 8 U.S.C. § 1228(b).

8  47.    On or about February 27, 2014, Mr. Ortega was transferred to ICE custody at the

9  West County Detention Facility in Richmond, California, where he remains detained. The

10  following day, Mr. Ortega was transferred to San Francisco to meet with an immigration officer,

11  to whom he expressed a fear of returning to Mexico. Mr. Ortega fears returning to Mexico

12  because his brother was brutally murdered by a drug cartel in Michoacan, Mexico. A video of the

13  murder has been posted on YouTube.

14  48.    On or about March 25, 2014, Mr. Ortega was interviewed by an asylum officer

15  about his fear of returning to Mexico. He has still not received a determination pursuant to that

16  interview.

17  ***Plaintiff Claudia Rodriguez De La Torre***

18  49.    Plaintiff Claudia Rodriguez De La Torre, a native and citizen of Mexico, has

19  resided in the United States since approximately 1998, with the exception of a short four-month

20  visit to Mexico in 2001. Most of that time, she has lived in Reno, Nevada, where she worked

21  primarily cleaning houses, taking care of children, and in restaurants. Ms. Rodriguez De La Torre

22  has three children, ages ten, eight, and five, all of whom are United States citizens.

23  50.    On or about January 12, 2014, Ms. Rodriguez De La Torre pled guilty to

24  possession with intent to distribute heroin. While in criminal custody, on approximately January

25  14, 2014, an ICE officer informed Ms. Rodriguez De La Torre that due to her conviction, she was

26  ineligible to see an immigration judge.  She stated, however, that she feared returning to Mexico.

27  The following day, on approximately January 15, 2014, Ms. Rodriguez De La Torre was

28

1    transferred to ICE custody. She is currently detained at the Eloy Detention Center in Eloy,

2    Arizona.

3          51.     Ms. Rodriguez De La Torre fears being deported to Mexico because the father of

4    her children, who had subjected her to domestic violence over a period of years, and who has

5    been deported to Mexico on this basis, has become aware of her detention by ICE. Ms. Rodriguez

6    De La Torre's former partner has asked her family about the status of her case. She fears that this

7    man will find her and possibly kill her because he blames her for his deportation to Mexico.

8          52.     In or about late January or early February 2014, Ms. Rodriguez De La Torre was

9    interviewed about her fear of returning to Mexico. Ms. Rodriguez De La Torre has still not

10   received a determination from that reasonable fear interview.

11         53.     Ms. Rodriguez De La Torre is gravely concerned for her young children who are

12   currently residing with relatives. She worries about their well-being should she continue to be

13   separated from them while her immigration claims remain pending.

14   *Plaintiff Nancy Bardalez Serpa*

15         54.     Plaintiff Nancy Bardalez Serpa, a native and citizen of Peru, was forced to flee

16   her home country because of gender-based persecution she suffered there. Ms. Bardalez Serpa is a

17   university graduate and enjoyed a stable, settled life in Peru. In approximately 2010 her life was

18   torn apart by a man associated with cartels who targeted her for persecution.

19         55.     Ms. Bardalez Serpa fled Peru in approximately 2012 and sought protection

20   within the United States. Shortly after entering the United States in Arizona, she was apprehended

21   by immigration authorities and taken to a detention center in Atlanta, Georgia. While in detention,

22   Mr. Bardalez Serpa told an immigration officer that she feared returning to Peru due to the

23   persecution she had suffered, but the officer told her that there was nothing to be done. She was

24   subsequently deported.

25         56.     Although Ms. Baldalez Serpa tried to continue her life in her native country

26   again after this deportation, her persecutor located her and began his persecution of her anew.

27         57.     On or about February 12, 2014, Ms. Bardalez Serpa was apprehended while

28   attempting to enter the United States again. When apprehended, Ms. Baraldez Serpa suffered a

**COMPLAINT**

1   severe asthma attack and had to be taken to a hospital immediately. The next day, she was taken

2   to the Eloy Detention Center, in Eloy, Arizona, where she has been detained since.

3       58.     Shortly after her apprehension, Mr. Bardalez Serpa was informed by an

4   immigration officer that she would be deported based on her prior removal order. Mr. Bardalez

5   Serpa told the immigration officer that she greatly feared returning to Peru due to the abuse she

6   had suffered there. Approximately a month later, on or about March 10, 2014, she was

7   interviewed about her fear of returning to Peru. Ms. Bardalez Serpa has still not received a

8   determination pursuant to her reasonable fear interview.

9       59.     On approximately April 14, 2014, Ms. Bardalez Serpa, who has experienced

10   depression while in ICE custody, sought to withdraw her request for a reasonable fear

11   determination, but she subsequently decided to wait for a decision despite the despair that

12   detention causes her.

13                         **CLASS ACTION ALLEGATIONS**

14       60.     Pursuant to Federal Rule Civil Procedure 23, Plaintiffs bring this action on

15   behalf of themselves and all other similarly-situated individuals. Plaintiffs do not seek claims for

16   compensatory relief. Instead, Plaintiffs seek only injunctive relief broadly applicable to members

17   of the Plaintiff Class, as defined below. The requirements of Rule 23, and in particular Rule

18   23(b)(2), are met with respect to the Plaintiff Class defined below.

19       61.     The plaintiff-class ("Plaintiff Class") consists of: All individuals who: (1) are or

20   will be subject to removal pursuant to 8 U.S.C. § 1231(a)(5) or 8 U.S.C. § 1228; (2) who have

21   expressed, or in the future express, a fear of returning to their country of removal; and (3) who

22   have not received, or do not receive, a reasonable fear determination pursuant to 8 C.F.R. §

23   208.31 within 10 days of referral to the U.S. Citizenship and Immigration Services.

24       62.     The members of the Plaintiff Class are so numerous that joinder is impracticable.

25   The number of individuals ICE and CBP have detained for more than 10 days pending a USCIS

26   reasonable fear determination is not known with precision. The January 2014 USCIS Asylum

27   Division data, however, shows that on any given day the number of members of the Plaintiff

28   Class is likely in the hundreds.

63.     Members of the Plaintiff Class reside in various DHS detention facilities across the United States. Joinder of the members of the Plaintiff Class in one case would create significant challenges to the efficient administration of justice that make such joinder impracticable.

64.     Further, there are questions of law and fact common to the members of the Plaintiff Class. Common questions of law include but are not limited to the following:

a.     Whether the immigration regulations require that USCIS make all reasonable fear determinations within 10 days of referral;

b.     Whether USCIS has unreasonably delayed agency action within the meaning of the Administrative Procedure Act by not completing reasonable fear determinations within 10 days of referral.

65.     The claims of the named Plaintiffs are typical of the claims of the Plaintiff Class. Plaintiffs know of no conflict between their interests and those of the Plaintiff Class they seek to represent.

66.     The members of the Plaintiff Class can be readily identified through notice and discovery.

67.     In defending their own rights, the individual Plaintiffs will defend the rights of all proposed Plaintiff Class members.

68.     Plaintiffs have retained counsel experienced in class litigation and in immigration law to represent them and the Plaintiff Class for the purpose of this litigation.

69.     Defendants have acted, or refused to act, on grounds generally applicable to each member of the Plaintiff Class, insofar as they have failed to make a determination on their reasonable fear cases within 10 days of referral to USCIS.

70.     A class action is superior to other methods available for the fair and efficient adjudication of this controversy because joinder of all members of the Plaintiff Class is impracticable.

**COMPLAINT**

**FIRST CAUSE OF ACTION**

**<u>Administrative Procedure Act, 5 U.S.C. § 706(1)</u>**

71.  Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

72.  The Administrative Procedure Act ("APA") requires that an agency conclude matters presented to it within a "reasonable time." 5 U.S.C. § 555(b). The APA provides that a "reviewing court *shall* . . . compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1) (emphasis added).

73.  Under the APA, whenever the law requires that the agency act within a certain amount of time, a court is obligated to compel the agency to act if it fails to comply within the mandated deadline. *See Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1177-78 & n.11 (9th Cir. 2002) (issuing injunction for agency to comply with statutory deadline); *see also Norton v. South Utah Wilderness Alliance*, 542 U.S. 55, 65 (2004) (noting that "when an agency is compelled by law to act within a certain time period, but the manner of its action is left to the agency's discretion, a court can compel the agency to act, but has no power to specify what the action must be").

74.  In compliance with immigration regulation 8 C.F.R. § 208.31(b), the period for completion of reasonable fear determinations is mandated to be within 10 days of referral to USCIS.

75.  Defendants have failed to comply with this mandatory directive, and in fact, as a matter of policy and procedure, do not even attempt to complete reasonable fear determinations within the mandated 10-day period.

76.  Plaintiffs and the Plaintiff Class have suffered and will imminently suffer irreparable injury as a proximate result of this conduct, have no adequate remedy at law, and are entitled to injunctive relief to avoid that injury.

**SECOND CAUSE OF ACTION**

**<u>Violation of 8 C.F.R. § 208.31(b)</u>**

77.     Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

78.     Under the Mandamus and Venue Act of 1962, the court may order the Government to complete Plaintiffs and the Plaintiffs' Class's reasonable fear determinations within a reasonable time and in compliance with immigration regulation 8 C.F.R. § 208.31(b), which requires completion of reasonable fear determinations within 10 days of referral to USCIS.

79.     Plaintiffs and the Plaintiff Class have suffered and will imminently suffer irreparable injury as a proximate cause of this failure to act, have no adequate remedy at law, and are entitled to injunctive relief to avoid any injury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the Plaintiff Class, respectfully request that the Court grant the following relief:

a.      Certify a class pursuant to Federal Rule of Civil Procedure 23 in accordance with the allegations of this Complaint and the forthcoming class certification motion;

b.      Declare that Defendants' failure to complete Plaintiffs' and other class members' reasonable fear determinations within 10 days of referral violates federal law;

c.      Order the Government to complete all of Plaintiffs' and class members' reasonable fear determinations within 10 days of referral to USCIS; and

d.      Grant such other relief as the Court deems just and equitable, including but not limited to fees under the Equal Access to Justice Act, and any other applicable statute or regulation.

**COMPLAINT**

1    Dated: April 17, 2014                          Respectfully submitted,

2

3                                          By: ____/s/ John D. Pingel_____

4                                              One of Plaintiffs' Attorneys

5

6    Michael Kaufman              Charles Roth *              James A. Rolfes*
     Carmen G. Iguina*            Claudia Valenzuela *        David Z. Smith*
7    Ahilan T. Arulanantham*      NATIONAL IMMIGRANT JUSTICE  Joseph B. Prater*
     ACLU FOUNDATION OF           CENTER                      Timothy R. Carraher*
8    SOUTHERN CALIFORNIA          A HEARTLAND ALLIANCE PARTNER REED SMITH LLP
     1313 West 8th Street         208 South LaSalle, Suite 1300  10 South Wacker Drive
9    Los Angeles, CA 90017        Chicago, Illinois 60604     Chicago, Illinois 60606
     mkaufman@aclu-sc.org         croth@heartlandalliance.org jrolfes@reedsmith.com
10   ciguina@aclu-sc.org          cvalenzuela@heartlandalliance.org  dzsmith@reedsmith.com
     aarulanantham@aclu-sc.org    Telephone: (312) 660-1308   jprater@reedsmith.com
11   Telephone: (213) 977-5211    Facsimile: (312) 660-1505   tcarraher@reedsmith.com
     Facsimile: (213) 417-2211                                Telephone: (312) 207-1000
12                                                            Facsimile: (312) 207-6400

13   Julia Harumi Mass
     Jingni (Jenny) Zhao                                      John D. Pingel
14   ACLU FOUNDATION                                          REED SMITH LLP
     OF NORTHERN CALIFORNIA                                   101 Second St., Suite 1800
15   39 Drumm Street                                          San Francisco, CA 94105
     San Francisco, CA 94111                                  jpingel@reedsmith.com
16   jmass@aclunc.org                                         Telephone: (415) 543-8700
     jzhao@aclunc.org                                         Facsimile: (415) 391-8269
17   Telephone: (415) 621-2493
     Facsimile: (415) 255-8437

18                                 *Attorneys for the Plaintiffs*

19      * *pro hac vice* or admission application forthcoming

20

21

22

23

24

25

26

27

28