STUART F. DELERY
Assistant Attorney General
COLIN A. KISOR
Acting Director, District Court Section
Office of Immigration Litigation
ELIZABETH J. STEVENS
Assistant Director, District Court Section
VICTOR M. MERCADO-SANTANA (Pa. 312116)
Trial Attorney
Civil Division, Office of Immigration Litigation
United States Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, DC  20044
Telephone:  (202) 305-7001
Facsimile:  (202) 616 -8962
E-mail:  victor.m.mercado-santana@usdoj.gov
*Counsel for Defendants*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| MARCO ANTONIO ALFARO GARCIA, CREDY MADRID CALDERON, GUSTAVO ORTEGA, CLAUDIA RODRIGUEZ DE LA TORRE, and NANCY BARDALEZ SERPA, on behalf of themselves and all others similarly situated, | Case No. 4:14-cv-1775-YGR |
| | **DEFENDANTS' MOTION TO DISMISS** |
| *Plaintiffs*, | Hon. Yvonne Gonzalez Rogers |
| v. | Date: September 23, 2014 Time: 2:00 pm Courtroom 5, 2d  Floor Oakland Courthouse |
| JEH JOHNSON, Secretary of Homeland Security, LEON RODRIGUEZ, Director of U.S. Citizenship and Immigration Services,[1] and JOSEPH LANGLOIS, Associate Director of Refugee, Asylum and International Operations, | |
| *Defendants*. | |

---

[1]      Leon Rodriguez, as the new director of U.S. Citizenship and Immigration Services, is substituted by Lori Scialabba.  *See* Fed. R. Civ. P. 25(d).

**NOTICE OF MOTION AND
DEFENDANTS' MOTION TO DISMISS**

PLEASE TAKE NOTICE that on September 23, 2014, at 2:00 pm, or as soon thereafter as the parties may be heard, Defendants will bring a motion to dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure.  The hearing will take place before the Honorable Yvonne Gonzalez Rogers in Courtroom 5, Second Floor, at 1301 Clay St, Oakland, California.

This motion is based on the Memorandum of Law In Support of Defendant's Motion to Dismiss, as well as all pleadings, papers, and files in this action, and any oral argument as may be presented at the hearing on this motion.  Defendants respectfully request that this Court grant Defendants' motion and dismiss all claims in Plaintiff's complaint.

# **TABLE OF CONTENTS**

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ................................. 1

II.    FACTUAL BACKGROUND ........................................................... 2

      A.    Marco A. Alfaro Garcia ................................................. 2

      B.    Credy Madrid Calderon .................................................. 2

      C.    Gustavo Ortega ............................................................. 3

      D.    Claudia Rodriguez de la Torre ........................................ 3

      E.    Nancy Bardalez Serpa .................................................... 4

III.   LEGAL BACKGROUND ............................................................... 4

      A.    Motion to dismiss under Rule 12(b)(1) ............................... 4

      B.    Motion to dismiss under Rule 12(b)(6)  4

      C.    Reasonable fear determination procedures ........................ 5

IV.    ARGUMENT ............................................................................ 6

      A.    Plaintiff's individual claims should be dismissed because they are moot ................................................................................ 6

      B.    The Regulation does not mandate adjudication within 10 days, as there is no penalty provided in the 10-day goal is not met ........... 6

      C.    Exceptional circumstances is not defined in the Regulation, and is discretionary determination not subject to APA review ............. 11

      D.    Lastly, Plaintiffs have failed to state a claim that USCIS violated 8 C.F.R. § 208.31(b).

            1.    Rule of reason ................................................. 14

i

2.      Statutory scheme ........................................................... 15

3.      Implications for health or human welfare and interests

        prejudiced by the delay. .................................................. 15

4.      Effect of expediting agency action. ................................ 16

5.      Evidence of impropriety behind the delay. .................... 17

V.      CONCLUSION ................................................................................. 18

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

## CASES

*American Farm Lines v. Black Ball Freight Service,*
   397 U.S. 538-39 (1970) ................................................................. 8

*Ass'n of Am. Physicians & Surgs. v. United States HHS,*
   224 F. Supp. 2d 1115 (S.D. Tex. 2002) ........................................ 8

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ..................................................................... 4

*Barnhart v. Peabody Coal Co.,*
   537 U.S. 149 (2003) ..................................................................... 8

*Biodiversity Legal Found v. Badgley,*
   309 F.3d 1166 (9th Cir. 2002) .................................................... 12

*Borck v. Pierce County,*
   476 U.S. 253 (1986) ............................................................... 8, 11

*Brower v. Evans,*
   257 F.3d 1058 (9th Cir. 2001) .................................................... 13

*Center for Food Safety v. Hamburg,*
   954 F. Supp. 2d 965 (N.D. Cal. 2013) ........................................ 14

*Dipeppe v. Quarantillo,*
   337 F.3d 326 (3rd Cir. 2003) ...................................................... 10

*French v. Edwards,*
   80 U.S. 506 (1872) ........................................................................ 8

*GATX/Airlog Corp. v. U.S. Dist. Ct. for the N. Dist. Of Cal.,*
   192 F.3d 1304 (9th Cir. 1999) ...................................................... 7

*Gelfer v. Chertoff,*
   2007 WL 902382 (N.D. Cal. 2007) ............................................ 14

1

2

*Giddings v. Chandler,*
    979 F.2d 1104 (5th Cir. 1992) .......................................................... 11

3

*Health Sys. Agency of Okla. v. Norman*,
    589 F.2d 486 (10th Cir. 1978) ........................................................... 8

4

5

*Heckler v. Chaney*,
    470 U.S. 821 (1985) ........................................................................ 11

6

7

*Henderickson v. FDIC*,
    113 F.3d 98 (7th Cir. 1997) .............................................................. 9

8

9

*Kashkool v. Chertoff*,
    553 F. Supp. 2d 1131 (D. Ariz. 2008) ........................................... 15

10

11

*Leite v. Crane Co.*,
    749 F.3d 1117 (9th Cir. 2014) ........................................................... 4

12

13

*Lincoln v. Vigil*,
    508 U.S. 182 (1993) ........................................................................ 12

14

15

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
    1025 F.3d 1025 (9th Cir. 2008) ......................................................... 5

16

17

*Martinez-Rosas v. Gonzales*,
    424 F.3d 926 (9th Cir. 2005) .......................................................... 12

18

19

*Mashpee Wampanoag Tribal Council, Inc. v. Norton*,
    336 F.3d 1094, 1100 (D.D.C. 2003) ......................................... 13, 16

20

21

*Moralez-Izquierdo v. Gonzales*,
    486 F.3d 484 (9th Cir. 2007) ............................................................ 6

22

23

*Newman v. Apfel*,
    232 F.3d 937, 943 (9th Cir. 2005) ................................................. 12

24

25

*Office of Pers. Management v. Richmond*,
    496 U.S. 414 (1990) .......................................................................... 8

26

27

*Pinnacle Armor, Inc. v. U.S.*,
    648 F.3d 708 (9th Cir. 2011) .......................................................... 12

28

*Regions Hospital v. Shalala*,
    522 U.S. 448 (1998) ............................................................... 8

*Research and Action Center v. FCC("TRAC")*,
    750 F.2d 70 (D.D.C. 1984) ................................................... 13

*Santos v. Sabol*,
    2014 WL 2532491 (M.D. Pa. 2014) .................................... 15

*Savage v. Glendale Union High School*,
    343 F. 3d 1036 (9th Cir. 2003) ............................................. 4

*Spencer v. Kemma*,
    523 U.S. 1 (1998) ................................................................. 6

*Tamenut  v. Mukasey*,
    521 F.3d 1000 (8th Cir. 2008) ............................................. 12

*Tellabs, Inc v. Makor Issues & Rights, Ltd*,
    55 U.S. 308 (2007) ............................................................... 5

*Tor v. YouTube, Inc.*,
    562 F.3d 1212 (9th Cir. 2009) ............................................. 5

*Toyo Tire Holdings of Am. v. Cont'l Tire of N. Am, Inc.*,
    609 F.3d 975 (9th Cir. 2010) ............................................... 7

*Urbina-Mauricio v. INS*,
    989 F.2d 1085 (9th Cir. 1993) ............................................. 11

*U.S. v. Hernandez-Vermudez*,
    356 F.3d 1011 (9th Cir. 2004) ............................................. 5

*United States v. James Daniel Good Real Property*,
    510 U.S. 43, 63 (1993) ......................................................... 9

*United States v. Montalvo-Murillo*,
    479 U.S. 711 (1990) ......................................................... 9, 10

*U.S. Parole Comm'n v. Geraghty*,
    445 U.S. 388 (1980) ............................................................. 7

# **FEDERAL STATUTES**

5 U.S.C. § 701(A)(2) ....................................................................... 11

8  U.S.C. § 1186a .............................................................................. 5

8 U.S.C. § 1228(a)-(c) ................................................................. 5, 10

8 U.S.C. § 1228(a)(1) ...................................................................... 10

8 U.S.C. § 1229(d)(2) ...................................................................... 10

8 U.S.C. § 1229(b)(1)(d) ................................................................. 12

8 U.S.C. § 1231(a)(5) .................................................................. 5, 10

8 U.S.C. § 1231(b)(3) .................................................................. 6, 10

8 U.S.C. § 1231(h) .......................................................................... 10

8 U.S.C. § 1252(i) ........................................................................... 11

# **FEDERAL REGULATIONS**

8 C.F.R. § 208.17 .............................................................................. 6

8 C.F.R. § 208.31 .................................................................... 5, passim

8 C.F.R. § 208.31(a) ...................................................................... 6,8

8 C.F.R. § 208.31(b) ................................................................ 9, passim

8 C.F.R. § 208.31(c) ........................................................................ 14

8 C.F.R. § 208.31(e)-(g) ................................................................... 6

8 C.F.R. § 238.1(b)-(d) .................................................................... 14

8 C.F.R. § 241.8(a)-(b) ................................................................. 6,14

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

## I. INTRODUCTION

Plaintiffs, Marco A. Alfaro-Garcia ("Alfaro"), Credy Madrid Calderon ("Madrid"), Gustavo Ortega ("Ortega"), Claudia Rodriguez de la Torre ("Rodriguez"), and Nancy Bardalez Serpa ("Bardalez"), filed a Complaint on their behalf and on behalf of those similarly situated seeking review of United States Citizenship and Immigration Services' ("USCIS") timeliness in reaching "reasonable fear" determinations under 8 C.F.R. § 208.31(b). *See* Compl., ECF No. 1. This regulation states that "upon issuance of a Final Administrative Removal Order under § 238.1 of this chapter, or notice under § 241.8(b) of this chapter that an alien is subject to removal, an alien described in paragraph (a) of this section shall be referred to an asylum officer for a reasonable fear determination.  In the absence of exceptional circumstances, this determination will be conducted within 10 days of the referral."  8 C.F.R. § 208.31(b).  Plaintiffs allege that USCIS violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1), by not rendering reasonable fear determinations within 10 days.  *See* Compl. ¶¶ 71-79.

As a preliminary matter, Plaintiffs' Complaint should be dismissed in part under Rule 12(b)(1) of the Federal Rules of Civil Procedure because Plaintiffs' individual claims are moot. Because USCIS has already made reasonable fear determinations as to all five Plaintiffs, their individual claims as to any delay in USCIS action are moot.  Therefore, this Court lacks subject matter jurisdiction as to Plaintiffs' individual claims, and should dismiss the complaint in part.

Additionally, this Court should dismiss Plaintiffs' Complaint under Rules 12(b)(1) and 12(b)(6) because the determination of whether "exceptional circumstances" exist is a discretionary determination not reviewable under the APA and the regulations contain no meaningful standard to determine "exceptional circumstances."  Moreover, as the regulation does not state a penalty for failure to adjudicate within the 10-day period, the 10-day adjudication represents only a non-binding internal processing goal, not a mandatory deadline that confers enforceable rights on aliens.  Lastly, Plaintiffs failed to state a claim that any delay by USCIS violates the APA because Plaintiffs failed to show that USCIS's delay is unreasonable as a matter of law.  Therefore, this Court should dismiss Plaintiffs' Complaint.

1

## II.  FACTUAL BACKGROUND

**A.     Marco A. Alfaro Garcia.**

Plaintiff Alfaro is a native and citizen of El Salvador.  Ex. 1-A, Form I-213, Record of Deportable/Inadmissible Alien.[2]  Alfaro first entered the United States on September 12, 2005, at or near Lukeville, Arizona.  Ex. 1-B, Form I-205, Warrant of Removal/Deportation.   On September 28, 2005, the Immigration Judge ordered that Alfaro be removed to El Salvador.  Ex. 3, Order of the Immigration Judge.  Immigration and Customs Enforcement ("ICE") executed Alfaro's removal order on September 29, 2005.  Ex. 1-B.  However, on or about March of 2007, Alfaro unlawfully returned to the United States at or near Laredo, Texas, without being admitted or paroled.  Ex. 1-A.  On January 14, 2014, Alfaro was arrested in Los Angeles, California, for driving under the influence.  Ex. 1-A.  Two days later, on January 16, 2014, ICE took Alfaro into custody.  Ex. 1-A.  On January 16, 2014, an ICE officer issued an order reinstating Alfaro's order of removal to El Salvador.  Ex. 1-C, I-871, Notice of Intent/Decision to Reinstate Prior Order.  While in ICE custody, Alfaro expressed a fear of return to El Salvador.  Ex. 1-D, Record of Sworn Statement in Administrative Proceedings.

On or about January 28, 2014, ICE referred Alfaro's case to USCIS for a reasonable fear determination.  Ex. 1-E, Email from Michael McDaniel.  USCIS interviewed Alfaro on or about February 11, 2014.  Ex. 1-F, Form I-899, Record of Determination/Reasonable Fear Worksheet.  USCIS issued a decision on April 25, 2014, concluding that Alfaro did not have a reasonable fear of persecution or torture in El Salvador.  Ex. 1-G, Form I-898, Record of Negative Reasonable Finding and Request for Review by Immigration Judge.

**B.     Credy Madrid Calderon.**

Plaintiff Madrid is a native and citizen of Honduras.  Ex. 2-A, Form I-862, Notice to Appear.  Madrid first entered the United States on November 28, 2004 at or near Laredo, Texas, without being admitted or paroled.  Ex. 2-A.  On May 25, 2005, Madrid was ordered removed to Honduras.  Ex. 2-B, Memorandum and Order of the Immigration Judge.  Madrid was removed to Honduras on or about September 27, 2013.  Ex. 2-C, Form I-871; Notice of Intent/Decision to Reinstate Prior Order; Ex. 2-D, Form I-215B, Record of Sworn Statement in Affidavit Form.  However, on or about March 2, 2014, Madrid illegally reentered the United States at or near

---

[2]     Exhibits 1 to 5 are attached to the Declaration of Victor M. Mercado-Santana accompanying this response.  *See* L.R. 7-2(d), 7-5(a).

Laredo, Texas.  Exs. 2-C, 2-D.  On March 6, 2014, ICE issued an order reinstating Madrid's 2005 order of removal.  Ex. 2-C.

On or about April 3, 2014, USCIS notified Madrid that he was scheduled for a reasonable fear interview, which was conducted or about May 12, 2014.  Ex. 2-E, Form M-488, Information about Reasonable Fear Interview; Ex. 2-F, Form I-899, Record of Determination/Reasonable Fear Worksheet.  USCIS issued a decision on May 29, 2014, finding that Madrid had a reasonable fear of persecution or torture.  Ex. 2-G, Form I-863, Notice of Referral to the Immigration Judge.

**C.      Gustavo Ortega.**

Plaintiff Ortega is a native and citizen of Mexico.  Ex. 3-A, Form I-213, Record of Deportable/Inadmissible Alien.  Ortega first entered the United States in September 2009 at or near Arizona without being admitted or paroled.  Ex. 3-A.  On January 23, 2014, Ortega was convicted of an aggravated felony, to wit, assault with a deadly weapon likely to cause great bodily injury, in violation of section 245(a)(1) of the California Penal Code.  Ex. 3-B, Waiver on Plea of Guilty/No Contest, *People v. Ortega*.  On February 27, 2014, ICE issued a final administrative order of removal against Ortega.  Ex. 3-C, Form I-851; Ex. 3-D, Form I-851A.  On or about February 26, 2014, Ortega expressed a fear of return to Mexico.  Exs. 3-A; 3-C.

On or about February 28, 2014, USCIS provided notice to Ortega that he was scheduled for a reasonable fear interview.  Ex. 3-D, Form G-56, Notice of Reasonable Fear Interview; Ex. 3-E, Form M-488, Information About Reasonable Fear Interview.  USCIS interviewed Ortega on or about March 25, 2014.  Ex. 3-F, Form I-899, Record of Determination/Reasonable Fear Worksheet.  USCIS issued a decision on April 29, 2014, concluding that Ortega does not have a reasonable fear of persecution or torture.  Ex. 3-G, Form I-898, Record of Negative Reasonable Fear Finding.

**D.      Claudia Rodriguez de la Torre**

Plaintiff Rodriguez is a native and citizen of Mexico.  Ex. 4-A, Form I-213.  In 1998, Rodriguez first entered the United States at or near San Luis, Arizona, without being admitted or paroled.  Ex. 4-A.  On January 2, 2014, Rodriguez was convicted of an aggravated felony, to wit, possession of a controlled substance for sale in violation of title 40, section 453.337 of the Nevada Revised Statutes.  Ex. 4-B, Judgment, *State v. Rodriguez-de la Torre*, No. CR13-1802 (Washoe Cnty. Dist. Ct. Jan. 2, 2014).  On January 21, 2014, Rodriguez was issued a final

administrative order of removal.  Ex. 4-C, Form I-851; Ex. 4-D, Form I-851A.  That same day, Rodriguez expressed a fear of return to Mexico.  Ex. 4-B.

On or about January 31, 2014, Rodriguez was referred to USCIS for a reasonable fear determination.  Ex. 4-E, Email from Justin Smith.  USCIS interviewed Rodriguez on or about February 6, 2014.  Ex. 4-F, Form I-899.  USCIS issued a decision on April 23, 2014, concluding that Rodriguez established that she had a reasonable fear of persecution in Mexico.  Ex. 4-G, Form I-863.

**E.     Nancy Bardalez Serpa**

Plaintiff Bardalez is a native and citizen of Peru.  Ex. 5-A, Form I-213.  On June 27, 2012, Bardalez was ordered removed from the United States, and was subsequently removed. Ex. 5-B, Form I-860; Ex. 5-C, Form I-296.  On February 11, 2014, Bardalez unlawfully reentered the United States at or near Douglas, Arizona.  Ex. 5-B; 5-D, Form I-871.  ICE reinstated Bardalez's order of removal on February 12, 2014.  Ex. 5-D.

On or about February 14, 2014, Bardalez was referred to USCIS for a reasonable fear determination.  Ex. 5-E, Email from Justin M. Laub.  USCIS interviewed Bardalez on or about March 10, 2014.  Ex. 5-F, Form I-899.  USCIS issued a decision on April 16, 2014, concluding that Bardalez established a reasonable fear of persecution.  Ex. 5-G, Form I-863.

## II.     LEGAL BACKGROUND

**A.     Motion to dismiss under Rule 12(b)(1).**

A complaint may be dismissed under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction.  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).  The Court may consider affidavits and other evidence in order to be satisfied that jurisdiction exists.  *Savage v. Glendale Union High School*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003).  As the party asserting subject matter jurisdiction, the plaintiff bears the burden of establishing that jurisdiction exists.  *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 376-78 (1994).

**B.     Motion to dismiss under Rule 12(b)(6).**

A complaint may be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts and allegations in the complaint.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In addition to the pleadings, the Court may consider "materials

4

embraced by the pleadings, exhibits attached to the pleadings, and matters subject to judicial notice. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030-31 (9th Cir. 2008); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (stating that courts "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"). However, the Court is not required to accept a plaintiff's legal conclusions. *Iqbal*, 556 U.S. at 678. Furthermore, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.

**C.      Reasonable fear determination procedures.**

On February 19, 1999, the legacy Immigration and Naturalization Service ("INS")[3] adopted interim regulations as part of the Government's efforts to comply with its international obligations under the United Nations Convention Against Torture ("CAT"). *See* Regulations Concerning the Convention Against Torture, 64 Fed. Reg. 8,478 (Feb. 19, 1999). The regulations sought to create fair and efficient procedures by which the United States would comply with its CAT obligations "within the overall regulatory framework for the issuance of removal orders and decisions about the execution of such order." 64 Fed. Reg. at 8,479. Certain aliens (including the Plaintiffs in this case) may seek protection from removal in accordance with the regulation at 8 C.F.R. § 208.31. This regulation covers aliens who are subject to final administrative orders of removal as well as aliens who are subject to removal under reinstated orders of removal.[4] 8 C.F.R. § 208.31(a).

---

[3]      On March 1, 2003, the functions of the former INS were transferred from the Department of Justice to three distinct components (United States Immigration and Customs Enforcement, United States Customs and Border Protection, and USCIS) in the newly formed Department of Homeland Security ("DHS"). *See* Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002).

[4]      An administrative order of removal may be entered by ICE if the alien 1) was not lawfully admitted for permanent residence, or had only been admitted conditionally for permanent residence under 8 U.S.C. § 1186a; and 2) was convicted of an aggravated felony. 8 U.S.C. § 1228(a)-(c); 8 C.F.R. § 238.1(b)(1); *see U.S. v. Hernandez-Vermudez*, 356 F.3d 1011, 1013 (9th Cir. 2004) (discussing the applicability of expedited removal to unadmitted aliens convicted of aggravated felonies). An alien is subject to removal under a reinstated order of removal if he or she 1) is subject to a prior order of removal; 2) was previously removed or

If an alien is subject to either a final administrative order of removal or reinstatement of a prior removal order, and he or she expresses a fear of return to the country of removal, then the alien is referred to USCIS for a reasonable fear determination.  *See* 8 C.F.R. § 208.31(a)-(b).  The alien is not referred to USCIS at the moment that he or she expresses a fear of return, but instead the referral happens "upon issuance" of the final administrative order or the notice of reinstatement of removal.  *See* 8 C.F.R. § 208.31(b) ("Upon issuance of a Final Administrative Removal Order [] or notice [] that an alien is subject to removal, an alien [] shall be referred to an asylum officer for a reasonable fear determination.").  The regulations do provide that the reasonable fear determination will be conducted within 10 days of the referral.  *Id.*  However, this deadline does not apply when "exceptional circumstances" are present.  *Id.*

Aliens who are found to have a reasonable fear of persecution or torture are referred to an Immigration Judge for full consideration of their claims for withholding of removal under 8 U.S.C. § 1231(b)(3), or withholding or deferral of removal under CAT under 8 C.F.R. § 208.16 and 8 C.F.R. § 208.17.  8 C.F.R. § 208.31(e).  However, an alien whom USCIS determines not to have a reasonable fear of persecution may request that an Immigration Judge review USCIS's determination, and if the Immigration Judge disagrees with USCIS, the alien may pursue full consideration of his or her claim before the Immigration Judge.  8 C.F.R. § 208.31(f)-(g).

The regulation at 8 C.F.R. § 208.31 seeks to strike a balance between the need for prompt execution of removals and the Government's international obligations.  The regulation "is intended to provide for the fair resolution of claims both to withholding under section 241(b)(3) of the act [8 U.S.C. § 1231(b)(3)], and to protection under [CAT] without unduly disrupting the operation of these special administrative removal processes."  69 Fed. Reg. at 8,485.

## ARGUMENT

### A.   Plaintiff's individual claims should be dismissed because they are moot.

Article III of the Constitution limits the jurisdiction of the federal courts to the consideration of actual cases or controversies.  *Spencer v. Kemna*, 523 U.S. 1, 7 (1998).  Under this requirement, "throughout the litigation, the plaintiff must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision."  *Spencer*, 523 U.S. at 7.  A case is moot "when the issues presented are no longer

---

departed voluntarily; and 3) unlawfully reentered the United States.  8 U.S.C. § 1231(a)(5); 8 C.F.R. § 241.8(a); *Moralez-Izquierdo v. Gonzales*, 486 F.3d 484, 491 (9th Cir. 2007).

'live' or the parties lack a legally cognizable interest in the outcome." *Toyo Tire Holdings of Am. v. Cont'l Tire of N. Am., Inc.*, 609 F.3d 975, 982-83 (9th Cir. 2010) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1984)).  A court must dismiss a case as moot if the court can no longer provide the petitioner with "effective relief." *GATX/Airlog Corp. v. U.S. Dist. Ct. for the N. Dist. of Cal.*, 192 F.3d 1304, 1306 (9th Cir. 1999).  An actual controversy must exist "at all stages of proceedings, not merely at the time when the complaint is filed." *Id.*  If a case becomes moot, then the Court lacks jurisdiction because mootness is jurisdictional. *Tor v. YouTube, Inc.*, 562 F.3d 1212, 1214 (9th Cir. 2009).

In the case of Bardalez, she received her reasonable fear determination on April 16, 2014 – the day before Plaintiffs filed their complaint seeking adjudication of their reasonable fear determinations. *See* Ex. 5-G.  Any claim that Bardalez may have had relating to the adjudication of her reasonable fear determination was moot by the time she filed her complaint. *See GATX/Airlog*, 192 F.3d at 1306.  Therefore, Plaintiffs' complaint should be dismissed as it relates to Bardalez for lack of subject matter jurisdiction.[5]  *See* Fed. R. Civ. P. 12(b)(1).

As for the remaining Plaintiffs, all four have already received their reasonable fear determinations. *See* Exs. 1-G (Alfaro's April 25, 2014, reasonable fear determination), 2-G (Madrid's May 29, 2014, reasonable fear determination); 3-G (Ortega's April 29, 2014, reasonable fear determination); 4-G (Rodriguez's April 23, 2014, reasonable fear determination).  Any claims that the remaining Plaintiffs may have in their individual capacity are moot and no longer present a case or controversy. *See GATX/Airlog*, 192 F.3d at 1306.  Therefore, Plaintiffs' complaint should be dismissed as it relates to their individual claims for lack of subject matter jurisdiction.[6]  *See* Fed. R. Civ. P. 12(b)(1).

**B.     The Regulation does not mandate adjudication within 10 days, as there is no penalty provided if the 10-day goal is not met.**

The individual claims should also be dismissed because they fail to state a claim for relief.  Simply put, Plaintiffs have failed to identify a non-discretionary duty that they are owed.

---

[5]     Plaintiffs have stated that Bardalez will voluntarily dismiss her claim.  *See* Pls' Reply in Support of Mot. for Class Cert., ECF No. 40, at 3 n.1.

[6]     Defendants recognize that with the exception of Plaintiff Bardalez, dismissal of Plaintiffs' individual claims does not necessarily mean that their class allegations are dismissed. *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397-401 (1980).

The regulation at issue, 8 C.F.R. 208.31(b), is an internal administrative processing guideline that does not create a mandatory timeline for agency action and moreover does not create a procedural right enforceable by an alien.

First, there is no basis to compel agency compliance with the 10-day time limitation. Generally, Congressional deadlines to Government agencies are interpreted as hortatory and "do not limit their power or render its exercise in disregard of the requisitions ineffectual." *French v. Edwards*, 80 U.S. 506, 511 (1872). As the Supreme Court observed: "It ignores reality to expect that the Government will be able to secure perfect performance from its hundreds of thousands of employees scattered throughout the continent." *Office of Pers. Management v. Richmond*, 496 U.S. 414, 433 (1990). The Supreme Court does not expect perfection and directs that statutory deadlines, when applied to the Government, should be interpreted as advisory deadlines meant to prod the Government to expeditious action. *See Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 162 (2003) ("It is impossible to believe that Congress meant its Herculean effort to resolve the coal industry benefit crisis to come to absolutely nothing if trustees were designated late."); *Regions Hospital v. Shalala*, 522 U.S. 448, 460 n.3 (1998) (finding that Secretary's failure to meet a deadline to promulgate regulations did not mean that official lacked power to act beyond it). Likewise, "an administrative agency is not a slave of its rules" and agencies may waive compliance with their own procedural rules in certain instances. *Health Sys. Agency of Okla. v. Norman*, 589 F.2d 486, 790 n.5 (10th Cir. 1978) (internal quotations and citation omitted); *see American Farm Lines v. Black Ball Freight Service*, 397 U.S. 538-39 (1970) ("It is always within the discretion of . . . an administrative agency to relax or modify its procedural rules adopted for the orderly transaction of business before it when in a given case the ends of justice require it."); *Ass'n of Am. Physicians & Surgs. v. United States HHS*, 224 F. Supp. 2d 1115, 1127-1128 (S.D. Tex. 2002) ("Agency delays, particularly in the face of huge administrative burdens, are common, and in this case such delays do not result in the invalidation of HHS's authority to promulgate the Privacy Rule.").

Second, there are no grounds to sanction the Government for alleged noncompliance with the regulation. A statutory or regulatory time limitation is not mandatory unless it both 1) "expressly requires an agency or public official to act within a particular time period" and 2) "specifies a consequence for failure to comply with the provision." *Brock v. Pierce County*, 476 U.S. 253, 259 (1986) (internal citation and quotations omitted); *see United States v. James*

*Daniel Good Real Property*, 510 U.S. 43, 63 (1993) ("If a statute does not specify a consequence for noncompliance with statutory timing provisions, the federal courts will not in the ordinary course impose their own coercive sanction."); *United States v. Montalvo-Murillo*, 495 U.S. 711, 711-12 (1990) ("There is no presumption or rule that for every mandatory duty imposed upon the . . . Government . . . there must exist some corollary punitive sanction for departures or omissions, even if negligent."); *Hendrickson v. FDIC*, 113 F.3d 98, 102 (7th Cir. 1997) ("absent a clear indication to the contrary, regulatory deadlines, like statutory deadlines, provide no remedy for their own violation.").

In *Brock*, Congress imposed a requirement that the Department of Labor audit certain grant recipients within 120 days of receiving a complaint, but the agency audited a recipient after that deadline had passed. 476 U.S. at 255-56. The Court rejected respondent's argument that the Secretary was precluded from acting after the 120-day statutory period. *Id.* at 257-60. The Court found no basis to create and apply a sanction for "every failure of an agency to observe a procedural requirement" where Congress did not specify a consequence for failing to comply with the time period. *Id.* at 260. The Court further rejected the respondent's claim that the Secretary's own regulations – which provided a timetable for the resolution of complaints and audits – precluded the Secretary from acting after the time limitation. *Id.* at 265. The Court held that "even if it were possible for the Secretary to create a jurisdictional limitation not contained in the statute," there was no sanction for violating the regulation because it did not specify a consequence of failing to meet the deadline. *Id.*

The regulation at issue is not mandatory because it neither requires the agency to act within a particular time period nor specifies a consequence for failing to comply with the time period. While the regulation states that the agency should conduct the reasonable fear determination within 10 days, this time period only applies in the "absence of exceptional circumstances." 8 C.F.R. § 208.31(b). In other words, the 10-day time period set out in the regulation is not absolute. Notably, the regulation itself contemplates deviations from the aspirational 10-day goal by specifically authorizing the Government, within its discretion, to take additional time to complete the reasonable fear determination where the Government believes exceptional circumstances prevent a speedier determination. In addition, the regulation does not specify a consequence for failing to meet the 10-day time frame. *See* 8 C.F.R. § 208.31. And the courts may not "invent a remedy to satisfy some perceived need to coerce the . . .

9

Government into complying with the statutory time limits." *U.S. v. Montalvo-Murillo*, 495 U.S. 711, 717 (1990).

Moreover, the agency cannot create a mandatory time limitation by regulation where it does not exist in the statute. *Brock*, 476 U.S. at 265 (stating that "even if it were possible for the Secretary to create a jurisdictional limitation not contained in the statute," violation of the time limitation was not sanctionable). Notably, none of the applicable statutes sets a time limitation for conducting reasonable fear determinations, let alone specifies a consequence for failure to reach a determination within 10 days. *See* 8 U.S.C. § 1231(b)(3) (prohibiting removal of certain aliens to a country if USCIS determines that "the alien's life or freedom would be threatened in that country" but failing to set any timelines for such determinations); 8 U.S.C. § 1231(a)(5) (failing to mention reasonable fear determinations in provision governing reinstatement of prior removal orders); 8 U.S.C. § 1228(b) (failing to mention reasonable fear determinations in provision governing final administrative of removal of aggravated felons).

What is more, Congress declared in relation to both final administrative orders of removal and reinstatement proceedings: "[n]othing in this section shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person." 8 U.S.C. §§ 1228(a)(1), 1231(h). By extension, the regulation at issue – which relates to the final administrative orders of removal provision under section 1228 and the reinstatement provision under section 1231 – also does not create any legally enforceable right or benefit. *See* 8 C.F.R. § 208.31(a) ("This section shall apply to any alien . . . whose deportation, exclusion or removal order is reinstated under [8 U.S.C. § 1231(a)(5)]."). Because Congress did not intend for any statutory timelines relating to final administrative orders of removal and reinstatement to create causes of action for aliens, the related regulation cannot create a mandatory time limitation. *See Dipeppe v. Quarantillo*, 337 F.3d 326, 333-34 (3d Cir. 2003) (finding failure to comply with statute requiring Attorney General to begin removal proceedings "as expeditiously as possible" is not actionable where former 8 U.S.C. § 1229(d)(2) provided that "nothing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable").

To create a sanction, where it does not exist in statute or regulation, is also inconsistent with agency intent. By providing an expedited process under 8 C.F.R. § 208.31(b), the legacy INS intended to ensure that aliens do not use the reasonable fear process to delay their removal

by making frivolous claims.  *See* 64 Fed. Reg. at 8,479 ("[W]e have created mechanisms to quickly identify and resolve frivolous claims to protection so that the new procedures cannot be used as a delaying tactic by aliens who are not in fact at risk.").  In other words, the 10-day provision was intended to "spur [adjudicating officers] to action, not to limit [the agency's] scope of authority" by creating a duty owed to aliens.  *See Brock v. Pierce County*, 476 U.S. 253, 259, 265 (1986); *Urbina-Mauricio v. INS*, 989 F.2d 1085, 1088 (9th Cir. 1993) (finding no cause of action where the Government delayed initiation of deportation proceedings in violation of former 8 U.S.C. § 1252(i) because legislative history showed that "Congress enacted it out of concern, not with the rights of aliens, but with prison overcrowding").  There is simply no basis to conclude that the 10-day provision created a legally enforceable right or benefit for the alien.  *See Giddings v. Chandler*, 979 F.2d 1104, 1110 (5th Cir. 1992) (finding alien lacked standing to compel commencement of proceedings because while "[w]e read § 1252(i) as imposing a duty on the Attorney General to deport criminal aliens, [] we stop short of concluding that this creates a duty *owed to the alien*.") (emphasis in original).  Thus, this Court should dismiss Plaintiffs' complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted.  *See* Fed. R. Civ. P. 12(b)(1), (b)(6).

**C.      Exceptional circumstances is not defined in the Regulation, and is a discretionary determination not subject to APA review.**

This Court should dismiss all individual and class claims because there is no standard against which this Court can determine whether "exceptional circumstances" as contemplated in 8 C.F.R. § 208.31(b) excuse USCIS's longer adjudication periods.  The regulation itself does not define "exceptional circumstances," and Plaintiffs have not pointed to any outside authority cabining the agency's authority to determine what constitutes an "exceptional circumstance."  Consequently, whether "exceptional circumstances" exist remains a determination left to the agency's broad discretion.  In the absence of meaningful standards to apply to the agency action, this Court lacks jurisdiction to review APA challenges to agency action..

Under the APA, this Court lacks jurisdiction to review "agency action committed to the agency discretion by law."  5 U.S.C. § 701(A)(2).  As the Supreme Court stated:

> [R]eview is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.  In such a case, the statute ("law") can be taken to have "committed" the decision making to the agency's judgment absolutely. . . .  [I]f no judicially manageable standards are available for judging how and when an agency should exercise its

11

discretion, then it is impossible to evaluate agency action for "abuse of discretion."

*Heckler v. Chaney*, 470 U.S. 821, 830 (1985).  Courts examine the language and structure of the law at issue, as well as the nature of the agency action at issue, to determine whether the agency action is committed to the agency's discretion.  *See Pinnacle Armor, Inc. v. U.S.*, 648 F.3d 708, 719 (9th Cir. 2011).  "The absence of any statutory factors to guide the agency's decision-making process, in combination with the open-ended nature of the inquiry, generally supports the conclusion that the agency action is committed to agency discretion by law."  *Tamenut v. Mukasey*, 521 F.3d 1000, 1004 (8th Cir. 2008) (internal quotations omitted).  Thus, review is unavailable where there is insufficient "law to apply" in reviewing the agency's action.  *Newman v. Apfel*, 232 F.3d 937, 943 (9th Cir. 2000).

This court lacks jurisdiction to review USCIS's compliance with 8 C.F.R. § 208.31(b)'s 10-day adjudication goal because the determination of whether there are exceptional circumstances is a discretionary determination.  As the regulation states, USCIS does not need to make a reasonable fear determination within 10 days when there are exceptional circumstances. 8 C.F.R. § 208.31(b).  However, the determination that exceptional circumstances exist is discretionary, because there is no meaningful legal standard by which to measure this determination.  The regulation does not define what constitutes an "exceptional circumstance." *See* 8 C.F.R. § 208.31.  Even more, Plaintiffs do not put forward in their complaint a standard by which to measure whether exceptional circumstances exist.  The explanatory comments do not explain, define, or contemplate what was considered an "exceptional circumstance."  *See* 64 Fed. Reg. at 8,485.  The discretionary nature of the "exceptional  circumstances" determination is further reinforced by the immigration statute that treats provisions similar to "exceptional circumstances" as discretionary.  *See, e.g.*, *Martinez-Rosas v. Gonzales*, 424 F.3d 926, 929-30 (9th Cir. 2005) (stating that the phrase "exceptional and extremely unusual hardship" at 8 U.S.C. § 1229b(b)(1)(D) is discretionary).  Thus, this regulation "is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion."  *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993).

The regulatory language clearly shows that USCIS's determination regarding whether exceptional circumstances are present is discretionary.  Even more, neither the statute nor the regulations provide a legal standard by which to measure USCIS's discretion.  Therefore, this Court lacks jurisdiction under the APA to review whether USCIS has complied with the

12

regulation.  Because this Court lacks jurisdiction over Plaintiffs' claims, this Court should

dismiss the complaint for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1)

**D.     Lastly, Plaintiffs have failed to state a claim that USCIS violated 8 C.F.R.
         § 208.31(b).**

Lastly, Plaintiffs failed to state a claim upon which relief may be granted because

Plaintiffs have failed to plead that any delay by USCIS is unreasonable as a matter of law.  In

evaluating a claim of unreasonable delay under the APA, this Court considers the following

factors:

> (1) the time agencies take to make decisions must be governed by a rule of
> reason[;] (2) where Congress has provided a timetable or other indication of the
> speed with which it expects the agency to proceed in the enabling statute, that
> statutory scheme may supply content for this rule of reason [;] (3) delays that
> might be reasonable in the sphere of economic regulation are less tolerable when
> human health and welfare are at stake [;] (4) the court should consider the effect
> of expediting delayed action on agency activities of a higher or competing
> priority[;] (5) the court should also take into account the nature and extent of the
> interests prejudiced by the delay[;] and (6) the court need not find any impropriety
> lurking behind agency lassitude in order to hold that agency action is
> unreasonably delayed.

*Brower v. Evans*, 257 F.3d 1058, 1068-69 (9th Cir. 2001) (quoting *Telecommunications

Research and Action Center v. FCC* ("*TRAC*"), 750 F.2d 70, 80 (D.D.C. 1984)) (internal

citations and quotations omitted) ("*TRAC* factors").  The analysis of an unreasonable delay claim

is a "complicated and nuanced task" because this Court needs to consider the particular facts and

circumstances of the delay.  *See Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d

1094, 1100 (D.D.C. 2003).

As a preliminary matter, this Court should apply the *TRAC* factors because the 10-day

timeframe at 8 C.F.R. § 208.31(b) is neither a statutory deadline nor a firm deadline.  *See

Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1177 (9th Cir. 2002).  While the Ninth

Circuit has declined to apply the *TRAC* factors where a congressionally-imposed statutory

deadline is present, *see Biodiversity Legal Found.*, 309 F.3d at 1177 n.11, the 10-day timeframe

on 8 C.F.R. § 208.31(b) is regulatory.  More importantly, however, the 10-day timeframe in the

regulation is not an absolute deadline imposed by the regulation, and one that USCIS aspires to

abide by when "exceptional circumstances" are not present.  *See* 8 C.F.R. § 208.31(b).  Thus, the

10-day regulatory timeframe is not demanded by law in such a way that it automatically results

in a breach when the deadline is not met.  *Cf. Biodiversity Legal Found.*, 309 F.3d at 1177;

13

*Center for Food Safety v. Hamburg*, 954 F. Supp. 2d 965, 968 (N.D. Cal. 2013).  Therefore, the *TRAC* factors are appropriate to review USCIS's compliance with 8 C.F.R. § 208.31(b).

### 1.    Rule of reason

The "rule of reason" factor weighs heavily in favor of USCIS because, due to exceptional circumstances, a delay of more than 10 days is not unreasonable as a matter of law.  Plaintiffs allege that USCIS renders reasonable fear determinations in about 60 days[7] and that such delay violates 8 C.F.R. § 208.31(b) because it is more than 10 days.  Compl. ¶¶ 29, 71-79.  The length of a delay alone is not dispositive, but it is a fact-specific inquiry that depends on the complexity of each case.  *See Gelfer v. Chertoff*, 2007 WL 902382, at * 2 (N.D. Cal. 2007).  USCIS currently faces high volumes of cases in which it needs to render a reasonable fear determination. *See* Mura Decl., Tbl. 3; Lafferty Decl. ¶¶ 25-28.  For example, between fiscal year 2009 and 2013, USCIS has seen reasonable fear referrals increase from 1,109 to 7,735 – an increase of 597 percent.  Mura Decl., Tbl. 3.  Furthermore, delays beyond 10 days are caused by multiple reasons including an alien's request for an attorney, availability of interview space and interpreters, and the number of Asylum Officers available.  Mora Decl. Tbl. 2; Lafferty Decl. ¶¶ 8-28.  Even more, the large volume of cases referred to USCIS, delays attributable to the aliens, and lack of resources amount to exceptional circumstances that justify USCIS's adjudication periods.  *See* 8 C.F.R. § 208.31(b).  Further, as required by the regulations, USCIS relies on Asylum Officers to conduct reasonable fear determinations and, due to these officers' specialized training and expertise, USCIS cannot allocate other employees to conduct the Asylum Officers' duties. Lafferty Decl. ¶¶ 3, 9, 16; *see* 8 C.F.R. § 208.31(b)-(c).  Plaintiffs make no allegation in their

---

[7]      Plaintiffs allege in their complaint that it takes an average of 111 days from the moment a person is taken into custody until a reasonable fear determination is issued, and 49 days for USCIS "to accept jurisdiction" over a case.  Compl ¶ 29.  The time ICE detains an alien before referral to USCIS and the time ICE takes before a case is referred to USCIS are irrelevant to the analysis of whether USCIS has unreasonably delayed adjudication of reasonable fear determinations.  A case cannot be referred to USCIS for a reasonable fear determination until a final administrative removal order or notice of reinstatement of a prior removal order is issued.  8 C.F.R. § 208.31(b).  During such time, ICE must comply with its own regulations to determine if an alien is subject to a final administrative order of removal or reinstatement of a prior removal order, including notice and an opportunity to contest the determination.  *See* 8 C.F.R. §§ 238.1(b)-(d); 241.8(a)-(b).  Thus, the only relevant period to Plaintiffs' claim of unreasonable delay is the period between when ICE refers the alien's case to USCIS and when USCIS renders its reasonable fear determination.

complaint that in spite of the vast increase in reasonable fear referrals to USCIS and the multiple reasons causing delays, including lack of agency resources, USCIS's delays are unreasonable. *See* Compl.  Given these circumstances, a delay of 60 days as alleged by Plaintiffs in their complaint is not unreasonable, and the rule of reason factor weighs in favor of the Government.

**2.      Statutory scheme**

Under the second *TRAC* factor, this Court must consider whether Congress intended to impose a timetable.  *TRAC*, 750 F.2d at 80.  However, because the statute imposes no timetable for USCIS's reasonable fear determination, this factor also weighs in the Government's favor.

**3.      Implications for health or human welfare and interests prejudiced by the delay.**

The third and fifth *TRAC* factors consider the impact of agency action on health and human welfare, and the nature and extent of the interest prejudiced by the agency' action. *TRAC*, 750 F.2d at 80.  These two factors generally overlap.  *See Kashkool v. Chertoff*, 553 F. Supp. 2d 1131, 1145 (D. Ariz. 2008).  The Government does not contest that health or human welfare factors are implicated in USCIS's reasonable fear determinations.  *Cf. Kashkool*, 553 F. Supp. 2d at 1145 (finding that adjustment of status applications implicate health or human welfare).  However, given the nature of Plaintiffs' claims, a delay of an average of 60 days as pleaded by Plaintiffs is not unreasonable.

First, while aliens may be detained while reasonable fear determinations are pending, such detention is not per se improper.  As such, the aliens are immediately subject to mandatory post-order detention under 8 U.S.C. 1231(a)(2).  *See, e.g.*, *Santos v. Sabol*, 2014 WL 2532491, at *3-6 (M.D. Pa. 2014) (stating that reinstated removal orders are final administrative orders from the moment of reinstatement).  Under section 1231(a)(2), post-order aliens may be detained for a period of ninety days, which is well within the current adjudication period of 60 days pleaded by Plaintiffs.  Thus, any claim of detention as a harm is lessened by the fact that detention is statutorily mandated for these aliens.

Second, there is an equally or more important competing interest in reaching accurate reasonable fear determinations:  avoiding erroneous return of aliens with valid claims to countries where they may be subject to harm.  Mindful of this task, USCIS implements procedural safeguards and review mechanisms to fulfill its mission to reach correct reasonable fear determinations.  *See* Lafferty Decl. ¶¶ 15-24.  Even more, the task of adjudicating reasonable fear determinations rests on Asylum Officers, and due to the Asylum Officers'

15

specialized training, their tasks cannot be assigned to other USCIS employees. *See* Lafferty

Decl. ¶¶ 3, 9-10, 27-28. A moderate delay is preferable over ordering USCIS to utilize its scarce

resources to reach reasonable fear determinations within 10 days, which could in turn increase

the risk of erroneous determinations. Thus, the third and fifth *TRAC* factors favor the

Government.

> **4.      Effect of expediting agency action.**

The fourth *TRAC* factor considers the effect of compelling expedited agency action on

other agency activities of a higher or competing priority. *TRAC*, 750 F.2d at 80. Traditionally,

courts avoid interfering with an agency's operation and discretion in determining its priorities.

*See In re Barr Laboratories*, 930 F.2d 72, 74 (D.D.C. 1991) ("[R]espect for the autonomy and

comparative institutional advantage of the executive branch has traditionally made courts slow to

assume command over an agency's choice of priorities."). Courts also consider this factor

keeping in mind that the agency is in a "unique – and authoritative – position" to consider its

projects and resources. *Mashpee Wampanoag Tribal Council*, 336 F.3d at 1101. Here, the

effects of compelling USCIS to make reasonable fear determinations within 10 days would

hinder Asylum Office operations by taking resources away from other programs of the agency.

Lafferty Decl. ¶¶ 3, 9, 31. As discussed above, USCIS has seen an increase of 597 percent in

reasonable fear cases referred since 2009. Mura Decl. Tbl. 4. USCIS has also seen a similarly

dramatic increase in the number of cases that have been referred for credible fear determinations,

rising from 5,369 cases in fiscal year 2009 to 36,035 in fiscal year 2013 – a 571 percent increase.

Mura Decl. Tbl. 4. Furthermore, the agency is best positioned to balance its budget and

resources in order to determine how to best address these dramatic increases in cases. *See*

*Mashpee Wampanoag Tribal Council*, 336 F.3d at 1101. Any order requiring USCIS to

adjudicate reasonable fear determinations within 10 days would seriously hinder USCIS's ability

to adjudicate credible fear determinations, as well as affirmative asylum applications. Lafferty

Decl. 3, 9, 31. This will cause precisely the impairment in other programs of the Asylum

Division that courts seek to avoid – programs that are equally as important as the reasonable fear

determinations that Plaintiffs seek to expedite. Therefore, this *TRAC* factor weighs in favor of

the Government.

### 5.      Evidence of impropriety behind the delay

The last *TRAC* factor considers whether there is any impropriety behind the agency's delay.  *TRAC*, 750 F.2d at 80.  Plaintiffs have pleaded no fact to support any allegation that USCIS engaged in bad faith or other impropriety against Plaintiffs or any putative class member. Therefore, this factor weighs in favor of the Government.

When considered together, the *TRAC* factors weigh in favor of the conclusion that USCIS has not engaged in an unreasonable delay.  Plaintiffs have failed to plead facts sufficient to support finding that the time that it takes USCIS to render reasonable fear determinations is an unreasonable delay under the APA.  *See* Fed. R. Civ. P. 12(b)(6).  Therefore, Plaintiffs' complaint should be dismissed for failure to state a claim upon which relief may be granted.

//

//

## V.  CONCLUSION

Plaintiffs' complaint should be dismissed as it relates to their individual claims because their claims are moot.  Furthermore, the entire complaint, including Plaintiffs' putative class claims, should be dismissed because 8 C.F.R. § 208.31(b) does not create a mandatory 10-day timeline or an enforceable right to adjudication within 10 days.  Additionally, dismissal is appropriate because USCIS's discretionary determination of whether exceptional circumstances exist is not subject to review under the APA.  Lastly, a delay of 60 days in reaching reasonable fear determinations as pleaded by Plaintiffs are not unreasonable as a matter of law.  Therefore, this Court should dismiss Plaintiffs' Complaint.

DATED:  July 14, 2014                    Respectfully submitted.

STUART F. DELERY
Assistant Attorney General
Civil Division

DOUGLAS E. GINSBURG                 COLIN A. KISOR
Assistant Director                              Acting Director, District Court Section
Office of Immigration Litigation        Office of Immigration Litigation

ERIK QUICK                                      ELIZABETH STEVENS
Trial Attorney                                    Assistant Director, District Court Section
                                                          Office of Immigration Litigation
REBEKAH NAHAS
Trial Attorney                                    /s/ Victor M. Mercado-Santana
                                                          VICTOR M. MERCADO-SANTANA
                                                          Trial Attorney
                                                          Civil Division, Office of Immigration Litigation
                                                          United States Department of Justice
                                                          P.O. Box 868, Ben Franklin Station
                                                          Washington, DC  20044
                                                          Telephone:  (202) 305-7001
                                                          Facsimile:  (202) 616 -8962
                                                          victor.m.mercado-santana@usdoj.gov

                                                          *Counsel for Defendants*

18

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system.  I certify that all participants are CM/ECF users and that service will be accomplished by the CM/ECF system.


Dated:  July 14, 2014                           Respectfully submitted.

                                                /s/ Victor M. Mercado-Santana
                                                VICTOR M. MERCADO-SANTANA
                                                Trial Attorney
                                                Civil Division, Office of Immigration Litigation
                                                United States Department of Justice
                                                P.O. Box 868, Ben Franklin Station
                                                Washington, DC  20044
                                                Telephone:  (202) 305-7001
                                                Facsimile:  (202) 616 -8962
                                                victor.m.mercado-santana@usdoj.gov

                                                *Counsel for Defendants*