JOHN D. PINGEL
jpingel@reedsmith.com
REED SMITH LLP
101 Second St., Suite 1800
San Francisco, CA 94105
Tel.: (415) 543-8700
Fax: (415) 391-8269

*Attorneys for Plaintiffs Alfaro-Garcia,*
*Madrid Calderon, Ortega, Rodriguez de*
*la Torre, and Bardalez Serpa*

Additional Counsel listed on signature page

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

|  |  |
|---|---|
| MARCO ANTONIO ALFARO GARCIA, CREDY MADRID CALDERON, GUSTAVO ORTEGA, CLAUDIA RODRIGUEZ DE LA TORRE, and NANCY BARDALEZ SERPA, on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>JEH JOHNSON, Secretary of Homeland Security, LEON RODRIGUEZ, Director of U.S. Citizenship and Immigration Services,[1] and JOSEPH LANGLOIS, Associate Director of Refugee, Asylum and International Operations,<br><br>*Defendants.* | Case No. 4:14-cv-1775-YGR<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS**<br><br>Hon. Yvonne Gonzalez Rogers<br><br>Date: September 23, 2014<br>Time: 2:00 pm<br>Courtroom 5, 2d Floor<br>Oakland Courthouse |

---

[1] Leon Rodriguez, as the new Director of U.S. Citizenship and Immigration Services, is substituted for Lori Scialabba.  *See* Fed. R. Civ. P. 25(d).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

US_ACTIVE-118872477

**Table of Contents**

Page

INTRODUCTION ................................................................................................................. 1

BACKGROUND AND STANDARD OF REVIEW ........................................................... 2

ARGUMENT ........................................................................................................................ 3

I.   As Plaintiffs Seek to Represent an Inherently Transitory Class, the Court has Jurisdiction to Hear Their Claims. .......................................................................... 3

II.   The Defendants' Duty to Follow the Mandatory Regulation. ................................. 5

   A.   The 10-Day Time Limitation Is Not Merely "Hortatory." ............................... 5

   B.   Plaintiffs Seek Compliance With The Regulation, Not To Sanction The Government ...................................................................................................... 9

   C.   The Agency Can Create A Mandatory Deadline Through Regulation. ............ 11

   D.   Plaintiffs Do Not Seek To Enforce Rights Precluded Under The INA. .......... 13

   E.   The "Exceptional Circumstances" Exception Does Not Preclude Judicial Review. ........ 14

III.   Defendants' Lengthy, Unjustified Delays are Not "Reasonable" As a Matter of Law. ........ 18

   A.   Defendants' Presentation Of Matters Outside The Pleadings Is Improper. ...................... 19

   B.   The "Reasonableness" Of Defendants' Delays Cannot Be Resolved On The Pleadings. ............................................................................................... 20

CONCLUSION .................................................................................................................. 21

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

# Table of Authorities

**Cases**

*American Farm Lines v. Black Ball Freight Services*,
   397 U.S. 532 (1970) ........................................................................................... 6, 8

*Ana Int'l v. Way*,
   393 F.3d 886 (9th Cir. 2004) ................................................................................ 17

*Arteaga-De Alvarez v. Holder*,
   704 F.3d 730 (9th Cir. 2012) ................................................................................ 18

*Ass'n of Am. Physicians & Surgs, Inc.. v. United States HHS*,
   224 F. Supp. 2d 1115 (S.D. Tx. 2002) .................................................................. 9

*Barnhart v. Peabody Coal Co.*,
   537 U.S. 149 (2003) .......................................................................................... 9, 10

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) .......................................................................................... 3, 20

*Biodiversity Legal Found. v. Badgley*,
   309 F.3d 1166 (9th Cir. 2002) ......................................................................... 6, 10

*Brock v. Pierce County*,
   476 U.S. 253 (1986) ......................................................................... 9, 10, 11, 12

*County of Riverside v. McLaughlin*,
   500 U.S. 44 (1991) ................................................................................................ 3

*Daohua Chen v. Chertoff,*,
   2008 U.S. Dist. LEXIS 4891 (N.D. Cal. Jan. 23, 2008) ...................... 3, 18, 20

*Delaney v. Aurora Loan Servicing,*,
   2009 U.S. Dist. LEXIS 122573 (N.D. Cal. 2009) ............................................. 19

*Dipeppe v. Quarantillo*,
   337 F.3d 326 (3d Cir. 2003) ................................................................................ 14

*Dong v. Chertoff*,
   513 F. Supp. 2d 1158 (N.D. Cal. 2007) ....................................................... passim

*Elmalky v. Upchurch*,
   2007 U.S. Dist. LEXIS 22353 (N.D. Tex. Mar. 28, 2007) ............................... 15

*French v. Edwards*,
   80 U.S. 506 (1871) ................................................................................................ 6

*Ghahremani v. Gonzales*,
   498 F.3d 993 (9th Cir. 2007) ............................................................................... 17

*Giddings v. Chandler*,
   979 F.2d 1104 (5th Cir. 1992) ............................................................................... 8

*Health Systems Agency of Oklahoma, Inc. v. Norman*,
   589 F.2d 486 (10th Cir. 1978) ............................................................................... 9

*Heckler v. Chaney*,
   470 U.S. 821 (1985) ....................................................................................... 17, 19

*Hendrickson v. FDIC*,
   113 F.3d 98 (7th Cir. 1997) ................................................................................... 9

*Houle v. Riding*,
   2008 U.S. Dist. LEXIS 8482 (E.D. Cal. 208) ...................................................

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

*Husyev v. Mukasey*,
  528 F.3d 1172 (9th Cir. 2008) ............................................................... 16, 17

*Int'l Labor Mgmt. Corp. v. Perez,*,
  2014 U.S. Dist. LEXIS 57803 (M.D.N.C. Apr. 25, 2014) ................................ 10, 11, 12

*Kim v. Ashcroft*,
  340 F. Supp. 2d 384 (S.D.N.Y. 2004) ......................................................... 16

*Liangda Feng v. Rand Beers,*,
  2014 U.S. Dist. LEXIS 33908 (E.D. Cal. 2014) ............................................. 3, 20

*Lin v. Chertoff*,
  2007 U.S. Dist. LEXIS 57964 (W.D. Okla. Aug. 8, 2007) ..................................... 15

*Marder v. Lopez*,
  450 F.3d 445 (9th Cir. 2006) ................................................................. 19

*Martinez-Rosas v. Gonzales*,
  424 F.3d 926 (9th Cir. 2005) ................................................................. 18

*Mazouchi v. Still,*,
  2007 U.S. Dist. LEXIS 53999 (N.D. Cal. July 10, 2007)....................................... 16

*Medina-Morales v. Ashcroft*,
  371 F.3d 520 (9th Cir. 2004) .............................................................. 14, 17

*Morton v. Ruiz*,
  415 U.S. 199 (1974).......................................................................... 6, 7, 8

*Norton v. South Utah Wilderness Alliance*,
  542 U.S. 55 (2004).......................................................................... 5, 11, 12

*Office of Foreign Assets Control v. Voices in the Wilderness*,
  382 F. Supp. 2d 54 (D.D.C. 2005) ............................................................. 12

*Office of Personnel Management v. Richmond*,
  496 U.S. 414 (1990).......................................................................... 10

*Pitts v. Terrible Herbst, Inc.*,
  653 F.3d 1081 (9th Cir. 2011) ............................................................... 4

*Preap v. Johnson*,
  Case No. 4:13-CV-5754-46R (N.D. May 15, 2014).............................................. 12

*Ramadan v. Gonzales*,
  479 F.3d 646 (9th Cir. 2007) ................................................................. 17

*Regions Hospital v. Shalala*,
  522 U.S. 448 (1998).......................................................................... 9

*Roshandel v. Chertoff,*,
  2008 U.S. Dist. LEXIS 90899 (W.D. Wash. May 5, 2008)...................................... 19

*Saini v. United States Citizenship & Immigration Servs.*,
  553 F. Supp. 2d 1170 (E.D. Cal. 2008) ...................................................... 3, 20

*Service v. Dulles*,
  354 U.S. 363 (1957).......................................................................... 11

*Singh v. Holder*,
  656 F.3d 1047 (9th Cir. 2011) ............................................................... 17

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) ................................................................ 3

*Taslimi v. Holder*,
  590 F.3d 981 (9th Cir. 2010) ........................................................................................ 16

*Telecommunications Research Action Center v. FCC*,
  750 F.2d 70 (D.C. Cir. 1984) ................................................................................... 18, 20

*United States ex rel. Accardi v. Shaughnessy*,
  347 U.S. 260 (1954) ...................................................................................................... 11

*United States v. James Daniel Good Real Property*,
  510 U.S. 43 (1993) ........................................................................................................ 10

*United States v. Montalvo-Murillo*,
  495 U.S. 711 (1990) ........................................................................................................ 9

*United States v. Morgan*,
  193 F.3d 252 (4th Cir. 1999) ........................................................................................ 11

*Urbina-Mauricio v. INS*,
  989 F.2d 1085 (9th Cir. 1993) ........................................................................................ 8

*Wade v. Kirkland*,
  118 F.3d 667 (9th Cir. 1997) .......................................................................................... 4

*Yellin v. United States*,
  374 U.S. 109 (1963) ........................................................................................................ 8

**Statutes**

5 U.S.C. § 706(1) ...................................................................................................... 10, 12

8 U.S.C. § 1228 ............................................................................................................. 13

8 U.S.C. § 1228(a)(1) ............................................................................................... 13, 14

8 U.S.C. § 1228(b) ........................................................................................................ 14

8 U.S.C. § 1231 ............................................................................................................. 13

8 U.S.C. § 1231(a)(5) ............................................................................................... 13, 14

8 U.S.C. § 1231(h) ................................................................................................... 13, 14

148 U.S.C. § 1252(a)(2)(B)(ii) ................................................................................. 14, 17

**Rules**

Fed. R. Civ. P. 12(b)(1) ................................................................................................. 21

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 3, 20

Fed. R. Civ. P. 12(d) ............................................................................................... 20, 21

**Regulations**

8 C.F.R. § 208 ............................................................................................................... 14

8 C.F.R. § 208.31 .................................................................................................. 7, 14, 15

8 C.F.R. § 208.31(b) ............................................................................................... passim

8 C.F.R. § 238 ............................................................................................................... 15

8 C.F.R. § 241 ............................................................................................................... 15

8 C.F.R. § 241.15(g) ..................................................................................................... 15

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# **INTRODUCTION**

Defendants Secretary Johnson, Director Rodriguez and Associate Director Langlois—the U.S. officials tasked with implementing a fair and lawful immigration system—show a remarkable disregard for the duties imposed on them by clear and mandatory regulatory language, and for the people whose care and protection they are entrusted with by law. According to Defendants' Motion to Dismiss ("Motion"), Plaintiffs—noncitizens who fled their home countries and have expressed fear of persecution or torture if they are returned—cannot be heard on their claims that the Defendants willfully and systematically failed to adhere to a binding regulation requiring Defendants to perform screening interviews, and bring Plaintiffs' request for refuge to immigration judges within a prescribed 10-day period. Instead, Defendants Johnson, Rodriguez and Langlois, and the immigration agencies for which they hold ultimate responsibility, believe they can ignore this rule, unilaterally extend the brief period allowed asylum officers to preliminarily assess protection claims, and indefinitely detain those who have sought protection within our borders. By doing so, these officials and the agencies they administrate cause those seeking protection from persecution and torture to give up the hope that this nation's ideals of freedom and the rule of law apply to them.

But the law, as interpreted and applied by a number of courts, does not give these Defendants the unfettered discretion to disregard clear and mandatory regulatory language. Nor do these Defendants stand immune from the Federal Rules of Civil Procedure, long established judicial precedent regarding the viability of claims brought by an inherently transitory class, or the requirements of the Administrative Procedure Act. Thus, their claims of mootness, challenges to subject matter jurisdiction, and vague references to "exceptional circumstances" (never pled in the complaint, nor even identified in the materials these Defendants improperly submit on a motion to dismiss), do not provide a basis to dismiss the Plaintiffs' complaint. Instead, this Court must deny Defendants' Motion for at least the following reasons:

*First*:     Because this is an inherently transitory class, the class claims do not become moot simply because the Defendants belatedly provided the Named Plaintiffs with reasonable fear determinations after the class complaint was filed but prior to a ruling on class certification (*see* Section I);

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*Second*:    As numerous other courts have held with respect to similar statutory and regulatory deadlines, the Court can enforce 8 C.F.R. § 208.31(b) because this regulation bestows important procedural protections on Class Members seeking protection under the immigration laws (*see* Section II); and

*Third*:    Even without the mandate of the 10-day rule, this Court must allow Plaintiffs' claims to proceed as the complaint alleges that the Defendants have "unreasonably" delayed the issuance of reasonable fear determinations. In arguing to the contrary, Defendants improperly rely on evidence outside the complaint—which the Court cannot consider on a motion to dismiss. Moreover, that evidence in fact only substantiates the fact that the Defendants systematically and openly delay conducting determinations, and thereby unnecessarily prolong the detention of Class Members without justification (*see* Section III).

## BACKGROUND AND STANDARD OF REVIEW

This case concerns a putative class of noncitizens who seek refuge within the United States because they fear persecution or torture in their home countries. U.S. law and the nation's treaty obligations require that Class Members have an adequate opportunity to seek protection within the United States; this in turn has led the Defendant agencies to adopt certain regulatory processes to ensure that Class Member claims are heard in a fair and timely manner. (*See* Compl. [Dkt. 1] ¶¶ 19-22.) Among these is a regulatory provision allowing U.S. Citizen and Immigration Services ("USCIS") up to 10 days – and only 10 days in the absence of exceptional circumstances – to determine whether an individual has expressed a "reasonable fear" of persecution or torture, and to refer individuals determined to have a "reasonable fear" to an immigration law judge for a full hearing on their claims for relief. 8 C.F.R. § 208.31(b). Yet despite this clear regulatory mandate, Defendants have "rarely" complied with this obligation, leaving Class Members to "languish in detention for months and, in some cases, over a year" at great emotional, physical, and financial cost to Class Members and their families. (*See id.* ¶¶ 7, 31-59 (describing drastic human consequences" caused by Defendants' violations, including depression, despair, and financial and emotional

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

deprivation).)  To correct this persistent violation of duty, Plaintiffs seek relief under the Administrative Procedure Act ("APA") and the Mandamus and Venue Act to compel Defendants to comply with their mandatory legal obligations, and to cease their "unreasonable" delays in processing Plaintiffs' claims for relief. (*See id.* ¶¶ 8, 71-79.)

To prevail on a motion to dismiss under FRCP 12(b)(6), Defendants must demonstrate that Plaintiffs' complaint does not set forth facts sufficient to establish a "plausible" right to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In considering Defendants' Motion, this Court's "[r]eview is limited to the contents of the complaint," and it must accept all factual allegations in the complaint as true and construe them in the light most favorable to Plaintiffs. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

When considering challenges to delayed agency action in the immigration context, courts generally will not dismiss claims that government officials "unreasonably" delayed acting on an application for immigration relief under the APA "absent circumstances suggesting that Plaintiff's claim is frivolous." *Liangda Feng v. Rand Beers*, 2014 U.S. Dist. LEXIS 33908, at *3-4 (E.D. Cal. 2014) (citing *Houle v. Riding*, 2008 U.S. Dist. LEXIS 8482, at *7 (E.D. Cal. 2008)). That is because "[w]hat constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case." *Daohua Chen v. Chertoff*, 2008 U.S. Dist. LEXIS 4891, at *7 (N.D. Cal. Jan. 23, 2008); *Saini v. United States Citizenship & Immigration Servs*., 553 F. Supp. 2d 1170, 1177 (E.D. Cal. 2008).

Plaintiffs' claims that Defendants' lengthy, unjustified delays in conducting reasonable fear determinations—in direct violation of a binding regulation—are "unreasonable" are clearly plausible, and this Court must therefore deny Defendants' motion to dismiss.

## ARGUMENT

**I.    As Plaintiffs Seek to Represent an Inherently Transitory Class, the Court has Jurisdiction to Hear Their Claims.**

As the Defendants freely concede (Dkt. 38 at 7 n.6.),where an individual seeks to represent a class with inherently transitory claims—as the Named Plaintiffs seek to do here—the resolution of their individual claims on the merits does not moot the class action allegations. *See County of*

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*Riverside v. McLaughlin*, 500 U.S. 44, 52-53 (1991); *Wade v. Kirkland*, 118 F.3d 667, 670 (9th Cir. 1997). Even where "the class was not certified until after the named plaintiffs' claims had become moot," mootness of their individual claims does "not deprive [the Court] of jurisdiction" because "some claims are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires." McLaughlin, 500 U.S. at 52-53 (internal quotation marks and citations omitted). Thus, if the claims in a class action case "are indeed 'inherently transitory,' then the action qualifies for an exception to mootness even if there is no indication that [the named plaintiff] or other current class members may again be subject to the acts that gave rise to the claims" as such "a constantly changing putative class that will become subject to the[] allegedly unconstitutional conditions." *Wade*, 118 F.3d at 670 (internal citation omitted).

Here, the class the Named Plaintiffs seek to represent is inherently transitory. As Plaintiffs explained in their class certification briefing, individuals will join the class as they express a fear of returning to their home countries, and exit the class once the reasonable fear determination process is completed in their cases. (Plaintiffs' Reply in Support of Motion for Class Certification [Dkt. 40] at 4.) Just like the court considering the claims asserted in *McLaughlin*—where county detainees sought timely probable cause determinations—this Court has not had time to reach the issue of class certification before the Named Plaintiffs' individual claims became moot. *See McLaughlin*, 500 U.S. at 52. Nevertheless, "it is certain that other persons similarly situated will have the same complaint," *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1090 (9th Cir. 2011), that is, that Defendants will continue to violate the mandatory regulation and fail to provide reasonable fear determinations within the mandated 10-day period or within a reasonable amount of time. As with the Named Plaintiffs, if individuals similarly aggrieved by Defendants' unlawful conduct bring separate actions in the future, their reasonable fear determinations—although issued months after the 10-day period allotted for such government action, as in the case of the Named Plaintiffs—such individuals claims would most certainly moot by the time the Court reached the class certification issue.

Because this case involves "a constantly changing putative class that will become subject to these allegedly [unlawful practices]," *Wade*, 118 F.3d at 670, the case involves "inherently

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    transitory" claims. Therefore, the Named Representatives can move forward with their class wide

2    claims, notwithstanding the mootness of their individual claims.[2]

3    **II.     The Defendants' Duty to Follow the Mandatory Regulation.**

4           The regulation at issue here, 8 C.F.R. § 208.31(b), creates an enforceable duty to adjudicate

5    reasonable fear determinations within 10 days because it bestows important procedural benefits on

6    Plaintiffs. The five arguments Defendants advance to the contrary are without merit (*see* Defs.' Br.

7    [Dkt.43] at 7-11) and are easily refuted as follows:

8                    **A.   *The 10-Day Time Limitation Is Not Merely "Hortatory."***

9           Defendants take the remarkable position that the USCIS can simply "waive compliance" with

10   8 C.F.R. § 208.31(b) when compliance is inconvenient, even if doing so results in the prolonged,

11   unnecessary detention of Class Members. (*See* Defs.' Br. [Dkt.43] at 8) Defendants dismiss the 10-

12   day deadline as, alternatively, "hortatory," "advisory," "aspirational," or a "goal," (*see* Defs.' Br.

13   [Dkt.43] at 8, 9, 12), and ask this Court to completely read out of the regulation the plain language

14   mandating USCIS to conduct a reasonable fear determination within 10 days, absent exceptional

15   circumstances. *See* 8 C.F.R. § 208.31(b) ("In the absence of exceptional circumstances, this

16   determination *will* be conducted within 10 day of the referral.") (emphasis added). Despite

17   Defendants' protestations to the contrary, however, an agency cannot pick and choose when to abide

18   by a regulation whose plain terms make compliance mandatory, especially given that the Class

19   Members' liberty is at stake.[3]

20          Defendants' sweeping claim that statutory or regulatory deadlines, when applied to the

21   Government, are "advisory," (Defs.' Br. [Dkt.43] at 8), finds no support in the case law. To the

22   contrary, the Supreme Court has held that "when an agency is compelled by law to act within a

23   certain time period . . . a court can compel the agency to act . . ." *Norton v. South Utah Wilderness*

24   ─────────────────────

25   [2] Although the government has never disputed that it continues to detain class members with live
     claims, Plaintiffs are prepared to offer evidence of the continued existence of such individuals
26   should the Court require it.

27   [3] Defendants' complaint that Plaintiffs seek to make them a "slave" to their own rules, (*see* Defs.'
     Br. [Dkt.43] at 8.), is particularly ill-advised given that the rule serves only to protect Class Members
28   from being unnecessarily incarcerated by Defendants for months or longer.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

*Alliance*, 542 U.S. 55, 62 (2004) ("*SUWA*"). *See also Biodiversity Legal Found. v. Badgley*, 309

F.3d 1166, 1177-78 & n.11 (9th Cir. 2002) (issuing injunction for agency to comply with statutory

deadline); *Dong v. Chertoff*, 513 F. Supp. 2d 1158, 1169 (N.D. Cal. 2007) (ordering the government

to comply with specific procedures, including deadlines, for processing applications for adjustment

of status).

        Defendants' more limited argument that they need not comply with the regulation at issue

here "because it is an internal administrative processing guideline," (Defs.' Br. [Dkt.43] at 8.), also

fails. The 10-day regulation is enforceable because it confers important procedural rights upon the

Plaintiff Class by ensuring that the government's desire to preliminarily assess a petitioner's

reasonable fear will not impede a fair and timely hearing of her claims for relief. The Supreme Court

has long distinguished between regulations that "confer important procedural benefits upon

individuals," with which agencies must comply, and regulations that are "mere aids to the exercise

of the agency's independent discretion," which the agency can "relax or modify." *American Farm

Lines v. Black Ball Freight Services*, 397 U.S. 532, 538 (1970); *French v. Edwards*, 80 U.S. 506,

511 (1871) (holding that rules that provide for "the protection of the citizen, . . . and by a disregard

of which his rights might be and generally would be injuriously affected" are "mandatory"). As the

Supreme Court clearly explained in *Morton v. Ruiz*: "Where the rights of individuals are affected, it

is incumbent upon agencies to follow their own procedures. This is so even where the internal

procedures are possibly more rigorous than otherwise would be required." 415 U.S. 199, 235 (1974).

        Here, 8 C.F.R. § 208.31(b) confers important procedural benefits on Class Members by

ensuring that immigration judges hear their claims for protection in the United States in a timely

manner, and that they not suffer prolonged periods of detentions while immigration officers process

their claims. While Defendants argue that the regulations containing the 10-day limitation exist only

to benefit immigration authorities, *i.e.*, that this regulation was "intended to ensure that [noncitizens]

do not use the reasonable fear process to delay their removal by making frivolous claims," (Defs.'

Mot. at 10-11.), this claim cannot be reconciled with the fact that the regulation was enacted to

implement the Convention Against Torture, which plainly was established to provide protections to

those who fear torture. Indeed, Defendants themselves acknowledge, as they must, that the

government adopted these regulations "as part of the Government's efforts to comply with its

international obligations under the United Nations Convention Against Torture." (Defs.' Mot. at 5.)

Undisputedly these "regulations sought to create *fair and efficient procedures* by which the United

States would comply with its [Convention Against Torture ("CAT")] obligations 'within the overall

regulatory framework for the issuance of removal orders and decisions about the execution of such

order [sic].'" (Defs.' Mot. at 5 (citing 64 Fed. Reg. 8478, 8479) (emphasis added).). *See also* 64 Fed.

Reg. at 8485 (stating that 8 C.F.R. § 208.31 "is intended to provide *for the fair resolution of claims*

both to withholding under section 241(b)(3) of the Act, and to protection under the Convention

Against Torture without unduly disrupting the operation of these special administrative removal

processes.") (emphasis added). Given that Defendants acknowledge that the regulation at 8 C.F.R. §

208.31(b) protects "[c]ertain aliens (including the Plaintiffs in this case)" (Defs.' Mot. at 5.), and that

the regulation itself was enacted to comply with the Convention Against Torture, there is no question

that the regulation "affect[s]" "the rights of individuals," *Morton*, 415 U.S. at 235, by creating a

process to allow Plaintiffs and others like them to seek protection from persecution and torture that

limits the time immigration agencies can delay the adjudication of their reasonable fear claims.

  In addition to ensuring the timely processing of Class Members' claims for relief, the

regulation also protects each Class Member in another way—by safeguarding against the prolonged

deprivation of her liberty that results from government-imposed mandatory detention pending

adjudication of her claim. (*See* Defs.' Mot. at 15 (noting the government's position that noncitizens

in reasonable fear determination process are subject to mandatory detention)) Because any agency

delay in completing the reasonable fear determination process necessarily delays the rest of the

noncitizen's immigration case, Defendants' violation of the regulation results in months of

unnecessary detention even before a noncitizen has a chance to present his or her claim before the

immigration courts. The 10-day regulatory timeline, therefore, provides another important

procedural protection to the noncitizen, namely, a reduction in the overall amount of detention the

noncitizen must endure while his or her claims are fully adjudicated on the merits.

  Because the regulation confers an important procedural right on the noncitizen, the cases

upon which Defendants rely are inapposite. In each of these cases, the court found that the plaintiffs

did not receive any important procedural benefit from the rules at issue or alternatively could not claim any prejudice from the government's non-compliance with its procedures. *See Am. Farm Lines*, 397 U.S. at 537 (finding that a rule requiring that a motor carrier applying for temporary operating authority include certain information in its application was for the benefit of the adjudicating agency, not competitors of the applicant); *Urbina-Mauricio v. INS*, 989 F.2d 1085, 1088 (9th Cir. 1993) (rejecting noncitizen's claim that a statute requiring "expeditious" imposition of removal proceedings for certain "criminal aliens" in criminal custody barred the government from initiating removal proceedings against him because statute was intended to address prison overcrowding, not create a benefit for noncitizens, and because noncitizen could not claim any prejudice by delay); *Giddings v. Chandler*, 979 F.2d 1104, 1108-10 (5th Cir. 1992) (same).[4] The manifest purpose of the regulations at issue in these cases was not to benefit the individual seeking to enforce them, and, unsurprisingly, none of those regulations had an enactment history anything like this one. Here, in contrast, the regulatory history documents that the agency intended to create a "fair" process for noncitizens and, as explained above, fairness for these noncitizens necessarily means timely resolution of their claims while they are detained.

Even if the regulation serves a secondary purpose of benefit to the agency (insofar as any deadline may aid the functioning of a complex system), that the regulation benefits both Defendants and Class Members does not render the regulation unenforceable by Plaintiffs. *See Yellin v. United States*, 374 U.S. 109, 120-24 (1963) (noting that rules of House Committee on Un-American Activities could be enforced by petitioner because the rules "work for the witness' benefit," and not "to provide guidance for the Committee alone"). Because "the rights of individuals are affected," it is therefore "incumbent upon [the agency] to follow [its] own procedures." *Morton*, 415 U.S. at 235.

---

[4] Defendants cite several other cases in support of their argument that the regulation is an unenforceable "internal processing" deadline, but those cases concern whether a plaintiff can "sanction" the government for violating its procedures – a distinct question addressed in Section II.B *infra*.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

### B. *Plaintiffs Seek Compliance With The Regulation, Not To Sanction The Government.*

Plaintiffs, as aggrieved parties, seek to compel the agency to comply with its own regulation, not to "sanction" the government as Defendants claim. (*See* Defs.' Mot. at 8-9.) Thus it is of no moment that 8 C.F.R. §208.31(b) does not contain an express sanction for Defendants' violations of the regulation.

As an initial matter, there is an essential difference between seeking compliance with a regulation, as the Plaintiffs do here, and cases in which a party seeks a sanction against the government when the government violates a statutory or regulatory mandate, or otherwise engages in misconduct. Defendants miss this point and thus wrongly rely on cases in which the courts address whether the government's failure to act within a statutory or regulatory deadline precludes it from taking that action at a later date. *See e.g., Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 152, 158, 172 (2003) (assignment of retirement benefits responsibility to companies was valid despite the fact that it was made after statutory deadline); *United States v. Montalvo-Murillo*, 495 U.S. 711, 722 (1990) (holding that "respondent was not, and is not, entitled to release as a sanction for the delay" in holding a bail hearing); *Regions Hospital v. Shalala*, 522 U.S. 448, 460 n.3 (1998) (noting that failure of Secretary of Health and Human Services to meet deadline regarding reaudit rule "does not mean that official lacked the power to act"); *Brock v. Pierce County*, 476 U.S. 253, 266 (1986) (holding that statutory requirement that the Secretary of Labor take action by a certain deadline "does not, standing alone, divest the Secretary of jurisdiction to act after that time"); *Hendrickson v. FDIC*, 113 F.3d 98, 102 (7th Cir. 1997) (holding that "agency does not lose jurisdiction for failure to adhere to a regulatory deadline unless the regulation in question" expressly requires action by the deadline and specifies the consequence of the failure to comply); *Health Systems Agency of Oklahoma, Inc. v. Norman*, 589 F.2d 486, 489-90 (10th Cir. 1978) (government could not treat deadline as jurisdictional, precluding its ability to take action on tardy application); *Ass'n of Am. Physicians & Surgs, Inc.. v. United States HHS*, 224 F. Supp. 2d 1115, 1127-28 (S.D. Tx. 2002) (delay in promulgating final rule did not deprive the agency of the power to act). Similarly, in the other cases Defendants cite, the plaintiffs sought to impose a sanction—such as a waiver of a

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

defense or dismissal—as a remedy for governmental error. *United States v. James Daniel Good Real Property*, 510 U.S. 43, 47 (1993) (respondent sought to dismiss forfeiture action brought within statute of limitations as a remedy for failure of government to comply with other timing requirements); *Office of Personnel Management v. Richmond*, 496 U.S. 414, 418 (1990) (respondent sought to make an estoppel claim for monetary damages against the government for misinformation provided by a government agent).

But Plaintiffs here do not seek to limit the ability of any agency to take action, or its jurisdiction in future cases, or a grant of automatic status in the United States, or any other sanction for these Defendants failing to comply with the regulation. Rather, Plaintiffs seek *compliance* with the 10-day regulation. The Supreme Court recognized this distinction in *Brock*, when it stated there were "less drastic remedies available for failure to meet a statutory deadline" than the requested sanction forbidding the government from ordering repayment of certain overpayments made to a county, observing that "nothing in [the statute] appears to bar an action to enforce the 120-day deadline" under the APA. *Brock*, 476 U.S. at 260 n.7. "Thus, it would appear that a complainant adversely affected by the Secretary's failure to act on a complaint could bring an action in the district court," and "[t]he court would have the authority to 'compel agency action unlawfully withheld or unreasonably delayed.'" *Id.* (citing 5 U.S.C. § 706(1)). *See also Int'l Labor Mgmt. Corp. v. Perez*, 2014 U.S. Dist. LEXIS 57803, at * 21-22 (M.D.N.C. Apr. 25, 2014) ("providing equitable relief to ensure the DOL abides by mandatory statutory limits is wholly divorced from an order disallowing the DOL from acting once the statutorily-derived time limits have run. The latter is precluded by *Brock*; the former is untouched.").[5] That is precisely what Plaintiffs have done here.

Consistent with *Brock*, numerous courts have recognized their authority to order *compliance* with a statutory or regulatory deadline. *See, e.g.*, *Brodivercity Legal Found.*, 309 F.3d at 1177-78 & n.11 (issuing injunction for agency to comply with statutory deadline); *Dong*, 513 F. Supp. 2d at 1169 (ordering the government to comply with specific procedures, including deadlines, for

---

[5] Likewise, in *Barnhart*, the Court recognized that "the Commissioner had no discretion to choose to" act outside the statutory deadline, and "that the [action] here represents a default on a statutory duty." *Id.* at 157. Thus, the Court recognized that the government had a *duty* to act. The question in the case, however, was "what the consequence of the tardiness should be." *Id.*

1 processing applications for adjustment of status); *Int'l Labor Mgmt. Corp.*, 2014 U.S. Dist. LEXIS

2 57803, at \*47 (ordering government to comply with statutory and regulatory deadlines for the

3 processing of employment visas); *cf. SUWA*, 542 U.S. at 65 (noting that "when an agency is

4 compelled by law to act within a certain time period . . . a court can compel the agency to act . . .").

5 In another context, this Court has recently noted the difference between this "loss of authority" line

6 of cases and ones in which the government does not lose the ability to act through mandated

7 compliance with a statutory deadline. *See Preap v. Johnson*, Case No. 4:13-CV-5754-YGR, Order

8 Granting Petitioners' Motion for Preliminary Injunction (May 15, 2014) at 22-23, citing *Brock*.  As

9 Plaintiffs here similarly seek compliance, not a sanction, for Defendants' violations of the law, the

10 Court can enforce 8 C.F.R. § 208.31(b) even though it does not expressly provide a sanction for the

11 government's violations.

12 ### C.  *The Agency Can Create A Mandatory Deadline Through Regulation.*

13 The Court should also reject Defendants' argument that "the agency cannot create a

14 mandatory time limitation by regulation where one does not exist in the statute." (Defs.' Mot. at 10.)

15 Numerous courts have found just the opposite, recognizing that regulatory deadlines bind agency

16 conduct.

17 It is a longstanding rule of administrative law that agencies can create binding obligations

18 through regulation. In *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954), the Court

19 found that the Attorney General violated immigration regulations having "the force and effect of

20 law" by interfering with a deportation determination that the regulations required be left to the Board

21 of Immigration Appeals' ("BIA") independent judgment. *Id.* at 265-68. The Court held that "as long

22 as the regulations [directing the BIA to exercise its discretion in adjudicating suspension of

23 deportation applications] remain operative, the Attorney General denies himself the right to sidestep

24 the Board or dictate its decision in any manner." *Id.* at 267. This requirement that an agency comply

25 with its own regulations exists regardless of whether the obligations in the regulation are

26 constitutionally or statutorily mandated. *See Service v. Dulles*, 354 U.S. 363, 388 (1957) ("While it

27 is of course true that . . . the Secretary was not obligated to impose upon himself these more rigorous

28 substantive and procedural standards . . . having done so he could not, so long as the Regulations

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   remained unchanged, proceed without regard to them."); *United States v. Morgan*, 193 F.3d 252, 266

2   (4th Cir. 1999) ("The fact that a particular regulation or procedure is not mandated by the

3   Constitution or by statute is of no moment for purposes of an analysis under the *Accardi* doctrine.").

4         Courts have therefore enforced deadlines contained only in regulations rather than in the

5   underlying statute. For instance, in *Dong*, the district court ordered that the government comply with

6   regulatory procedures, including specific time limitations set out in the regulation, in processing

7   plaintiffs' applications for adjustment of status. 513 F. Supp. 2d at 1169. Likewise n *International*

8   *Labor Management Corp.*, the court found that a deadline for accepting applications for H-2B visas

9   or notifying employers of a deficiency in the application, which was contained in a regulation, was

10   mandatory. 2014 U.S. Dist. LEXIS 57803, at *29. *See also Office of Foreign Assets Control v.*

11   *Voices in the Wilderness*, 382 F. Supp. 2d 54, 60 (D.D.C. 2005) ("The prevailing rule is that a claim

12   that an agency has failed to comply with a statutory or *regulatory* deadline can give rise to an action

13   to compel the agency to act under section 706(1) . . . .") (emphasis added).

14         Defendants make no mention of *Accardi*, or the general principle underlying it that agencies

15   must follow their own rules, but instead again cite to *Brock* to support their position. (*See* Defs.'

16   Mot. at 10.) But, as explained *supra*, the Supreme Court there expressly acknowledged that an

17   aggrieved party could seek compliance with a regulatory deadline under the APA. *See Brock*, 476

18   U.S. at 260 n.7. While *Brock* held that the failure to abide by a statutory deadline did not limit *the*

19   *jurisdiction* of the agency to take action after that time, *id.* at 265, it simply did not state, or even

20   suggest, as Defendants contend here, that an agency cannot create a binding deadline through

21   regulation where one does not exist in the statute. Indeed, the Supreme Court has since held

22   explicitly that regulatory deadlines are enforceable under the APA. *See SUWA*, 542 U.S. at 65

23   (noting that "when an agency is compelled by law to act within a certain time period . . . a court can

24   compel the agency to act . . ." and that the term "law" "includes, of course, agency regulations that

25   have the force of law").

26         Therefore, the regulation requiring completion of reasonable fear determinations within 10

27   days of referral to the agency can properly create a mandatory duty, even absent a similar deadline

28   imposed in the statute.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

### D. *Plaintiffs Do Not Seek To Enforce Rights Precluded Under The INA.*

Defendants next argue that the Court cannot enforce 8 C.F.R. § 208.31(b) because 8 U.S.C. § 1228 (concerning administrative orders of removal) and § 1231 (concerning reinstatement of removal orders) do not create legally enforceable substantive or procedural rights. (Defs.' Mot. at 10.)[6] But these provisions plainly do not apply to 8 C.F.R. § 208.31(b) because, as Defendants acknowledge elsewhere in their brief, Plaintiffs do not seek to enforce their rights under § 1228(a) or § 1231.

As discussed *supra* Section II.A, 8 C.F.R. § 208.31 sets forth the procedures through which noncitizens can raise a claim that they have a fear of returning to their home countries, including under the Convention Against Torture. As Defendants themselves explain, the "regulations sought to create fair and efficient procedures by which the United States would comply with its CAT obligations" and that "[c]ertain aliens (including the Plaintiffs in this case) may seek protection from removal in accordance with the regulation at 8 C.F.R. § 208.31(b)." (Defs.' Mot. at 5.) *See also* 64 Fed. Reg. at 8479 (stating the purpose of the rule was "to implement the United States' Article 3 [of the Convention Against Torture] obligations in the context of the removal of aliens by the Attorney General"); *id.* at 8484 ("Section 208.31 creates a new screening process to evaluate torture claims for aliens subject to streamlined administrative removal . . . under section [1228(b)] of the Act and for [noncitizens] subject to reinstatement of a previous order under section [1231(a)(5)] of the Act.").

The regulation at issue here, 8 C.F.R. § 208.31, was therefore enacted to "evaluate torture claims," not to set out the procedures for entering either administrative removal orders (the subject of Section 1228(b)) or reinstated orders (the subject of Section 1231(a)(5)). In keeping with this purpose, the regulation is contained in Part 208 of the Code of Federal Regulations, entitled "Asylum and Withholding of Removal." By contrast, *separate regulatory provisions* deal with the procedures for the implementation of 8 U.S.C. §§ 1228 and 1231. For instance, 8 C.F.R. § 238 deals

---

[6] 8 U.S.C. § 1228(a)(1) ("Nothing in this section shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person"); 8 U.S.C. § 1231(h)(same).

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  with, *inter alia*, the procedures for issuance of administrative orders of removal pursuant to 8 U.S.C.

2  § 1228, while 8 C.F.R. § 241 deals with, *inter alia*, the procedures for reinstatement of removal

3  orders pursuant to 8 U.S.C. § 1231.

4          Accordingly, Plaintiffs here do not seek to seek to enforce any "benefits or rights" under §

5  1228(a)(1) or §1231. Plaintiffs raise no complaint here about the process by which Defendants

6  issued their administrative removal orders under § 1228(b) or reinstated their removal orders under §

7  1231(a)(5). Rather, their complaint lies with the manner in which Defendants have processed their

8  claims for protection under 8 C.F.R. § 208.31 after completion of the § 1228(b) and § 1231(a)(5)

9  removal processes. As such, the bars within § 1228(a)(1) and § 1231(h) cannot apply to Plaintiffs'

10  claims.[7] Accordingly, no statute or regulation precludes Plaintiffs' claims.[8]

11          **E.  *The "Exceptional Circumstances" Exception Does Not Preclude Judicial Review.***

12          The "exceptional circumstances" that would allow the government to exceed the 10-day

13  requirement in a particular case is exactly that—an exception—and the Court should reject the

14  Defendants' attempt to make the exception completely swallow the rule.

15          As an initial matter, the Court cannot evaluate Defendants' argument regarding "exceptional

16  circumstances" on this record. The complaint does not contain any allegations of "exceptional

---

17  [7] The Sections 1228(a)(1) and 1231(h) bars are also inapplicable here for a separate reason—they

18  apply only to a right or benefits created by *statute*, whereas Plaintiffs here seek to vindicate their rights under a *regulation*. Courts have construed similar language in a separate bar on judicial

19  review, 8 U.S.C. § 1252(a)(2)(b)(ii), to apply only to statutory claims, not regulatory ones. *Compare* 8 U.S.C. § 1252(a)(2)(b)(ii) (discretion "specified under this subchapter") *with* 8 U.S.C. § 1228(a)(1)

20  (right or benefit created "in this section"). *See also Medina-Morales v. Ashcroft*, 371 F.3d 520, 528-29 (9th Cir. 2004) (because "the jurisdictional bar in § 1252(a) (2)(B)(ii) applies only to acts over

21  which a statute gives the Attorney General pure discretion" and because the discretion to grant a motion to reopen "derives solely from *regulations*" the court "decline[d] to interpret §

22  1252(a)(2)(B)(ii) as a jurisdictional bar to our review of Medina-Morales' motion to reopen") (emphasis in original) (internal quotation marks and citations omitted). Because Plaintiffs seek to

23  enforce a regulatory right under 8 C.F.R. § 208.31, the bars on enforcing statutory rights in Sections 1228(a)(1) and 1231(h) are inapplicable here. Notab**l**y, the regulation here, 8 C.F.R. § 208.31, does

24  *not* contain a limitation on the enforceability of the rights contained therein. When the agency wants to add such a limitation, it knows how to do so. *See, e.g.*, 8 C.F.R. § 241.15(g) (specifying that

25  rights created under that particular subsection are not "legally enforceable").

26  [8] Defendants' reliance on *Dipeppe v. Quarantillo*, 337 F.3d 326 (3d Cir. 2003), is misplaced for the reasons outlined above. The petitioner there sought to enforce a provision for completion of removal

27  proceedings "as expeditiously as possible" which was contained in the statute itself, rather than a separate regulation. *Id.* at 333-34. Here, in contrast, the limitation is contained in a regulation that is

28  entirely separate from the statutory bars cited by Defendants.

circumstances" in the Named Plaintiffs' cases, or for the class generally, that justify the delays at issue here. That alone ends consideration of Defendants' "exceptional circumstances" claim on a motion to dismiss. It is of further note, however, that Defendants' Motion conspicuously lacks any indication that Defendants in fact made a determination that "exceptional circumstances" are present here. Defendants merely claim that the presence of the exception in the regulation renders this Court incapable of evaluating Defendants' compliance with the regulation, regardless of whether they believe such "exceptional circumstances" apply in any Class Member's case. The Court should therefore reject Defendants' argument. *See Dong*, 513 F. Supp. 2d at 1168 (refusing to find exception to visa adjudication timelines applicable because government failed to expressly invoke exception, or provide evidence that exception applies); *Elmalky v. Upchurch*, 2007 U.S. Dist. LEXIS 22353 (N.D. Tex. Mar. 28, 2007) (same); *Lin v. Chertoff*, 2007 U.S. Dist. LEXIS 57964 (W.D. Okla. Aug. 8, 2007) (same). The absence of supporting evidence on this point is particularly glaring given Plaintiffs' allegation that Defendants have failed to comply with the regulatory deadline *for years* in virtually *every case*. Based on the allegations in the complaint, Defendants only *comply* with the deadline in "exceptional circumstances," if ever.[9]

Defendants also wrongly rely on *Heckler v. Chaney*, 470 U.S. 821 (1985). In *Heckler*, several death row inmates alleged that the use of certain drugs for lethal injunction violated the Federal Food, Drug, and Cosmetic Act, and sought to compel the Food and Drug Administration to take certain enforcement actions to prevent the violations under the APA. *Id.* at 823. The Supreme Court held that the plaintiffs' claims were barred by APA § 701(a)(2), which precludes judicial review over actions committed to agency discretion by law. *Id.* at 832. The Court found that the decision to initiate an enforcement action was unreviewable because there was "no meaningful standard against which to judge the agency's exercise of discretion": "an agency decision not to enforce often

---

[9] Defendants' improperly submitted "evidence" in fact belies any suggestion that the delays experienced by class members are "exceptional." Defendants' declarations reveal that Defendants have not complied with their obligation to conduct reasonable determinations for at least 14 years, and that there is therefore nothing "exceptional" about the agencies' current burdens. (*See* Declaration of Elizabeth E. Mura, Headquarters Asylum Officer, U.S. Citizenship and Immigration Services ("Mura Decl."), Table 3.) Moreover, while the agency has experienced an increase in cases, the increase has occurred at a gradual rate for the past 14 years—undermining any claim that the agency could not predict, and plan for, its current caseload. (*See id.*, Table 4.)

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1  involves a complicated balancing of a number of factors which are peculiarly within its expertise"

2  and the "agency is far better equipped than the courts to deal with the many variables involved in the

3  proper ordering of its priorities." *Id*. at 830-32. Accordingly, the Court adopted a "presumption of

4  unreviewability" over an agency's prosecutorial discretion in taking enforcement actions. *Id*. at 832-

5  33.

6          *Heckler*'s concerns regarding the practicality of judicial review over agency prosecutorial

7  discretion are clearly inapplicable here for at least three reasons. First, unlike the enforcement

8  actions at issue in *Heckler*, Defendants have a non-discretionary duty to conduct reasonable fear

9  determinations within a "reasonable" period under the APA. A regulation can establish what

10 constitutes such a "reasonable" period even if it involves some element of discretion. *See Dong*, 513

11 F. Supp. 2d at 1168 (rejecting argument that regulation providing immigration official discretion to

12 extend period of time to adjudicate visa divests court of jurisdiction to consider unreasonable delay

13 claim). *See generally Mazouchi v. Still*, 2007 U.S. Dist. LEXIS 53999, at *14 (N.D. Cal. July 10,

14 2007) (quoting *Kim v. Ashcroft*, 340 F. Supp. 2d 384, 393 (S.D.N.Y. 2004)) (rejecting argument that

15 *Heckler* precludes review of an unreasonable delay claim and holding that "[US]CIS simply does not

16 possess unfettered discretion to relegate aliens to a state of 'limbo,' leaving them to languish there

17 indefinitely"). Because the Court can look to the regulation in determining whether Defendants have

18 complied with their mandatory duty to conduct reasonable fear determinations within a "reasonable

19 period," the application of that regulation is not wholly "committed to agency action by law."

20         Second, the question of whether there are "exceptional circumstances" warranting delay in

21 conducting a reasonable fear determination is not the type of purely discretionary decision that is

22 immune from judicial review under *Heckler*. The Ninth Circuit has rejected *Heckler*'s applicability

23 and found that it has jurisdiction to review the application of similar terminology in the immigration

24 laws. *See Husyev v. Mukasey*, 528 F.3d 1172, 1181 (9th Cir. 2008) (whether petitioner filed for

25 asylum within a "reasonable period" after the expiration of his lawful status); *Taslimi v. Holder*, 590

26 F.3d 981, 985-986 (9th Cir. 2010) (whether petitioner filed for asylum within a "reasonable period"

27

28

following changed circumstances relevant to claim).[10] *See also Singh v. Holder*, 656 F.3d 1047, 1051 (9th Cir. 2011) (whether petitioner met "changed circumstances" and "extraordinary circumstances" exceptions to asylum filing deadline) (citing *Husyev* and *Ramadan v. Gonzales*, 479 F.3d 646 (9th Cir. 2007)); *Ghahremani v. Gonzales*, 498 F.3d 993, 998-99 (9th Cir. 2007) (whether petitioner met the "due diligence" requirement to reopen an immigration case).[11] As the Ninth Circuit explained in *Ramadan*, while terms such as "changed circumstances" "involve the exercise of judgment," they are not purely discretionary because they "do[] not depend upon the identity of the person or entity examining the issue," and are "less value-laden and do[] not reflect the decision maker's beliefs in and assessment of worth and principle" than determinations such as "the quality of an alien's moral character." *Ramadan*, 479 F.3d at 656 (internal quotation marks omitted).

The determination of "exceptional circumstances" is no more discretionary than determinations of "extraordinary circumstances," "changed circumstances," a "reasonable period" or "due diligence." Indeed, Defendants concede that this Court has jurisdiction to determine whether the delays in conducting reasonable fear determinations are "reasonable," (*see* Defs.' Mot. at 13.), and therefore acknowledge that there are sufficiently "meaningful standards" by which this Court can review the timeliness of reasonable fear determinations. This Court can therefore review whether there are "exceptional circumstances" that justify the lengthy delays at issue here because such review does "depend upon the identity of the person or entity examining the issue" and does not "reflect the decision maker's beliefs in and assessment of worth and principle." *Ramadan*, 479 F.3d at 656.

---

[10] While the regulations at issue in *Husyev* and *Taslimi* provided some additional guidance regarding what constitutes a "reasonable period," the Ninth Circuit did not limit its analysis to whether the agency followed these guidelines and instead determined whether the delay was "reasonable" as a matter of law.

[11] *Singh*, *Ghahremani*, and *Ramadan* concern the applicability of 8 U.S.C. § 1252(a)(2)(B)(ii), which bars judicial review of a "decision or action" which is "specified" as discretionary by the immigration laws. That bar is more "powerful" than the APA bar on review of discretionary determinations, and thus "any determination that passes the more stringent [Section 1252(a)(2)(B)(ii)] test, remaining subject to judicial review, also passes the lower bar of the APA test." *Ana Int'l v. Way*, 393 F.3d 886, 890-891 (9th Cir. 2004). Defendants have not claimed that Section 1252(a)(2)(B)(ii) applies here—nor could they, as the Ninth Circuit has construed the bar to apply only to determinations specified as discretionary by statute. *See Medina-Morales v. Ashcroft*, 371 F.3d 520, 528 (9th Cir. 2004).

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   Third, *Heckle*r applies where an agency makes an *individualized* determination to exercise

2   purely discretionary authority. That is far different than the circumstances presented here, where

3   Defendants apparently take the position that they need not abide by the 10-day requirement *as a*

4   *rule*, regardless of individual circumstances in any given case.[12] The existence of a safety valve to be

5   applied in individual cases does not preclude the court from enjoining Defendants' policy and

6   practice of imposing systemic delays in violation of a binding regulation. To conclude otherwise

7   would eviscerate the Court's authority under the APA as well as the clear meaning of the regulation.

8   **III.   Defendants' Lengthy, Unjustified Delays are Not "Reasonable" As a Matter of Law.**

9       Relying on hundreds of pages of "evidence" outside the pleadings, Defendants ask this Court

10   to declare that the prolonged delays experienced by class members are "reasonable" as a matter of

11   law under the six-factor, fact-intensive test established by *Telecommunications Research Action*

12   *Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) ("*TRAC*"). (*See* Defs' Mot. at 13-17.) But Defendants'

13   attempt to litigate the reasonableness of their systemic violations of 8 C.F.R. § 208.31(b) now, at the

14   pleadings stage, is substantively and procedurally backwards. A motion to dismiss tests the

15   sufficiency of Plaintiffs' complaint; it is not a vehicle for Defendants to introduce untested evidence

16   and argue the underlying merits of the dispute. Here, where the complaint challenges governmental

17   delays that have resulted in immigrants "languish[ing] in detention for months and, in some cases,

18   over a year," Defendants' motion to dismiss must be denied. (*See* Compl. ¶ 7.) *See also Daohua*

19   *Chen v. Chertoff*, 2008 U.S. Dist. LEXIS 4891, at *7 (N.D. Cal. Jan. 23, 2008) (denying motion to

20   dismiss because "[w]hat constitutes an unreasonable delay in the context of immigration applications

21   depends to a great extent on the facts of the particular case").

22

23   ────────────────────

[12] Even when it comes to discretionary determinations, courts have jurisdiction to review "categorical rules" that constrain the exercise of that discretion. For example, the Ninth Circuit has

24   held that it has jurisdiction to consider the BIA's "categorical rule" regarding the application of "exceptional and extremely unusual hardship" determinations, even though that determination is

25   generally committed to agency discretion. *See Arteaga-De Alvarez v. Holder*, 704 F.3d 730, 738-739 (9th Cir. 2012). For that reason, the Defendants' reliance on *Martinez-Rosas v. Gonzales*, 424 F.3d

26   926, 929-30 (9th Cir. 2005) is completely unavailing. (*See* Deft. Br. [Dkt. 43] at 12 (citing *Martinez-Rosas* and claiming that "exceptional and extremely unusual hardship" determinations are

27   discretionary and not subject to judicial review)). Therefore, Defendants' blanket characterization the "exceptional circumstances" language would constitute a categorical rule that is not "committed

28   to agency discretion by law."

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

## A. *Defendants' Presentation Of Matters Outside The Pleadings Is Improper.*

As a threshold matter, Defendants' extensive reliance on declarations and "evidence" outside of the pleadings dooms their Motion. Rule 12(d) states:

> *Result of Presenting Matters Outside the Pleadings*. If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. *All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.*

(emphasis added). Defendants attached to their Motion the Declaration of Elizabeth E. Mura of USCIS and the Declaration of John L. Lafferty, the USCIS Asylum Division Chief ("Lafferty Decl."). (*See* Defs.' Mot. at 14.) Ms. Mura purports to introduce fifteen years of agency statistics and data that she compiled to support Defendants' Motion (Mura Decl. ¶ 4); Mr. Lafferty, for his part, testifies to the factual circumstances that he believes justify the agency's delays. (*See* Lafferty Decl.) The allegations laid out in these affidavits are central to Defendants' arguments. (*See* Defs.' Mot. at 12-17 (citing the affidavits in three of five relevant sections).) At this stage, Plaintiffs have had no opportunity to present material in response to Defendants' evidence or otherwise test it through the discovery process.[13]

These documents are outside the pleadings and cannot be used to support a motion to dismiss. *See* Fed. R. Civ. P. 12(d). Moreover, they are not referenced in the complaint and are not central to Plaintiffs' claims. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). Indeed, on their own terms, these declarations were compiled and generated expressly for Defendants' Motion. (*See* Mura Decl. ¶ 4; Lafferty Decl.) Therefore, the Court either must ignore them or convert the Defendants' mislabeled Motion to Dismiss into a Motion for Summary Judgment and permit Plaintiffs to proceed to discovery. *See Delaney v. Aurora Loan Servicing*, 2009 U.S. Dist. LEXIS 122573, at *5 (N.D. Cal. 2009) (converting motion to dismiss to a Rule 56 motion for summary judgment); *Roshandel v. Chertoff*, 2008 U.S. Dist. LEXIS 90899, at *9-10 (W.D. Wash. May 5, 2008) (in class action challenging delays in processing naturalization applications, striking

---

[13] Notably, these declarations were not introduced to advance Defendants' Rule 12(b)(1) argument: the heading of the section where they are first introduced is titled "Lastly, Plaintiffs have failed to state a claim that USCIS violated 8 C.F.R. § 208.31(b)." (Defs.' Mot. at 13.)

government declarations submitted in support of motion to dismiss because they "go to the merits of Plaintiffs' claims, in particular, whether the agency delay in processing name checks is 'reasonable'" and therefore "may only be considered in a separate motion for summary judgment.")

### B. The "Reasonableness" Of Defendants' Delays Cannot Be Resolved On The Pleadings.

Putting aside Defendants' violations of the Federal Rules, Defendants have fallen far short of meeting their burden of to show that Plaintiffs' complaint does not establish a "plausible" claim that the delays at issue here are not "reasonable" under *TRAC*. *See Twombly*, 550 U.S. at 556. The *TRAC* test requires the Court to balance six heavily fact-dependent factors—a quintessentially factual inquiry that should only be undertaken after the parties, and the Court, have the benefit of considering the facts developed through the discovery process. *See TRAC*, 750 F.2d at 80 (articulating standard as "(1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed") (internal quotation marks and citations omitted). For this reason, courts have generally not resolved "reasonableness" claims under the APA "absent circumstances suggesting that Plaintiff's claim is frivolous." *Feng*, 2014 U.S. Dist. LEXIS 33908, at *3-4; *Daohua Chen v. Chertoff*, 2008 U.S. Dist. LEXIS 4891, at *7 (N.D. Cal. Jan. 23, 2008); *Saini v. United States Citizenship & Immigration Servs.*, 553 F. Supp. 2d 1170 (E.D. Cal. 2008).

Here, even if the Court were to agree that the *TRAC* analysis should apply, the complaint easily alleges sufficient facts to establish the unreasonableness of the delays. (*See, e.g.*, Compl. ¶¶ 7, 29 (alleging that "rarely if ever" do the agencies provide timely determinations and that some class members have been waiting in prison over a year); ¶¶ 24-30 (describing the role of the reasonable

fear interviews in the statutory scheme and the cascading effect of delays so early in the process); ¶¶ 31-59 (surveying the "drastic human consequences" on Plaintiffs and their families caused by Defendants' violations, including depression, despair, and financial and emotional deprivation).)

Defendants' motion must therefore be denied.

## **CONCLUSION**

For all the above stated reasons, Plaintiffs respectfully ask that the court deny the Defendants' Motion to Dismiss, and grant such other further relief to Plaintiffs as the Court deems appropriate.

DATED:  August 18, 2014                          Respectfully submitted.


For Plaintiffs:                                  /s/  John D. Pingel

Michael Kaufman
Carmen G. Iguina
Ahilan T. Arulanantham
ACLU FOUNDATION OF
SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
mkaufman@aclu-sc.org
ciguina@aclu-sc.org
aarulanantham@aclu-sc.org
Tel.: (213) 977-5232
Fax: (213) 417-2232

Julia Harumi Mass
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
jmass@aclunc.org
Tel.: (415) 621-2493
Fax: (415) 255-8437

Charles Roth
Claudia Valenzuela
NATIONAL IMMIGRANT JUSTICE
CENTER
A HEARTLAND ALLIANCE PARTNER
208 South LaSalle, Suite 1300
Chicago, Illinois 60604
croth@heartlandalliance.org
cvalenzuela@heartlandalliance.org
Tel.: (312) 660-1308
Fax: (312) 660-1505

James A. Rolfes
David Z. Smith
Joseph B. Prater
Timothy R. Carraher
REED SMITH LLP
10 South Wacker Drive
Chicago, Illinois 60606
jrolfes@reedsmith.com
dzsmith@reedsmith.com
jprater@reedsmith.com
tcarraher@reedsmith.com
Tel.: (312) 207-1000
Fax: (312) 207-6400

John D. Pingel
REED SMITH LLP
101 Second St., Suite1800
San Francisco, CA 94105
jpingel@reedsmith.com
Tel.: (415) 543-8700
Fax: (415) 391-8269

REED SMITH LLP
A limited liability partnership formed in the State of Delaware