United States District Court
Northern District of California

1
2
3
4
5
6

UNITED STATES DISTRICT COURT

7

NORTHERN DISTRICT OF CALIFORNIA

8

9   **MARCO ANTONIO ALFARO GARCIA, ET AL.,**

Plaintiffs,

10

Case No.  14-cv-01775-YGR

11   v.

12   **JEH JOHNSON, ET AL.,**

**ORDER DENYING MOTION TO DISMISS; GRANTING MOTION FOR CLASS CERTIFICATION**

Defendants.

13
14

15        Plaintiffs Marco Antonio Alfaro Garcia ("Alfaro"), Credy Madrid Calderon ("Madrid"),

16   Gustavo Ortega ("Ortega"), and Claudia Rodriguez de la Torre ("Rodriguez") (collectively,

17   "plaintiffs")[1] bring this putative class action against Defendants Jeh Johnson, *et al*. ("defendants")

18   seeking review of processes employed by the Asylum Division of the United States Citizenship

19   and Immigration Services ("USCIS").  The gravamen of the complaint alleges a failure to conduct

20   in a timely manner "reasonable fear" determinations under 8 C.F.R. section 208.31(b) ("Section

21   208.31(b)").  Plaintiffs contend that USCIS is required to complete such determinations within 10

22   days of referral to an asylum officer, but that the government has essentially abdicated its duty to

23   comply with this mandate.  As a result, plaintiffs allege that individuals are held for months in

24   detention while they await hearings on their claims.  Plaintiffs seek declaratory and mandamus

25   relief on the following two causes of action:  (1) violation of the Administrative Procedure Act

26

27        [1] One named plaintiff, Nancy Bardalez Serpa, is no longer a member of the defined class.
Accordingly, plaintiffs have represented they will voluntarily dismiss her claims.  (Dkt. No. 40 at
28   3 n.1.)

United States District Court
Northern District of California

("APA"), 5 U.S.C. sections 555(b) (requiring agency action in a "reasonable time") and 706(1) (providing that a reviewing court shall . . . "compel agency action unlawfully withheld or unreasonably delayed"); and (2) violation of Section 208.31, which requires that the USCIS complete these reasonable fear determinations within 10 days of referral to an asylum officer. (Dkt. No. 1 ("Complaint") at ¶¶ 71-79.)

Now before the Court are two motions: defendants' motion to dismiss on the grounds that this Court lacks jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and that plaintiffs have failed to state a claim under Federal Rule of Civil Procedure 12(b)(6) (Dkt. No. 43), and plaintiffs' motion for class certification under Federal Rule of Civil Procedure 23(b)(2) (Dkt. No. 12).  On September 30, 2014, the Court heard argument on both motions.

Having carefully considered the papers submitted and the pleadings in this action, the arguments of counsel presented at the hearing, and for the reasons set forth below, the Court hereby **DENIES** the motion to dismiss, and **GRANTS** plaintiffs' motion for class certification.

### I.   FACTUAL BACKGROUND

#### A.  Statutory and Regulatory Structure

As a signatory to the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"), the United States has agreed not to "expel, return, ("refouler") or extradite a person to another State where there are substantial grounds for believing that he or she would be in danger of being subjected to torture."  Foreign Affairs Reform and Restructuring Act of 1998 § 2242, Pub. L. 105-227, 112 Stat. 2681, 2681-821; *see also* Regulations Concerning the Convention Against Torture, 64 Fed. Reg. 8,478-01.  By statute, an individual may seek withholding of removal if his or her "life or freedom would be threatened in that country because of [his/her] race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. section 1231(b)(3)(A).  If an individual qualifies for protection, "withholding of removal is mandatory under the [CAT] implementing regulations."  *Nuru v. Gonzales*, 404 F.3d 1207, 1216 (9th Cir. 2005).

2

United States District Court
Northern District of California

On February 19, 1999, the Immigration and Naturalization Service ("INS")[2] adopted interim regulations in an effort to comply with the United States' international obligations under the CAT.  *See* Regulations Concerning the Convention Against Torture, 64 Fed. Reg. 8,478 (Feb. 19, 1999).  These regulations sought to provide fair and efficient procedures by which the United States would ensure that individuals who have a reasonable fear of torture and persecution are not returned to their countries of origin "within the overall regulatory framework for the issuance of removal orders and decisions about the execution of such order."  64 Fed. Reg. at 8,479.  "To this end, [the Agency] designed a system that will allow aliens subject to the various types of removal proceedings currently afforded by the immigration laws to seek, and where eligible, to be accorded protection under [the CAT].  At the same time, [the Agency] created mechanisms to quickly identify and resolve frivolous claims to protection so that the new procedures cannot be used as a delaying tactic by aliens who are not in fact at risk."  *Id*.

Section 208.31 of the regulations applies to two types of individuals subject to removal: those who are subject to reinstatement of removal orders and those who are subject to final administrative orders of removal.  If a person falling into either of those categories expresses a fear of return, he or she is subject to a two-part review process to determine if he or she qualifies for withholding of removal or relief.  8 C.F.R. § 208.31(a).  The first step (at issue here) occurs "upon issuance" of the final administrative order or the notice of reinstatement of removal.  An individual who expresses such fear is referred to an asylum officer for a reasonable fear determination.  *See* 8 C.F.R. § 208.31(b).  Of particular relevance to this case is the final sentence in Section 208.31(b):

> (b) Initiation of reasonable fear determination process.  Upon issuance of a Final Administrative Removal Order under §238.1 of this chapter, or notice under §241.8(b) of this chapter that an alien is

---

[2] On March 1, 2003, the functions of the former INS were transferred from the Department of Justice to three distinct components (United States Immigration and Customs Enforcement, United States Customs and Border Protection, and USCIS) in the newly formed Department of Homeland Security ("DHS").  *See* Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002).

> subject to removal, an alien described in paragraph (a) of this
> section shall be referred to an asylum officer for a reasonable fear
> determination.  **In the absence of exceptional circumstances, this
> determination will be conducted within 10 days of the referral**.

8 C.F.R. § 208.31(b) (emphasis supplied); *see also* Regulations Concerning the Convention

Against Torture, 64 Fed. Reg. 8478-01.  The second step concerns what occurs after that initial

determination has been rendered.  Persons who are found to have a reasonable fear of persecution

or torture are referred to an Immigration Judge for full consideration of their claims for

withholding of removal under 8 U.S.C. section 1231(b)(3), or withholding or deferral of removal

under 8 C.F.R. sections 208.16 and 208.17.  8 C.F.R. § 208.31(e).  A person whom USCIS

determines not to have a reasonable fear of persecution may request that an Immigration Judge

review USCIS's determination.  If the Immigration Judge disagrees with USCIS, the person may

pursue full consideration of his or her reasonable fear claim before the Immigration Judge.  8

C.F.R. § 208.31(f)-(g).

Plaintiffs allege that the above regulatory process is designed to ensure that reasonable fear

claims are heard in a fair and timely manner.  (*See* Compl. ¶¶ 19- 22.)  According to plaintiffs,

Section 208.31 requires timely resolution of reasonable fear claims because plaintiffs and other

similarly situated individuals are subject to imprisonment while they await reasonable fear

determinations.  (Compl. ¶ 23.)  Despite Section 208.31's mandate, plaintiffs allege that

defendants have "rarely" complied with the 10-day deadline, leaving plaintiffs and others similarly

situated to "languish in detention for months and, in some cases, over a year" at great emotional,

physical, and financial cost to these individuals and their families.  (*See* Compl. ¶¶ 7, 31-59

(describing harms caused by defendants' violations, including depression, despair, and financial

and emotional deprivation).)  According to the complaint, defendants have wholly abandoned any

effort to comply with Section 208.31.  Instead, defendants have developed a new, less demanding

timeframe, effectively supplanting the timeframe set forth in Section 208.31.

Plaintiffs thus seek relief under the Administrative Procedure Act ("APA") and the

Mandamus and Venue Act to compel defendants to comply with their mandatory legal obligations,

and to cease their unreasonable delays in processing plaintiffs' claims for relief.  (*See id.* ¶¶ 8, 71-

United States District Court
Northern District of California

79.)

### B. Individual Plaintiffs

#### 1. Marco A. Alfaro Garcia

Plaintiff Alfaro Garcia is a native and citizen of El Salvador. (Compl. ¶ 9.) Mr. Alfaro Garcia first entered the United States on September 12, 2005, at or near Lukeville, Arizona. (Defs.' Mot. Ex. 1-B, Form I-205, Warrant of Removal/Deportation.) On September 28, 2005, the Immigration Judge ordered that Mr. Alfaro Garcia be removed to El Salvador and he was removed from the United States on September 29, 2005. (*Id.* Ex. 1-B.) On or about March 2007, Mr. Alfaro Garcia returned to the United States. On January 14, 2014, he was arrested in Los Angeles, California, for driving under the influence, and on January 16, 2014, ICE took him into custody. (*Id.* Ex. 1-A.) That same day, an ICE officer issued an order reinstating Mr. Alfaro Garcia's order of removal to El Salvador. (*Id.* Ex. 1-D, I-871, Notice of Intent/Decision to Reinstate Prior Order.) Mr. Alfaro Garcia promptly expressed his fear of returning to El Salvador shortly after being taken into immigration custody, and on January 28, 2014, Mr. Alfaro Garcia was referred to USCIS for a reasonable fear determination. (*Id.* Ex. 1-C, Record of Sworn Statement in Administrative Proceedings; Ex. 1-E, Email from Michael McDaniel.) USCIS interviewed Mr. Alfaro Garcia on or about February 11, 2014. (*Id.* Ex. 1-F, Form I-899, Record of Determination/Reasonable Fear Worksheet.) USCIS issued a decision on April 25, 2014, concluding that Mr. Alfaro Garcia did not have a reasonable fear of persecution in El Salvador. (*Id.* Ex. 1-F, Form I-898, Record of Negative Reasonable Finding and Request for Review by Immigration Judge.)

Mr. Alfaro Garcia alleges that defendants' failure to provide him a reasonable fear determination within the prescribed 10-day period, instead delaying such determination for almost three months, has harmed him by prolonging his detention and delaying his right to be heard on his claims for relief.

#### 2. Credy Madrid Calderon

Plaintiff Madrid Calderon is a native and citizen of Honduras. (Compl. ¶ 10.) Mr. Madrid Calderon first entered the United States on November 28, 2004 at or near Laredo, Texas. (Defs.'

United States District Court
Northern District of California

Mot. Ex. 2-A.)  On May 25, 2005, he was ordered removed to Honduras.  (*Id.* Ex. 2-B, Memorandum and Order.)  Mr. Madrid Calderon was removed to Honduras on or about September 27, 2013. (*Id.* Ex. 2-C, Form I-871; Notice of Intent/Decision to Reinstate Prior Order.) Subsequently, on or about March 2, 2014, Mr. Madrid Calderon attempted to reenter the United States at or near Laredo, Texas, and on March 6, 2014, ICE issued an order reinstating Mr. Madrid Calderon's order of removal.  (*Id.* Exs. 2-C, 2-D.) On or about April 3, 2014, USCIS notified Mr. Madrid Calderon that he was scheduled for a reasonable fear interview, which was conducted or about May 12, 2014.  (*Id.* Ex. 2-E, Form M-488, Information about Reasonable Fear Interview; Ex. 2-F, Form I-899, Record of Determination/Reasonable Fear Worksheet.)  On May 29, 2014, USCIS determined that Mr. Madrid Calderon had a reasonable fear of persecution or torture.  (*Id.* Ex. 2-G, Form I-863, Notice of Referral to the Immigration Judge.)

Mr. Madrid Calderon alleges that because he did not receive a reasonable fear determination in his case for well in excess of 10 days after being referred for a reasonable fear interview, he was harmed by his prolonged detention and delayed right to be heard on his claim.

### 3.  Gustavo Ortega

Plaintiff Ortega is a native and citizen of Mexico.  (Compl. ¶ 11.)  Mr. Ortega first entered the United States in September 2009 at or near Arizona.  (Defs.' Mot. Ex. 3-A.)  On January 23, 2014, Mr. Ortega was convicted of an aggravated felony, to wit, assault with a deadly weapon likely to cause great bodily injury, in violation of section 245(a)(1) of the California Penal Code. (*Id.* Ex. 3-B, Waiver on Plea of Guilty/No Contest, *People v. Ortega.*)  On February 27, 2014, ICE issued a final administrative order of removal against Mr. Ortega.  (*Id.* Ex. 3-C, Form I-851 and Form I-851A.)  On or about February 26, 2014, Mr. Ortega expressed a fear of return to Mexico. (*Id.* Exs. 3-A; 3-C.)

On or about February 28, 2014, USCIS provided notice to Mr. Ortega that he was scheduled for a reasonable fear interview.  (*Id.* Ex. 3-D, Form G-56, Notice of Reasonable Fear Interview; Ex. 3-E, Form M-488, Information About Reasonable Fear Interview.)  USCIS interviewed Mr. Ortega on or about March 25, 2014.  (*Id.* Ex. 3-F, Form I-899, Record of Determination/Reasonable Fear Worksheet.)  Just over two months later, USCIS issued a decision

United States District Court
Northern District of California

on April 29, 2014, concluding that Mr. Ortega did not have a reasonable fear of persecution.  (*Id.* Ex. 3-G, Form I-898, Record of Negative Reasonable Fear Finding.)  Mr. Ortega claims that defendants' failure to provide him a reasonable fear determination within the prescribed 10-day period prolonged his detention and delayed his right to be heard on his claims for relief.

### 4.  Claudia Rodriguez de la Torre

Plaintiff Rodriguez is a native and citizen of Mexico.  (Compl. ¶ 12.)  In 1998, Ms. Rodriguez first entered the United States at or near San Luis, Arizona.  (Defs.' Mot. Ex. 4-A.)  On January 2, 2014, Ms. Rodriguez was convicted of an aggravated felony, to wit, possession of a controlled substance for sale in violation of title 40, section 453.337 of the Nevada Revised Statutes.  (*Id.* Ex. 4-B, Judgment, *State v. Rodriguez-de la Torre*, No. CR13-1802 (Washoe Cnty. Dist. Ct Jan. 2, 2014).) On January 21, 2014, Ms. Rodriguez was issued a final administrative order of removal.  (*Id.* Ex. 4-C, Form I-851; Ex. 4-D, Form I-851A.)  That same day, Ms. Rodriguez expressed a fear of return to Mexico.  (*Id.* Ex. 4-C.)

On or about January 31, 2014, Ms. Rodriguez was referred to USCIS for a reasonable fear determination.  (*Id.* Ex. 4-E, Email from Justin Smith.)  USCIS interviewed Ortega on or about February 6, 2014.  (*Id.* Ex. 4-F, Form I-899.)  Approximately three months later, USCIS issued a decision on April 23, 2014, concluding that Ms. Rodriguez established that she had a reasonable fear of persecution in Mexico.  (*Id.* Ex. 4-G, Form I-863.)  Ms. Rodriguez claims that defendants' failure to provide her a reasonable fear determination within the prescribed 10-day period prolonged her detention and delayed her right to be heard on her claims for relief.

### II.   MOTION TO DISMISS FOR LACK OF JURISDICTION

#### A.  Legal Standard

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a complaint may be dismissed for lack of subject matter jurisdiction.  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).  The Court may consider affidavits and other evidence in order to be satisfied that jurisdiction exists.  *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003).  As the party asserting subject matter jurisdiction, the plaintiff bears the burden of establishing that jurisdiction exists.  *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 376-78 (1994).

United States District Court
Northern District of California

### B.  Jurisdiction under the APA and Mandamus Act

Plaintiffs premise the Court's jurisdiction on the Administrative Procedure Act and the mandamus statute, codified at 28 U.S.C. § 1361.  Under the Mandamus and Venue Act of 1962, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  Mandamus is available only when (1) the plaintiff's claim is clear and certain; (2) the defendant official's duty is ministerial and so plainly prescribed as to be free from doubt; and (3) no other adequate remedy is available.  *Johnson v. Reilly*, 349 F.3d 1149, 1154 (9th Cir. 2003); *Lowry v. Barnhart*, 329 F.3d 1019, 1021 (9th Cir. 2003).  Even if this test is met, a district court has discretion to deny relief.  *Johnson*, 349 F.3d at 1154.

The Administrative Procedure Act ("APA") "authorizes suit by '[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute.' "  *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 61 (2004) (quoting 5 U.S.C. § 702).  "[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*."  *Id.* at 64 (emphasis in original).  Although the APA does not provide an independent basis for subject matter jurisdiction, *see Califano v. Sanders*, 430 U.S. 99, 107 (1977), the APA, in conjunction with federal question jurisdiction under 28 U.S.C. section 1331, may vest a federal court with jurisdiction to "compel agency action unlawfully withheld or unreasonably delayed."  *See, e.g., Elmalky v. Upchurch,* No. 06-cv-2359, 2007 WL 944330, at *2 (N.D. Tex. March 28, 2007); *Yu v. Brown,* 36 F. Supp. 2d 922, 928–29 (D.N.M. 1999).  Thus, "district courts have jurisdiction to review agency action as part of their general federal question jurisdiction, 28 U.S.C. § 1331." *Proyecto San Pablo v. I.N.S.,* 189 F.3d 1130, 1136 n. 5 (9th Cir. 1999).

The jurisdictional dimensions of the APA and the Mandamus Act are considered to be coextensive for purposes of compelling agency action that has been unreasonably delayed.  Where, as here, the relief sought is identical under the APA and the mandamus statute, proceeding under one as opposed to the other is not significant.  *See Dong v. Chertoff*, 513 F. Supp. 2d 1158, 1161-62 (N.D. Cal. 2007) (citing *Independence Mining Co. v. Babbitt,* 105 F.3d 502, 507 (9th

Cir.1997); *Hernandez–Avalos v. I.N.S.*, 50 F.3d 842, 845 (10th Cir. 1995) (citation omitted) (" '[a] mandatory injunction [issued under the APA] . . . is essentially in the nature of mandamus' ")). "Although the exact interplay between these two statutory schemes has not been thoroughly examined by the courts, the Supreme Court has construed a claim seeking mandamus under the MVA [Mandamus and Venue Act], 'in essence,' as one for relief under § 706 of the APA." *Independence Mining*, 105 F.3d at 507 (citing *Japan Whaling Ass'n v. Am. Cetacean Soc'y,* 478 U.S. 221, 230 n. 4 (1986)).[3]

---

[3] Defendants argue that plaintiffs' claims are precluded by statute.  (Mot. at 10.) Defendants assert that the Immigration and Nationality Act, 8 U.S.C. sections 1228(a)(1) and 1231(h), precludes this case pursuant to the following provision:  "nothing in this section shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person."  8 U.S.C. §§ 1228(a)(1); 1231(h).  The Court finds this argument unpersuasive.  Sections 1228 and 1231 relate to the administrative removal and reinstatement proceedings.  By its terms, the preclusion provision in both of those sections relates to those sections specifically.  *See* 8 U.S.C. § 1228(a)(1) ("Nothing in this section . . ..."); 8 U.S.C. §1231(h) (same).  The regulation at issue here, however, implements CAT and was enacted to evaluate torture claims.  Although it exists and is implemented within the context of processing such removals, Section 208.31 operates independently and for a unique purpose.  The preclusion provision in Sections 1228 and 1231 relate to claims seeking to enforce those particular provisions.  Section 208.31 simply does not fall within that scope.

Defendants argue for the first time in their reply brief that this Court cannot entertain the instant case because the Foreign Affairs Reform and Restructuring Act of 1989 ("FARRA"), Pub. L. No. 105-277, § 2242, 112 Stat. 2681, 2681-822, limits review of claims arising under CAT or its implementing regulations to those involving a final order of removal.  (Reply at 8.)  FARRA Section 2242(d) provides:

> (d) REVIEW AND CONSTRUCTION.—Notwithstanding any other provision of law, and except as provided in the regulations described in subsection (b), no court shall have jurisdiction to review the regulations adopted to implement this section, and nothing in this section shall be construed as providing any court jurisdiction to consider or review claims raised under the Convention or this section, or any other determination made with respect to the application of the policy set forth in subsection (a), except as part of the review of a final order of removal pursuant to section 242 of the Immigration and Nationality Act (8 U.S.C. § 1252).

FARRA § 2242(d).  Defendants argue that the FARRA provides that a court may review claims under the Convention Against Torture only as part of review of a final order of removal and that therefore this case must be dismissed.  (Reply at 8 (citing *Hamoui v. Ashcroft*, 389 F.3d 821, 826

9

**C.  Discussion**

In *Norton*, 542 U.S. 55, the Supreme Court held that "the only agency action that can be compelled under the APA is action legally required." *Id.* at 63.  It follows that an agency's delay in acting "cannot be unreasonable with respect to action that is not required." *Id.* n.1.

In order to establish jurisdiction, plaintiffs must establish that defendants had a clear, nondiscretionary duty to conduct reasonable fear determinations within the timeframe set forth in Section 208.31.  Defendants contend that Section 208.31 does not create such a duty.  (Mot. at 7-11.)  The gravamen of defendants' 12(b)(1) motion is that the time period set forth in Section 208.31 is subject to the agency's discretion, and that therefore compliance with Section 208.31 falls outside the scope of the APA.  Put differently, it is defendants' argument that because Section 208.31 does not require the agency to conduct the reasonable fear determinations within the 10-day timeframe, petitioner cannot ask this Court to compel it to do so.

Defendants offer various arguments in support of this position:  (i) that Section 208.31 does not provide a legally cognizable, actionable right for plaintiffs or members of the class; (ii) the implementation of Section 208.31 is committed to agency discretion by law; and (iii) that Section 208.31 does not impose any mandatory deadline for agency action.  Separately, defendants argue that because each of the named plaintiffs has received reasonable fear determinations, their individual claims are moot and must be dismissed.  (Mot. at 6-7.)

The Court disagrees as to both of defendants' arguments and finds that it properly has jurisdiction over this case.  The following discussion addresses first the question of whether a violation of Section 208.31(b) falls within this Court's jurisdiction, and second, the question of

---

(9th Cir. 2004) (citing FARRA, § 2242(d)).)  Aside from the improper assertion of a new theory for the first time in a reply brief, this argument is unavailing.  Plaintiffs do not seek to enforce the United States' obligations under the CAT generally.  The question presented to the Court is narrower:  whether the regulation promulgated by the agency as a means of implementing CAT creates legally actionable rights for individuals such as plaintiffs.  The import of this distinction is made all the more apparent by the fact that Section 2242's jurisdiction limiting provision contains an exception that contemplates that regulations promulgated by the agencies may "provide" jurisdiction for judicial review.  *See* FARRA § 2242(b) and (d).  Thus, FARRA does not bar the Court's jurisdiction in this case.

whether plaintiffs here qualify for an exception to the mootness doctrine.

### i.  The Meaning of Section 208.31

The central questions in this case are ones no other court has yet had occasion to consider: Does Section 208.31(b) require agency action within a specified timeframe?  Does Section 208.31(b) confer a benefit on individuals who await reasonable fear determinations such that the agency is obligated to comply with its own regulation?  For the reasons set forth below, the Court finds that Section 208.31(b) does require the agency to complete reasonable fear determinations within 10 days as a general matter, and that the agency is not free to undertake reasonable fear determinations without regard to the timeframe specified in the regulation.

The interpretation of Section 208.31 properly begins with the plain language.

> (b) Initiation of reasonable fear determination process.  Upon issuance of a Final Administrative Removal Order under §238.1 of this chapter, or notice under §241.8(b) of this chapter that an alien is subject to removal, an alien described in paragraph (a) of this section shall be referred to an asylum officer for a reasonable fear determination.  **In the absence of exceptional circumstances, this determination will be conducted within 10 days of the referral**.

8 C.F.R. § 208.31 (emphasis supplied).  A straightforward reading of Section 208.31 demonstrates that the agency is required to take an action:  "upon issuance" of an administrative order of removal or reinstatement of removal, the agency "will [] conduct[]" a reasonable fear determination.  *Id.*  Section 208.31 then sets forth a timeline for that action:  the determination "will" occur within "10 days of the referral" "[i]n the absence of exceptional circumstances."  *Id*. There is nothing in Section 208.31 to suggest that that the agency has discretion to avoid making the determinations, nor is there any support for the notion that the agency has unlimited discretion to delay these determinations.  Quite to the contrary, the regulation evinces a strong preference that the agency conduct these proceedings expeditiously – only "exceptional circumstances" can justify delays longer than 10 days.  Thus, the regulation requires that generally, the agency will conduct reasonable fear determinations within the 10 day timeframe.

That Section 208.31 imposes a non-discretionary duty on the USCIS to conduct these

United States District Court
Northern District of California

1  determinations within 10 days in the ordinary course makes sense given the policy purpose of the

2  regulatory scheme.  The United States has agreed not to "expel, return, ("refouler") or extradite a

3  person to another State where there are substantial grounds for believing that he or she would be in

4  danger of being subjected to torture."  *See* Foreign Affairs Reform and Restructuring Act of 1998

5  § 2242, Pub. L. 105-227, 112 Stat. 2681, 2681-821; *see also* Regulations Concerning the

6  Convention Against Torture, 64 Fed. Reg. 8,478-01.  Accordingly, an individual may seek

7  withholding of removal if his or her "life or freedom would be threatened in that country because

8  of [his/her] race, religion, nationality, membership in a particular social group, or political

9  opinion."  8 U.S.C. section 1231(b)(3)(A).  "Withholding of removal is mandatory under the

10  [CAT] implementing regulations" if an individual is found to have a reasonable fear of return.

11  *Nuru*, 404 F.3d at 1216.

12       The regulatory scheme of which Section 208.31 is a part was intended to balance the

13  United States' obligations under the CAT, while also accommodating the nation's interest in

14  having effective immigration laws.  To that end, the regulations were designed to provide "fair and

15  efficient procedures" to ensure compliance with the CAT obligations "within the overall

16  regulatory framework for the issuance of removal orders and decisions about the execution of such

17  order."  64 Fed. Reg. at 8,479.  The Federal Register reflects that the INS had "designed a system

18  that will allow aliens subject to the various types of removal proceedings currently afforded by the

19  immigration laws to seek, and where eligible, to be accorded protection under Article 3.  At the

20  same time, [the INS] created mechanisms to identify quickly and resolve frivolous claims to

21  protection so that the new procedures cannot be used as a delaying tactic by aliens who are not in

22  fact at risk."  *Id.*

23       In light of both the purpose and language of Section 208.31, it is apparent that the

24  regulation at issue here confers benefits on both the individuals and the agency.  The regulations

25  created a process to guarantee that the United States would not return individuals to their countries

26  of origin where doing so could result in torture or persecution.  Given the context in which the

27  regulations were promulgated, it is apparent that the right of individuals not to be subjected to

28  such treatment was of paramount importance.  As part of that regulatory scheme, Section

United States District Court
Northern District of California

208.31(b) provides a mechanism and process to ensure that individuals who reasonably fear torture and persecution can be protected.  Moreover, one objective of the regulations was to provide such individuals "fair" process and timely opportunity to be heard.  64 Fed. Reg. at 8,479.  Finally, while they await hearings on their reasonable fear claims, individuals are held in detention; functionally, the regulation ensures that such detention is limited unless exceptional circumstances warrant a delay.

Section 208.31, read in a straightforward manner, properly recognizes the vital liberty interest at play in these reasonable fear determinations.  It thus limits the deprivation of that liberty interest both for the individuals who do possess a reasonable fear of return and for whom withholding of removal is mandatory, *see Nuru*, 404 F.3d at 1216, and for the individuals who do not and are therefore subject to removal.  At the same time, the regulation ensures that the agency expeditiously resolves reasonable fear claims, which as a practical matter conserves resources, and ensures that the agency is able to continue to remove individuals who are not found to have reasonable fears of return.  *See* 64 Fed. Reg. at 8,479.  Thus, Section 208.31 balances various competing interests: the liberty interest of the individuals, and the interest of the agency in efficiently managing its processing of removals.

Defendants assert four arguments to contest jurisdiction.  The first is procedural.  Defendants' position that the regulation is merely "hortatory," a "procedural rule," or an "internal administrative processing guideline" and does not confer any right on the individual detained or create any mandatory duty for the agency fails.  (Mot. at 8-11.)  As set forth above, Section 208.31 is not merely a procedural rule assisting the orderly transaction of business.  *Cf. Am. Farm Lines v. Black Ball Freight Servs.*, 397 U.S. 532, 539 (1970) (finding that an administrative agency has discretion to relax or modify its procedural rules adopted for the orderly transaction of business before it); *Health Sys. Agency of Oklahoma v. Norman*, 589 F.2d 486, 489-90 (10th Cir. 1978) (finding that agencies may waive compliance with their own procedural rules in certain instances, for example, where the purpose of the rule is for "the orderly transaction of business before it").  Rather, Section 208.31 impacts the liberty right of individuals and sets in place limitations on the agency's deprivation of that right.  Where, as here, "the rights of individuals are affected, it is

13

United States District Court
Northern District of California

1    incumbent upon agencies to follow their own procedures.  This is so even where the internal

2    procedures are possibly more rigorous than otherwise would be required."  *Morton v. Ruiz*, 415

3    U.S. 199, 235 (1974).  The Court therefore finds that the agency cannot unilaterally disregard the

4    requirements in Section 208.31, as plaintiffs allege has happened here.

5         Second, defendants further argue that Section 208.31 does not create an enforceable

6    obligation on the agency because neither the regulation nor the statute provides a penalty in the

7    event that the Agency does not provide the reasonable fear determination within 10 days.  (Mot. at

8    8-10 (citing various cases involving government deadlines, including *Barnhart v. Peabody Coal

9    Co.*, 537 U.S. 149, 158 (2003) (determining that act was valid even though it was made after

10   statutory deadline has passed); *United States v. James Daniel Good Real Property*, 510 U.S. 43,

11   63 (1993) (declining to require dismissal of forefeiture action where agency failed to comply with

12   regulatory timing requirements); *Brock v. Pierce County*, 476 U.S. 253, 263 (1986) (holding the

13   failure of an agency to take action by a statutory deadline does not divest the agency of

14   jurisdiction to act after that deadline); *United States v. Montalvo-Murillo*, 495 U.S. 711, 711-12

15   (1990) (declining to require release of a respondent as sanction for the agency's delay in holding a

16   bail hearing)).)  Defendants thus contend that the agency does not lose its power to act in cases of

17   noncompliance unless the statute specifies a sanction for missing the deadline.  (Mot. at 9.)  This

18   argument, however, fails to appreciate the nature of the relief requested in this case.  Plaintiffs do

19   not pray that defendants be precluded from conducting reasonable fear determinations after the 10

20   day period elapses, nor are plaintiffs requesting that the Court fashion a sanction in response to the

21   agency's alleged noncompliance with Section 208.31.  Plaintiffs merely ask the Court to require

22   the agency to comply with its rule.

23        Defendants next argue that because the agency cannot create a binding regulation where a

24   statute does not impose a corresponding duty, the Court cannot enforce the same.  (Mot. at 10.)

25   This argument is unpersuasive.  Procedures in a regulation, or a requirement to act in a regulation,

26   can be enforceable even where the statute preceding the regulation does not create a similar duty.

27   *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267 (1954) (finding procedures

28   set forth in a regulation binding as a limit on the Attorney General's authority because "as long as

14

United States District Court
Northern District of California

1   the regulations remain operative, the Attorney General denies himself the right to sidestep the

2   Board or dictate its decision in any manner."); *Service v. Dulles*, 354 U.S. 363, 388 (1957)

3   ("While it is of course true that . . . the Secretary was not obligated to impose upon himself these

4   more rigorous substantive and procedural standards, neither was he prohibited from doing so . . .

5   and having done so he could not, so long as the Regulations remained unchanged, proceed without

6   regard to them."); *Dong*, 513 F. Supp. 2d at 1166 (finding a regulation created a duty to act

7   pursuant to a particular timeframe even though statute did not create a deadline).  Where, as here,

8   a regulation creates a duty to act within a particular timeframe, the agency does not have the

9   freedom to abdicate its responsibility.

10          Finally, defendants argue that because the contours of "exceptional circumstances" is

11   undefined in the regulation, the timing of reasonable fear determinations is "committed to agency

12   discretion by law."  (Mot. at 11-12.)  The Court disagrees.

13          Under APA section 701(a), judicial review of agency action is foreclosed where the

14   "agency action is committed to agency discretion by law."  *Heckler v. Chaney*, 470 U.S. 821, 828,

15   830 (1985).  As the Supreme Court has stated, "this is a very narrow exception . . . The legislative

16   history of the Administrative Procedure Act indicates that it is applicable in those rare instances

17   where 'statutes are drawn in such broad terms that in a given case there is no law to apply.' S.Rep.

18   No. 752, 79th Cong., 1st Sess., 26 (1945)."  *Heckler*, 470 U.S. at 830 (citing *Citizens to Preserve*

19   *Overton Park v. Volpe,* 401 U.S. 402, 410 (1971)).  The exception applies where a "statute is

20   drawn so that a court would have no meaningful standard against which to judge the agency's

21   exercise of discretion.  In such a case, the statute ("law") can be taken to have "committed" the

22   decision-making to the agency's judgment absolutely."  *Id.*  In determining whether judicial

23   review is precluded on Section 701(a)(2) grounds, courts consider "the language of the statute and

24   whether the general purposes of the statute would be endangered by judicial review."  *Pinnacle*

25   *Armor, Inc. v. United States*, 648 F.3d 708, 719 (9th Cir. 2011) (quoting *Cnty. of Esmeralda v.*

26   *Dep't of Energy*, 925 F.2d 1216, 1218 (9th Cir. 1991) (citing *Webster v. Doe*, 486 U.S. 592, 599–

27   601 (1988).)).  A court may also look to "regulations, established agency policies, or judicial

28   decisions" for a meaningful standard to review.  *Mendez–Gutierrez v. Ashcroft,* 340 F.3d 865, 868

1    (9th Cir. 2003). "[T]he mere fact that a statute contains discretionary language does not make

2    agency action unreviewable." *Pinnacle Armor, Inc.*, 648 F.3d at 719 (quoting *Beno v. Shalala,* 30

3    F.3d 1057, 1066 (9th Cir. 1994)).

4         The Court finds that Section 208.31 does not present one of "those rare instances where

5    statutes are drawn in such broad terms that in a given case there is no law to apply." *See Webster*,

6    486 U.S. at 599 (quoting *Overton Park*, 401 U.S. at 410). Defendants argue strenuously that

7    because the term "exceptional" is not defined expressly elsewhere in the regulation or statute, the

8    agency retains essentially unfettered discretion as to what justifies a departure from the 10 day

9    timeframe. This argument ignores the plain meaning of "exceptional," which provides some

10   limiting principle to the bounds of agency discretion and a meaningful guide for judicial review.

11        The plain meaning of the term "exceptional" establishes that the reasons for the agency's

12   delay of longer than 10 days must be "rare" or "deviating from the norm." MERRIAM-WEBSTER'S

13   NINTH NEW COLLEGIATE DICTIONARY 432 (9th ed. 1988). Although what may constitute

14   "exceptional circumstances" in the context of the agency's operations admits of some discretion,

15   there is an obvious limit to that discretion. The contours of the term "exceptional circumstances"

16   are made more clear when one considers circumstances that would not qualify as exceptional.

17   Ordinary, insignificant, normal circumstances cannot, by definition, qualify. To hold otherwise

18   would allow the exception to swallow the rule. *See, e.g.*, 5 U.S.C. § 552(a)(6)(C)(ii) ("[T]he term

19   "exceptional circumstances" does not include a delay that results from a predictable agency

20   workload . . .."); *Gov't Accountability Project v. HHS*, 568 F. Supp. 2d 55, 60-61 (D.D.C. 2008)

21   (holding that "allowing a mere showing of a normal backlog of request to constitute 'exceptional

22   circumstances' would render the concept and its underlying Congressional intent meaningless";

23   finding that where requests had increased for the last four years, "by this point, [the requests]

24   appear to be more of a predictable agency workload than a deluge of unanticipated

25   responsibility."); *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 259

26   n.4 (D.D.C. 2005) ("An agency must show more than a great number of requests to establish [. . .]

27   exceptional circumstances under the FOIA."); *Donham v. DOE*, 192 F. Supp. 2d 877, 882 (S.D.

28   Ill. 2002) (refusing to accept agency's argument that its backlog qualifies as "exceptional

United States District Court
Northern District of California

16

circumstances" because "then the 'exceptional circumstances' provision would render meaningless the [deadline].")  Notably, defendants have offered no persuasive argument that a court would be ill-advised to adjudge the agency's determination of circumstances that qualify as "exceptional."  Defendants do not assert that "exceptional circumstances" is a term of art, or that the interpretation of the term necessarily requires any experience or understanding unique to the agency.  (*See* Mot. at 11-13.)  Nor have defendants argued that the agency action at issue in this case is so specialized or complex that a court could not adjudicate whether the agency's delay was due to reasons of an "exceptional" nature.  (*See id.*)  These deficiencies counsel against finding that the limited discretion afforded the agency in Section 208.31 insulates its actions from judicial review entirely.[4]

To be sure, what qualifies as "exceptional" in this context carries with it broad discretion, and deference to the agency is therefore required in the ordinary course.  As the Supreme Court noted in *Norton*, a principle purpose of the APA is to protect agencies against "undue judicial interference with their lawful discretion, and to avoid judicial entanglement in abstract policy disagreements which courts lack both expertise and information to resolve."  *Norton*, 542 U.S. at 66.  This case, however, presents the rare instance where an agency is alleged to have failed entirely, for a length of several years, to comply with a timeframe set forth in a regulation in the

---

[4] Defendants cite *Martinez–Rosas v. Gonzales*, 424 F.3d 926 (9th Cir. 2005) to suggest that the Ninth Circuit has held the phrase "exceptional and extremely unusual hardship" is so broad that judicial review is barred under APA Section 701(a)(2). (Mot. at 12.)  The basis for the Ninth Circuit's holding in that case, however, was not that the phrase there at issue was wanting for a meaningful legal standard on judicial review.  Rather, the Ninth Circuit found that it did not have jurisdiction over the agency's discretionary judgment due to the enactment of 8 U.S.C. section 1252(a)(2)(B)(i), which barred judicial review of certain discretionary agency decisions. *See Martinez-Rosas*, 424 F.3d at 929-930 (noting that Section 1252(a)(2)(B)(i) states that "notwithstanding any other provision of law, no court shall have jurisdiction to review (i) any judgment regarding the granting of relief under section . . . 1229b [cancellation of removal].") ; *Romero-Torres v. Ashcroft*, 327 F.3d 887, 890 (9th Cir. 2003) (concluding that the "exceptional and extremely unusual hardship" determination is discretionary and thus "carved out of our appellate jurisdiction" pursuant to Section 1252(a)(2)(B)(i)).  The Ninth Circuit did not determine conclusively that the phrase "exceptional and extremely unusual hardship" was so broad as to satisfy the separate, narrower standard under APA Section 701(a)(2), and defendants do not claim that Section 1252(a)(2)(B) applies in this case.

great majority of all reasonable fear determinations, and where there is no end to such noncompliance in sight.  The agency is alleged to have "foregone any attempt to comply" with Section 208.31, and to have instead implemented different, more relaxed "goals" for the completion of reasonable fear interviews.  (Compl. ¶¶ 25, 26.)

The exhibits provided by defendants in support of their motion reinforce these allegations.[5] (*See* Dkt. No. 58-1 ("Mercado-Santana Decl."); Dkt. No. 43-7 ("Mura Decl.); Dkt. No. 43-8 ("Lafferty Decl.").)  These declarations illustrate that the exceptional appears to have become the norm such that nothing about the agency's delay is due to anything of a "rare" or "unusual" nature. Rather, the fact of noncompliance in the majority of reasonable fear determinations appears to be part of an ongoing and expected trend.  For example, of the 2,583 reasonable fear determinations rendered in the first half of 2014, only 78 were completed without a delay.  (Dkt. No. 43-7 at 7.) In contrast, 1,824 were delayed for "lack of resources," and 498 were delayed for no stated reason. (*Id.*)  Likewise, in 2013, 2,711 reasonable fear determinations were delayed for lack of resources, and 856 were delayed for no stated reason.  (*Id.*)  In 2012, of the 2,036 total determinations, 1,124 were delayed for lack of resources, and 732 were delayed for no stated reason.  (*Id.*)  Records from between 2006 to 2014 show marked increases in the number of reasonable fear determinations and document that the agency was well aware of this ever-increasing trend.  (*Id.*)  Thus, although the agency maintains that the increases were unpredictable, uncontrollable, and unanticipated (*see* Lafferty Decl. at ¶¶ 8-10), the evidence provided suggests that for the last *eight years*, the agency was faced with an obvious and persistent trend.  Although a dramatic increase in caseload could be fairly considered an "exceptional" circumstance for a time, here the steady increase in referrals for the last eight years demonstrates that the current caseload appears to be more of a "predictable agency workload than a deluge of unanticipated responsibility."  *See Gov't Accountability Project*, 568 F. Supp. 2d at 60-61.

The agency maintains that compliance with the timeframe put forth in Section 208.31 is

---

[5] The evidence proffered may be appropriately considered in the context of resolving defendants' 12(b)(1) motion.  *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003).

United States District Court
Northern District of California

United States District Court
Northern District of California

impracticable.  "[M]ultiple constraints" impede compliance, "many of which are beyond the control of the agency and were not anticipated, and thus not accounted for, at the time the applicable regulations were drafted," and the "availability of staff" has not been sufficiently adjusted to meet the requirements of Section 208.31 given the "exponentially" increasing caseload.  (Lafferty Decl. ¶¶ 8,9.)  In 2011, faced with the rising tide of reasonable fear referrals, the agency undertook to "recommend" new "reasonable fear performance goals." (Dkt. No. 58-1 Ex. A ("Langlois Memo").)  Rather than seek to implement a strategy to achieve compliance with Section 208.31's 10-day requirement, the agency appears to have ignored the regulatory deadline altogether.  It expanded the timeframe for completion of reasonable fear determinations to 90 days for 85% of cases, with 95% of the determinations to be completed within at least 150 days.  (*Id.* at 1.)  According to the Langlois Memo, only the "exceptional case" would fall outside the 150 day limit.  (*See id.*)  In arriving at these new timeframes, the agency identified and considered practical and logistical barriers to timely completing reasonable fear determinations.[6]  (*Id.* at 2.)  Regardless of the stated reasons for adjusting its deadlines, however, having promulgated a binding regulation governing the timeliness for processing reasonable fear referrals, the agency was not free to disregard that regulation.[7]  *See Service*, 354 U.S. at 388  ("While it is of course true that . . . the Secretary was not obligated to impose upon himself these more rigorous substantive and procedural standards, neither was he prohibited from doing so . . . and having done so he could not, so long as the Regulations remained unchanged, proceed without regard to them.").

Although whether exceptional circumstances exist is a determination largely left to agency discretion in the first instance, here plaintiffs allege – and evidence of record suggests – that far from exercising that discretion, defendants have abdicated their obligation to comply with the

_____

[6] Notably, the 10 day requirement in the agency's own regulations does not appear to have figured as a factor considered in developing the new timeframes.  (*See generally*, Langlois Memo.)

[7] Indeed, although it has played no part in the instant analysis, the Court notes that at argument, counsel for plaintiffs argued that despite the agency's protestations that it is unable to complete these determinations in a timely manner, the government is able to complete credible fear determinations, a process bearing marked similarity to the reasonable fear determination process, in approximately two weeks.  (Dkt. No. 67 ("Tr.") at 15-18.)

regulatory timeframe in the vast majority of cases.  Under the APA, a court shall "compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).  "[T]he mere fact that a statute contains discretionary language does not make agency action unreviewable."  *Pinnacle Armor, Inc.*, 648 F.3d at 719 (quoting *Beno*, 30 F.3d at 1066).  Where a party alleges that the agency has failed to act consistently with a regulation, the Court has jurisdiction to hear the party's claim and to compel action pursuant to the APA and federal question jurisdiction.  *See, e.g., Dong v. Chertoff*, 513 F. Supp. 2d 1158, 1167 (N.D. Cal. 2007) (finding that violation of a non-discretionary duty to act pursuant to regulation conferred subject matter jurisdiction under the APA in conjunction with federal question jurisdiction); *Elmalky*, 2007 WL 944330, at *4 (same).  As a practical matter, it may well be that resolving these reasonable fear determinations within 10 days is exceedingly difficult, indeed, even disadvantageous for the person seeking a favorable reasonable fear determination.  Nonetheless, given the express command in Section 208.31, neither the Court nor the agency is free to disregard it.  Where, as here, an agency is alleged to have foregone any attempt entirely to comply with a binding regulation, its non-compliance is properly subject to review in the federal courts.

### ii. Mootness

Defendants contend that because all named plaintiffs have received their reasonable fear determinations (albeit, not within 10 days of referral), their individual claims are moot.  (Dkt. No. 43 at 9.)  The Court finds an exception to the mootness doctrine appropriate in this case. Plaintiffs' claims, as well as those of their class members, are inherently transitory, and capable of repetition yet evading review.  To impose the mootness doctrine would thus enable defendants to avoid review of the claims presented here.  Accordingly, as class representatives, plaintiffs qualify for an exception to the mootness doctrine, even if they have received reasonable fear determinations, and even if there is no indication that they may again be subject to the acts that gave rise to their claims.  *See Wade v. Kirkland*, 118 F.3d 667, 670 (9th Cir. 1997).

Moreover, the Supreme Court has recognized that "[s]ome claims are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires."  *Cnty. of Riverside v.*

United States District Court
Northern District of California

1    *McLaughlin*, 500 U.S. 44, 51-52 (1991) (citing *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388,

2    399 (1980) (citations omitted)).  In such cases, the "relation back" doctrine is properly invoked to

3    preserve the merits of the case for judicial resolution.  *See id.* (citing *Swisher v. Brady,* 438 U.S.

4    204, 213–214 n. 11 (1978); *Sosna v. Iowa*, 419 U.S. 393, 402 n. 11 (1975)).

5         Accordingly, plaintiffs may represent the class and pursue this action despite having had

6    reasonable fear determinations.[8]

7         For these reasons, defendants' motion to dismiss under Rule 12(b)(1) is **DENIED**.

8    **III.    MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

9         **A.  Legal Standard**

10        A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in

11   the complaint.  *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  "Dismissal can be

12   based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a

13   cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

14   All allegations of material fact are taken as true and construed in the light most favorable to the

15   plaintiff.  *Johnson v. Lucent Techs., Inc.*, 653 F.3d 1000, 1010 (9th Cir. 2011).  To survive a

16   motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a

17   claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

18   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

19        **B.  Discussion**

20        Under section 706(1) of the APA, a court may "compel agency action unlawfully withheld

21   or unreasonably delayed."  5 U.S.C. § 706(1).  The APA further provides that agencies must

22   conclude matters before them "within a reasonable time."  5 U.S.C. § 555(b).  In *Norton,* 542 U.S.

23   at 64, the Supreme Court held that a plaintiff states a claim for relief under section 706(1) when he

24   "asserts that an agency failed to take a discrete agency action that it is required to take."  "[W]hen

25   an agency is compelled by law to act within a certain time period, but the manner of its action is

26   left to the agency's discretion, a court can compel the agency to act, but has no power to specify

27

28   _____
          [8] Defendants do not seriously contest plaintiffs' status as class representatives as part of
     their motion for class certification.

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1    what the action must be." *Id.* at 65.

2        To invoke the APA, plaintiffs must show that (1) the agency had a nondiscretionary duty

3    to act, and (2) the agency unreasonably delayed in acting on that duty. *Gelfer v. Chertoff*, No. 06-

4    6724, 2007 WL 902382, at *1 (N.D. Cal. 2007) (citing *Norton*, 542 U.S. at 63-65; 5 U.S.C. §§

5    555(b), 701(a)(2)). Defendants urge that in evaluating whether the delay at issue here is

6    unreasonable, the Court should apply the six-factor test set forth in *Telecomms. Research & Action*

7    *Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984):

8            (1) the time agencies take to make decisions must be governed by a
9            "rule of reason"[;] (2) where Congress has provided a timetable or
             other indication of the speed with which it expects the agency to
10           proceed in the enabling statute, that statutory scheme may supply
             content for this rule of reason [;] (3) delays that might be reasonable
11           in the sphere of economic regulation are less tolerable when human
             health and welfare are at stake [;] (4) the court should consider the
12           effect of expediting delayed action on agency activities of a higher
             or competing priority[;] (5) the court should also take into account
13           the nature and extent of the interests prejudiced by the delay[;] and
             (6) the court need not "find any impropriety lurking behind agency
14           lassitude in order to hold that agency action is unreasonably
15           delayed."

16   *Independence Mining Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997) (citing *TRAC*, 750 F.2d at

17   80 (citations omitted)). As an initial matter, the Court notes that none of the cases cited by

18   defendants in support of their argument apply the TRAC factors in circumstances analogous to the

19   instant case – where an agency regulation confers a right to resolution generally in a defined

20   timeframe, and where the agency has essentially abdicated any effort to comply with that

21   regulatory deadline. Indeed, Ninth Circuit authority suggests that where a firm deadline exists, the

22   Court need not undertake TRAC's six-factor balancing inquiry. *Biodiversity Legal Found. v.*

23   *Badgley*, 309 F.3d 1166, 1177 n.11 (9th Cir. 2002); *see also Brower v. Evans*, 257 F.3d 1058,

24   1068-69 (9th Cir. 2001) (affirming district court's application of TRAC factors at summary

25   judgment where there was no statutory or regulatory deadline or timeframe).

26       Regardless, if the TRAC factors are to apply, the Court cannot resolve at this juncture

27   whether plaintiffs have met this fact-intensive test. (*See* Mot. at 13-17; Reply at 12-14.) *See*

28

22

1    *Independence Mining Co.*, 105 F.3d 502 (evaluating district court's application of TRAC factors

2    on cross-motions for summary judgment); *Gelfer*, 2007 WL 902382, at *2 (denying motion to

3    dismiss in context where no statutory or regulatory deadline was present and noting that "[w]hat

4    constitutes an unreasonable delay in the context of immigration applications depends to a great

5    extent on the facts of the particular case") (quoting *Yu*, 36 F. Supp. 2d at 932); *cf. Chen v.*

6    *Chertoff*, No. 07-2816, 2008 WL 205279, at *3 (N.D. Cal. Jan. 23, 2008) (resolving summary

7    judgment in favor of plaintiff and finding the government's delay unreasonable).[9]   Indeed,

8    defendants concede that the analysis of an unreasonable delay claim under the TRAC factors is a

9    "complicated and nuanced task" because the Court needs to consider the particular facts and

10   circumstances of the delay.  (Mot. at 13 (citing *Mashpee Wampanoag Tribal Council, Inc. v.*

11   *Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) (concerning a district court's summary judgment

12   application of the TRAC factors).)

13            The Court finds that plaintiffs have alleged facts sufficient to state a plausible claim for

14   relief under the APA.  Contrary to defendants' argument that plaintiffs have failed to allege that

15   Section 208.31(b) was violated because they have not specifically alleged that no "exceptional

16   circumstances" exist to justify the current level of delays (*see* Reply at 12), the Court finds that

17   plaintiffs' complaint, fairly construed, alleges precisely that – and more.  The gravamen of

18   plaintiffs' complaint is that the agency has abdicated its responsibility to comply with Section

19   208.31 entirely.  This necessarily includes a failure to comply with the exception to the general 10-

20   day deadline.  Taking full view of plaintiffs' theory and construing all facts alleged in plaintiffs'

21   favor, as is required in the context of a 12(b)(6) motion, the Court finds that plaintiffs have alleged

22

23            [9] Defendants appear to insist that the evidence submitted in support of their 12(b)(1)
     jurisdictional arguments can and should be considered in the context of their 12(b)(6) motion.
24   (*See* Mot. at 14-17 (relying heavily on evidence outside the complaint in support of argument that
     plaintiffs cannot prevail on the merits applying the TRAC factors).)  Reliance on such evidence in
25   the context of the instant motion is improper.  Defendants rely on this evidence to dispute the
     merits of plaintiffs' claims, specifically, whether the agency delay in resolving reasonable fear
26   determinations is reasonable.  This evidence has no place in the context of defendants' 12(b)(6)
     motion; it may properly be considered only on a motion for summary judgment. Fed. R. Civ. P.
27   12(d).  Accordingly, the evidence cited has played no part in the Court's consideration of
     defendants' 12(b)(6) motion.

28

facts sufficient to state a claim under the APA and in light of the TRAC factors.  (*See* Compl. ¶¶ 7,

29 (alleging that "rarely if ever" does the agency timely resolve reasonable fear claims); ¶¶ 24-30

(describing the functional role of reasonable fear determinations in the statutory and regulatory

scheme and the effects of delays at the reasonable fear determination stage; alleging that the

agency "has foregone any attempt to comply with the timeframe" and has instead implemented

different "goals" for the completion of reasonable fear interviews that ignore the requirement in

Section 208.31(b).)

     For all these reasons, defendants' motion to dismiss under Rule 12(b)(6) is **DENIED**.

### IV.     MOTION FOR CLASS CERTIFICATION

     Plaintiffs have moved to certify a class of all individuals who:

>     (1) are or will be subject to removal pursuant to 8 U.S.C. § 1231(a)(5) or 8 U.S.C. § 1228(b);
>
>     (2) who have expressed, or in the future express, a fear of returning to their country of removal; and
>
>     (3) who have not received, or do not receive, a reasonable fear determination pursuant to 8 C.F.R. § 208.31 within ten days of referral to the U.S. Citizenship and Immigration Services.

The  defined  class does not include individuals who have received their reasonable fear

determinations.  (Dkt. No. 40 ("Reply") at 4.)

#### A.  Legal Standard

     A party seeking class certification must satisfy the four prerequisites of Rule 23(a): "(1)

numerosity of plaintiffs; (2) common questions of law or fact predominate; (3) the named

plaintiff's claims and defenses are typical; and (4) the named plaintiff can adequately protect the

interests of the class." *Arnott, et al. v. U.S. Citizenship & Immigration Servs.*, 290 F.R.D. 579,

583 (C.D. Cal. 2012) (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992))

(internal quotation marks omitted).  In addition to meeting the requirements set forth in Rule

23(a), the proposed class must also qualify under Rule 23(b)(1), (2), or (3).  *Zinser v. Accufix*

*Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).  Here, Petitioners ask the Court to

certify a class under Rule 23(b)(2).  (Compl. ¶¶ 60-70; Mot. at 12-13.)  Rule 23(b)(2) permits class

actions for declaratory or injunctive relief where "the party opposing the class has acted or refused

United States District Court
Northern District of California

to act on grounds that generally apply to the class." Fed. R. Civ. P. 23(b)(2).

The party seeking class certification bears the burden of proof in demonstrating that it has satisfied all four Rule 23(a) prerequisites and that their class lawsuit falls within one of the three types of actions permitted under Rule 23(b). *Zinser*, 253 F.3d at 1186. The failure to meet "any one of Rule 23's requirements destroys the alleged class action." *Rutledge v. Elec. Hose & Rubber Co.*, 511 F.2d 668, 673 (9th Cir. 1975). The Supreme Court has held that "actual, not presumed, conformance with Rule 23(a) [is] indispensable." *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982). Consequently, a district court must conduct a rigorous analysis to determine whether plaintiffs met their burden to pursue their claims as a class action. *Id.* at 161. If a court is not fully satisfied, the class cannot be certified. *Id.* Even when all of Rule 23's requirements are met, the district court retains "broad discretion" to determine whether a class should be certified. *Zinser*, 253 F.3d at 1186. When reviewing a motion for class certification, a court should only analyze the portions of the merits of a claim that overlap with Rule 23's requirements. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974).

### B. Discussion

Defendants essentially concede that class certification in this case is proper. With two minor exceptions,[10] they "do not otherwise contest class certification under Rule 23(a) or 23(b)." (Dkt. No. 38 ("Opp.") at 9 n.4.) Instead, defendants limit their opposition to the scope of the class that this Court should certify. Nonetheless, as set forth below, the Court has undertaken the requisite "rigorous analysis" and finds the Rule 23(a) factors and the requirements of Rule 23(b) are both met. The Court next explains why a nationwide class is appropriate in this case.

---

[10] Both of these arguments have been rendered either moot or immaterial. Defendants first argue that plaintiff Bardalez is not a proper class representative, but plaintiffs have represented that they will seek leave to voluntarily dismiss Bardalez's claims. (*See* Footnote 1, *supra*.) Next, Defendants argue that the class as defined includes individuals who have already received reasonable fear determinations. (Opp. at 9-12.) The Court disagrees; the class definition as set forth by plaintiffs does not include individuals who have already received their reasonable fear determinations. Nonetheless, for purposes of clarity, the Court expressly limits the class to only those individuals who have not received these determinations. (*See also* Reply at 5.)

United States District Court
Northern District of California

### 1.  Rule 23(a)

First, publicly available data and materials provided in conjunction with the defendants' motion to dismiss confirms that the proposed class members are so numerous that joinder of all is impracticable.  *Harris v. Palm Springs Alpine Est., Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964); Asylum Division Quarterly Stakeholder Meeting, January 2014, Credible Fear and Reasonable Fear FY 2014 - Q1, http://1.usa.gov/1sDqaa3; *see also* Dkt. No. 43-7 (statistics on reasons for delay of reasonable fear determinations from 1999 to 2014).

Second, the class presents common questions of law and fact, namely, whether the agency has in fact abdicated any attempt to comply with the requirements of Section 208.31(b), and whether this violates the APA.  Here, the common question of law is fairly straightforward: Have Defendants violated the law by foregoing any attempt to comply with Section 208.31(b) and not providing class members reasonable fear determinations within ten days of referral to USCIS in the general course?  Thus, the putative class members' claims "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011).  Thus, here the "capacity of a class wide proceeding to generate common answers apt to drive the resolution of the litigation."  *Id.* (internal citation and quotation marks omitted).

Third, the claims of the named plaintiffs are typical of the claims of the proposed class.  Like each and every one of the members of the proposed class, the plaintiffs have been subjected to prolonged detention upon "expressing a fear of return," thus prompting the reasonable fear determination process.  *See* Pls.' Mot. Ex. A, Decl. of Marco Antonio Alfaro Garcia, at ¶ 14; Ex. B, Decl. of Credy Madrid Calderon, at ¶ 10; Ex. C., Decl. of Gustavo Ortega at ¶ 8; Ex. D, Decl. of Claudia Rodriguez de la Torre, at ¶ 8; Ex. E, Decl. of Nancy Bardalez Serpa, at ¶ 6.  And, like the members of the proposed class, the agency should have timely provided plaintiffs with their reasonable fear determinations pursuant to the timeframe set forth in Section 208.31.  Thus, plaintiffs seek relief identical to that which the members of the proposed class would seek: the timely provision of a reasonable fear determination.

United States District Court
Northern District of California

1      Fourth, the Court finds that the class representatives' interests coincide with those of the

2   proposed class and that counsel for the class is adequate.  Plaintiffs are represented by the ACLU

3   Foundation of Southern California, the American Civil Liberties Union Foundation of Northern

4   California, the National Immigrant Justice Center, and Reed Smith LLP (collectively, "Class

5   Counsel").  Class Counsel are experienced in protecting the interests of noncitizens and handling

6   complex and class action litigation, including litigation on behalf of immigration detainees.  (Mot.

7   Exs. F-I.)

8                        **2.  Rule 23(b)(2)**

9      Plaintiffs also must meet one of the requirements of Rule 23(b) for a class action to be

10   certified.  That requirement is satisfied here, because the action meets the Rule 23(b)(2)

11   requirement that "the party opposing the class has acted or refused to act on grounds that apply

12   generally to the class, so that final injunctive relief or corresponding declaratory relief is

13   appropriate respecting the class as a whole." *Zinser*, 253 F.3d at 1195 (finding certification under

14   Rule 23(b)(2) appropriate "where the primary relief sought is declaratory or injunctive").  A class

15   may properly be certified under Rule 23(b)(2) if the opposing party's "[a]ction or inaction is

16   directed to a class . . . even if it has taken effect or is threatened only as to one or a few members

17   of the class, provided it is based on grounds which have general application to the class."  Fed. R.

18   Civ. P. 23(b)(2) Advisory Committee's Note (1966).  It is sufficient that plaintiffs here allege a

19   pattern of activity that is "central to the claims of all class members irrespective of their individual

20   circumstances and the disparate effects of the conduct." *Baby Neal for & by Kanter v. Casey*, 43

21   F.3d 48, 57 (3d Cir. 1994).  Judicial economy also favors certification.  Indeed, even assuming

22   that all of the putative class members could either be joined to this action or litigate each of their

23   cases individually, doing so would constitute an inefficient use of judicial resources.

24      Accordingly, all of the requirements of Rule 23 are met.  The Court therefore finds

25   certification of plaintiffs' proposed class appropriate so that all similarly situated individuals may

26   benefit from the injunctive relief sought in this action.

27                        **3.  Scope of the Class**

28      As stated above, defendants do not substantively dispute that class certification is

United States District Court
Northern District of California

1   appropriate under Rule 23(a) and (b).  Defendants' sole substantive argument in opposition to

2   plaintiffs' motion for class certification is directed to the question of whether the Court should

3   certify a nationwide or geographically confined class.

4   There is no *per se* prohibition against certification of a nationwide class, although the

5   Supreme Court has cautioned that nationwide class actions "may have a detrimental effect by

6   foreclosing adjudication by a number of different courts and judges."  *Califano v. Yamasaki*, 442

7   U.S. 682, 702 (1979) (affirming certification of a nationwide class).  Accordingly, "a federal court

8   when asked to certify a nationwide class should take care to ensure that nationwide relief is indeed

9   appropriate in the case before it, and that certification of such a class would not improperly

10   interfere with the litigation of similar issues in other judicial districts."  *Id.*

11   Mindful of this instruction, the Court finds that certification of a nationwide class is

12   appropriate in this context.  This case addresses the government's failure to abide by a mandatory

13   regulation designed to ensure the nation's compliance with its obligations under international

14   agreements and statutory law.  The chief complaint is that defendants, who are charged with

15   enforcing and executing the nation's immigration laws, are uniformly violating a federal

16   regulation promulgated to implement the United States' obligations under an international

17   agreement and statutory law.  In this unique context, national uniformity is of paramount

18   importance.

19   Although defendants argue that the Court should refrain from certifying a nationwide class,

20   they present no compelling factual or legal argument as to why their legal obligations might vary

21   state to state or region to region.  *Cf. Arizona v. United States*, 132 S.Ct. 2492, 2498 (2012)

22   (recognizing that, when it comes to immigration matters, the government must act as "one national

23   sovereign, not the 50 separate States.")  Indeed, the practical consequences of not certifying a

24   geographically limited class weigh in favor of nationwide certification.  An order requiring the

25   government to comply with the regulatory deadline in some parts of the country, but not others,

26   could lead to the government electing to comply merely by shifting its resources, leading to

27   greater delays in parts of the country outside the scope of any ultimate ruling in this case.

28   Accordingly, courts have certified nationwide classes that challenge the government's

United States District Court
Northern District of California

actions in enforcing the country's immigration laws.  *See, e.g.*, *Santillan v. Ashcroft*, No. C 04-2686 MHP, 2004 WL 2297990, at *12 (N.D. Cal. Oct. 12, 2004) (certifying nationwide class of lawful permanent residents challenging delays in receiving documentation of their status); *Ali v. Ashcroft*, 213 F.R.D. 390, 409-10 (W.D. Wash. 2003), *aff'd*, 346 F.3d 873, 886 (9th Cir. 2003), *vacated on other grounds*, 421 F.3d 795 (9th Cir. 2005) (certifying nationwide class of Somalis challenging legality of removal to Somalia in the absence of a functioning government); *Perez-Funez v. District Director, I.N.S.*, 611 F. Supp. 990, 1005 (C.D. Cal. 1984) (certifying nationwide class of minors who are now or will be taken into custody by the INS for possible deportation). Thus, a nationwide class is appropriate here.  Plaintiffs' motion for class certification is **GRANTED**.

## V.   CONCLUSION

For the reasons stated above, defendants' motion to dismiss under Rules 12(b)(1) and 12(b)(6) is **DENIED**.  Plaintiffs' motion for class certification is **GRANTED**.  The Court hereby **CERTIFIES** a nationwide class of all individuals who:

> (1) are or will be subject to removal pursuant to 8 U.S.C. § 1231(a)(5) or 8 U.S.C. § 1228(b);
>
> (2) who have expressed, or in the future express, a fear of returning to their country of removal; and
>
> (3) who have not received, or do not receive, a reasonable fear determination pursuant to 8 C.F.R. § 208.31 within ten days of referral to the U.S. Citizenship and Immigration Services.

The  defined class does not include individuals who have received their reasonable fear determinations.

This Order terminates Docket Numbers 12 and 43.

**IT IS SO ORDERED.**

Dated:  November 21, 2014

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT**